CRAIG STUART LANZA *
JOHN BALESTRIERE *
WILLIAM S. HOLLEMAN†
**BALESTRIERE PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone: (212) 374-5404
Facsimile:   (212) 208-2613
* *Pro Hac Vice* application pending

MATTHEW A. SIROKA (233050)
**LAW OFFICE OF MATTHEW A. SIROKA**
600 Townsend Street, Suite 233050
San Francisco, CA 94103
Telephone: (415) 522-1105
Facsimile:   (415) 522-1506
Email:     mas@defendergroup.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **MICHELLE MAZUR, On Behalf of Herself and all Others Similarly Situated,**<br><br>                    Plaintiff,<br><br>     v.<br><br>**EBAY, INC., HOT JEWELRY AUCTIONS.COM d/b/a JEWELRY OVERSTOCK AUCTIONS.COM d/b/a PARAMOUNT AUCTIONS, and DOES 1-100, inclusive**<br><br>                    Defendants. | Case No. C 07 3967 MHP<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO HOT JEWELRY AUCTION'S MOTION TO STAY PENDING ARBITRATION** |

/ / /

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 2

- I. The Arbitration Clause by its Own Terms Does Not Cover the Vast Majority of the Claims Asserted in this Case ..... 2
- II. The Arbitration Clause is Unconscionable ..... 3
  - A. Defendant's Arbitration Clause is Procedurally Unconscionable ..... 4
  - B. Defendant's Arbitration Clause Is Substantively Unconscionable ..... 5
- III. The Agreement Was Procured by Fraud ..... 7

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

Cases

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (Cal. Ct. App. 1982) .......................... 5

*Acorn v. Household Intern., Inc.*, 211 F.Supp.2d 1160 (N.D. Cal. 2002) ........................................ 6

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ....................... 6

*Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ......................................................... 2

*California Grocers Ass'n v. Bank of America*, 22 Cal. App. 4th 205 (Cal. Ct. App. 1994) ............ 5

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) .................................................... 5

*Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442 (Cal. Ct. App. 2006) ........................................... 4

*Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, (Cal. Ct. App. 1986). 7

*Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289 (Cal. Ct. App. 2005) ............................... 7

*Hotels Nevada v. L.A. Pacific Center, Inc.*, 144 Cal. App. 4th 754 (Cal. Ct. App. 2006) ............... 7

*Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983) ........................... 2

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) .................................................... 3, 4

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) ........................................................................... 5

*Oestreicher v. Alienware Corp.*, 502 F.Supp.2d 1061 (N.D. Cal. 2007) ......................................... 6

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) ........................ 3, 4

*Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038 (9th Cir. 2001) ................................. 3

*Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (Cal. Ct. App. 1997) ........................................... 5

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ................................................................................. 5

*Tracer Research Corp. v. Nat'l Envtl. Services Co.,* 42 F.3d 1292 (9th Cir. 1994) ....................... 2

**Statutes**

Communications Decency Act, 47 U.S.C. § 230 ................................................................ 1, 2, 3, 5

Fed. R. Civ. P. Rule 15(a) ................................................................................................................ 8

Plaintiff Michele Mazur ("Plaintiff"), by her attorneys, Matthew A. Siroka and Balestriere PLLC, respectfully submits this Memorandum of Law in opposition to Defendant Hot Jewelry Auction.com's ("HJA" or "Defendant") motion to stay the further proceedings in this case pending arbitration pursuant to 9 U.S.C. § 3.

## PRELIMINARY STATEMENT

Defendant's motion to stay pending arbitration is improper. The Dispute Resolution provision (the "Arbitration Clause") contained within HJA's Terms and Conditions (the "Agreement") is, by its own terms, limited only to contractual disputes arising out of the Agreement. Yet, Plaintiff's claims do not arise out of mere dissatisfaction with HJA's performance under the Agreement: Plaintiff was defrauded by HJA. Moreover, under California law, the Arbitration Clause is clearly unenforceable due to unconscionability. Finally, the Agreement itself was procured by fraud and is invalid on that ground.

Significantly, the Agreement quoted by Defendant simply is not the version that was actually agreed to by the parties, if they even saw this Agreement. ("Walter's Exhibit A"). This point is discussed further in the contemporaneously filed Plaintiff's Motion to Strike Exhibit A of Defendant HJA's Declaration of Stephen A. Walters ("Motion to Strike"). The version which Defendant filed with the Court and which it quotes in its motions is in taken from Defendant's website.

Plaintiff and all members of the Class saw *not* the version filed with the Court, but, rather, at best, the substantially different version on eBay's website, or perhaps the Agreement without the Arbitration Clause in any event.

The version which Defendant cited was the version that appeared on HJA's website. Yet, no Class member could even know about this version's existence since, on that website, HJA operates under the names Jewelry Overstock Auctions ("JOA") and Paramount Auctions ("PA").

By contrast, the version that Plaintiff and Class members *did* view is a mass of inscrutable text visible only in a small box taking up a portion of the computer screen or in documents which, if printed, are a pile of dense words in single-spaced pages, albeit with apparently the same text as Walters Exhibit A. Yet, in many instances, less than 10% of the Agreement is actually visible to

1  any Class members. (Mot. Strike 3.)

## STATEMENT OF FACTS

For a complete rendition of the facts alleged, Plaintiff respectfully refers the Court to the Complaint.

## ARGUMENT

**I. THE ARBITRATION CLAUSE BY ITS OWN TERMS DOES NOT COVER THE VAST MAJORITY OF THE CLAIMS ASSERTED IN THIS CASE**

Defendant has grossly misconstrued the scope of the Arbitration Clause, as the Arbitration Clause is, in reality, a narrow clause limited to only contractual disputes arising out of the Agreement and, thus, inapplicable here. California courts distinguish between the existence of broad arbitration clauses and narrow clauses. *See, e.g.*, *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,* 42 F.3d 1292, 1295 (9th Cir. 1994) (finding an arbitration clause that covers disputes "arising under" an agreement, but omits reference to claims "relating to" an agreement, covers only those disputes relating to the interpretation and performance of the contract itself); *see generally Britton v. Co-op Banking Group*, 4 F.3d 742, 749 (9th Cir. 1993) (Brunetti, J., dissenting) (discussing the "significant" differences between broad "relating to" arbitration provisions and more limited "arising under" language (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).

Here, the Arbitration Clause unmistakably sets out the intent of the parties, which is to arbitrate only strict contractual disputes *under* the Agreement. The provision states, in full, in the following chunky block text:

> DISPUTE RESOLUTION
> Should a dispute occur between JOA and Buyer (the parties) that cannot be resolved, then the parties agree to the rules, regulations and procedures of the dispute resolution described below and agree to the following procedures for Resolution of the Dispute: *If either party alleges that the other party is in default under this agreement, then the dispute or allegation shall be submitted for Binding resolution* to In House Attorneys, P.C. in the City of Los Angeles, California. Each party shall simply present their own case (limited to a maximum of one hour for each party) to In House Attorneys, P.C., excluding witnesses, expert witnesses and attorneys.

1  (Decl. of Matthew A Siroka in Supp. of Pl.'s Mot. Strike Ex. A at 6 (emphasis added).)

2  Defendant relies upon the opening sentence that "[s]hould a dispute occur . . . the parties agree to the rules, regulations and procedures of the dispute resolution described below and agree to the following procedures for Resolution of the Dispute . . . ." While this sentence does, as Defendant asserts, cover all disputes which would occur between HJA and a consumer, by its plain meaning it only demands that all disputes will *be covered by the procedures which follow*. These procedures, as set out beginning in the next sentence, go on to contemplate, as emphasized in the above text, only situations where "either party alleges that the other party is in default under this agreement, then the dispute or allegation shall be submitted for Binding resolution." *Id.* This language clearly covers only issues arising out of either party breaching the Agreement, and nothing else.

12  Of the nine causes of action which Plaintiff asserts against HJA, only one is for breach of contract. Thus, the Arbitration Clause is inapplicable to eight of the causes of action alleged. Defendant could have, if it wished, drafted this clause to cover all actions with the change of a few words but chose not to do so. Defendant should certainly not be allowed now to retroactively rewrite the Agreement for its own benefit.

17  Because Plaintiff did not contract to arbitrate here, Defendant's motion should be denied.

## II.   THE ARBITRATION CLAUSE IS UNCONSCIONABLE

19  The entire Arbitration Clause is plainly unconscionable under California law. In California, a contract provision is unenforceable due to unconscionability if it is both procedurally and substantively unconscionable. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006)) (class action waiver barring individuals from filing representative claims found procedurally and substantively unconscionable). Courts use a sliding scale, so the more evidence of procedural unconscionability that is present, the less evidence of substantive unconscionability is required, and vice versa. *See id.*; *see also Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). As a general matter, exculpatory contract clauses, such as the Arbitration Clause here, are "contrary to public policy." *Discover Bank v. Sup. Ct.*, 36 Cal. 4th

1    148, 161 (Cal. 2005) (waiver included in "bill stuffers" with credit card bills, which consumer
2    was deemed to accept if he didn't close his account, ruled unconscionable).

### A.    Defendant's Arbitration Clause is Procedurally Unconscionable

Defendant's Arbitration Clause is procedurally unconscionable. Procedural unconscionability is determined by "focusing on oppression or surprise due to unequal bargaining power." *Shroyer*, 498 F.3d at 982. Specifically, a "three-part inquiry" is used which considers: (1) whether the contract was a "a consumer contract of adhesion" drafted by a party with superior bargaining power; (2) whether the agreement occurred "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* at 983 (quoting *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1451-53 (Cal. Ct. App. 2006) (satellite TV company's "bill stuffer" arbitration clause prohibiting class actions unconscionable)). A contract of adhesion is defined as "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Id.* (quoting *Nagrampa,* 469 F.3d 1257, 1281 (9th Cir. 2006)).

The present case easily fulfills all three of these elements. First, the contract is clearly a contract of adhesion, as it was undisputedly drafted completely by HJA, giving Plaintiff and members of the Class no opportunity to negotiate. HJA also had superior bargaining power, as it is a large, sophisticated company "bargaining" with individuals who were presented with a "take-it-or-leave-it" standardized contract. *See id.* at 984. Second, the agreement was in a setting where disputes would typically involve small amounts of damages. While HJA's auctions were often for several hundred dollars and the money lost to individual plaintiffs was not trivial, any damages were still far less than would be practical for any harmed consumer to litigate. In any event, the average damages are certainly lower than $1,000 per person, an amount which the *Cohen* court held sufficient to satisfy the second factor. *Cohen*, 142 Cal. App. 4th at 1452 (damages "that *may or may not exceed $1,000* do not take DirecTV's class action waiver outside 'a setting in which disputes between the contracting parties predictably involve small amounts of damages . . . .'" (quoting *Discover Bank*, 36 Cal. 4th at 162) (emphasis added)). Third, HJA, the

party with superior bargaining power, is accused of carrying out a scheme to cheat large numbers of consumers out of individually small amounts of money. A full section of the Complaint bears the title "HJA is Engaged In A Shill Bidding Scheme That eBay Does Nothing to Stop," and elsewhere the Complaint discusses the "fraudulent schemes and artifices" of HJA. (Compl. ¶¶ 47-56, 257.) The Complaint also discusses in detail HJA's "fraud on a grand scale" that has "gone on for years" by "systematically defrauding" Plaintiff and the members of the Class. (Compl. ¶ 1.) All the factors required to show that the Arbitration Clause is procedurally unconscionable are present in this case.

### B. Defendant's Arbitration Clause Is Substantively Unconscionable

Defendant's Arbitration Clause is substantively unconscionable. Its intent is not to allow parties to resolve their disputes in a cost-effective manner, but is written to flat-out deny Plaintiff and other consumers any recourse for wrong which HJA may do to them. In California, the substantive unconscionability of a contract is determined by whether there exists an "overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made." *Navellier v. Sletten*, 262 F.3d 923, 940 (9th Cir. 2001) (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (Cal. Ct. App. 1982)) (agricultural equipment company's preprinted contract clauses which disclaimed all warranties and excluding consequential damages were unconscionable); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) ("A determination of substantive unconscionability . . . involves whether the terms of the contract are unduly harsh or oppressive"). Put more simply, substantively unconscionable contract terms are so one-sided that they "'shock the conscience.'" *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (Cal. Ct. App. 1997) (quoting *California Grocers Ass'n v. Bank of America*, 22 Cal. App. 4th 205, 214 (Cal. Ct. App. 1994)) (bank's assessment of $3 fee for deposited items returned failed to "shock the conscience" because, *inter alia*, most banks charged more for the service).

When reviewing arbitration clauses, courts find that "the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (telecommunication company's consumer services agreement

1  unconscionable insofar as it barred class actions, mandated splitting of arbitration fees, and
2  required all arbitration to remain confidential) (quoting *Armendariz v. Foundation Health*
3  *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000)). When determining whether an arbitration
4  clause is sufficiently bilateral, California courts "look beyond facial neutrality and examine the
5  actual effects of the challenged provision." *Id.*; *see also ACORN v. Household Int'l,Inc.*, 211 F.
6  Supp. 2d 1160, 1169 (N.D. Cal. 2002) (mortgage loan company's arbitration agreement
7  procedurally unconscionable as it prohibited class actions, required confidentiality of all
8  arbitration awards, contained a specific exception allowing loan company to foreclose upon
9  plaintiffs pending arbitration, and required fee-sharing). Arbitration is intended to be a "forum
10 for neutral dispute resolution" and not a means of maximizing the advantage of the drafter in an
11 adhesion contract. *See Armendariz*, 24 Cal. 4th at 117. Under any applicable decision, the
12 Arbitration Agreement is exceedingly substantively unconscionable.

13 Defendant's Arbitration Clause is so one-sided that its victory is almost assured in any
14 arbitration proceeding. First and foremost, the designated "arbitrator" does not appear to be a
15 neutral party. Instead of the standard procedure where the parties may choose an arbitrator from a
16 list of those approved by an organization just as the American Arbitration Association ("AAA")
17 or Judicial Arbitration and Mediation Services ("JAMS"), the Arbitration Clause here mandates
18 the use of In-House Attorneys, P.C. ("In-House Attorneys"). Basic research shows that In-House
19 Attorneys, according to its website, is a "virtual corporate legal department, offering its Small
20 Business Clients a variety of services over the internet." INHOUSE ATTORNEYS | A
21 Professional Corporation, http://www.inhouseattorneys.com/indexc.html (last visited Nov 16,
22 2007). These services include the ability to order, from their website, a "custom, attorney-drafted
23 contract." *Id.* Considering that In-House Attorneys makes *no mention* of providing arbitration
24 services on its website, it is likely that it may have drafted the Agreement for HJA. To force
25 Plaintiff to submit to arbitration before an "arbitrator" who is likely HJA's past and possibly
26 present law firm is undoubtedly one-sided and a vastly unfair allocation of risks upon Plaintiff.[1]

---

27 [1] While this Court has recently declined to apply substantive unconscionability in a case where
28 plaintiffs argued that the National Arbitration Forum would not provide a fair hearing because it
   was too "industry-friendly" and limited discovery to be "commensurate with the amount of the

The other provisions in the Arbitration Clause are just as onerous, as Plaintiff would not be allowed an attorney, to call any witnesses, or possibly even to conduct discovery. In fact, Plaintiff's entire case is limited to a maximum of one hour. Class actions seem all but impossible in such a setting. *See Discover Bank*, 36 Cal. 4th at 159-160, 113 P.3d at 1107-08 (upholding lower court's finding that bank's class action waiver was oppressive). As the court in *Discover Bank* explained:

> Fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights. . . . The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place.

*Id.* (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (Cal. Ct. App. 2002)).

While each of these terms separately are harsh and oppressive, combined they effectively make recovery all but impossible for the average consumer, especially since individual damages in such a situation are relatively small, leaving no practical recourse except by class action. As such, the Arbitration Clause is unconscionable and should be declared void.

## III. THE AGREEMENT WAS PROCURED BY FRAUD

The Agreement between Plaintiff and members of the Class and HJA is void because it was procured by fraud. In California, fraud in the inducement occurs when a party's "consent is *induced* by fraud," even though he may fully understand what he is signing. *Hotels Nevada v. L.A. Pacific Center, Inc.*, 144 Cal. App. 4th 754, 763 (Cal. Ct. App. 2006) (quoting *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 2028 (Cal. Ct. App. 1986) (emphasis in original)). The proper remedy for a contract induced in this fashion is rescission. *Id.* The party seeking rescission must show that the five elements of fraud are present: (1) misrepresentation (either false representation, concealment, or nondisclosure); (2) knowledge that the statement was false; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (Cal. Ct. App. 2005) (citing *Lazar v.*

---

Claim," the facts in the present case are several degrees of magnitude more severe. *See Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1070 (N.D. Cal. 2007).

1  *Sup. Ct.*, 12 Cal. 4th 631, 638 (Cal. Ct. App. 1996) (landlord's agent's false claims that certain
2  tenants would be "coming soon" were statements of fact, not nonactionable opinion, and thus
3  supported the elements of fraud).

4      All five elements are present here, requiring that the Agreement be voidable and subject to
5  rescission. First, HJA procured the agreement of Plaintiff and members of the Class to the
6  contract through a series of misrepresentations that its auctions were safe, fair, took place on live
7  auction floors, contained no shill bidding, and were $1 no reserve auctions. Second, HJA knew
8  that these statements were false, as all these factors were fully in its control. Third, HJA acted
9  with clear intent to induce reliance as all of its statements were solely for the purpose of
10 compelling Plaintiff and members of the Class to participate in its auctions. Fourth, Plaintiff and
11 members of the Class justifiably relied upon HJA's statements, as they had no reason to doubt the
12 veracity of such promises made through eBay, a major Internet auction company. Fifth, Plaintiff
13 and members of the Class were harmed when they were exposed to HJA's shill bidding, costing
14 them collectively millions of dollars. As such, the Agreement and the Arbitration Clause was
15 procured by fraud, and should be declared void.

16
17
18
19
20
21
22
23
24
25
26
27
28

# **CONCLUSION**

The Arbitration clause does not cover this dispute and the arbitration agreement was procured by fraud. Defendant should not be rewarded further for its fraud by arguing the matter before a friendly forum in a manner it has deemed is in its own interests. For the foregoing reasons, the Motion to Stay should be denied.

Dated:  San Francisco, California  
        December 6, 2007

Respectfully submitted,

/s/ Matthew A. Siroka  
MATTHEW A. SIROKA (CASBN 233050)  
**LAW OFFICE OF MATTHEW A. SIROKA**  
600 Townsend Street, Suite 233050  
San Francisco, CA 94103  
Telephone:  (415) 522-1105  
Facsimile:   (415) 522-1506  
Email:         mas@defendergroup.com

CRAIG STUART LANZA  
JOHN BALESTRIERE  
WILLIAM S. HOLLEMAN  
**BALESTRIERE PLLC**  
225 Broadway, Suite 2700  
New York, NY 10007  
Telephone:  (212) 374-5404  
Email:         clanza@balestriere.net  
*Attorneys for Plaintiff and the Class*

---

[†] Admission pending to the New York State Bar.