UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5    UNITED STATES DISTRICT COURT

6    NORTHERN DISTRICT OF CALIFORNIA

7

8    MICHELE MAZUR, individually and for all
     others similarly situated,

9                                                    No. C 07-03967 MHP
                              Plaintiff,
10        v.                                         **MEMORANDUM & ORDER**
                                                     **Re: Defendants' Motions to Stay,**
11   EBAY INC., HOT JEWELRY                          **Defendant eBay's Motion to Dismiss and**
     AUCTIONS.COM d/b/a JEWELRY                      **Plaintiff's Motion to Strike**
12   OVERSTOCK AUCTIONS and
     PARAMOUNT AUCTIONS, and DOES 1-
13   100, inclusive,

14                            Defendants.
     _____/
15

16        On August 2, 2007 plaintiff Michele Mazur ("Mazur" or "plaintiff"), on behalf of herself and

17   others similarly situated, brought suit against eBay Inc. ("eBay") and Hot Jewelry Auctions.com

18   ("HJA") accusing the latter of shill bidding and the former of acquiescing in the same.  Now before

19   the court are both defendants' motions to stay pending arbitration, eBay's motion to dismiss and

20   plaintiff's motion to strike a declaration submitted by HJA.  The court has considered the parties'

21   arguments fully, and for the reasons set forth below, the court rules as follows.

22

23   BACKGROUND

24        eBay is the world's largest online auction hosting service.  It strictly prohibits shill

25   bidding—the practice of entering fake bids—on its website.  Amongst the many services it provides,

26   eBay also provides the Live Auction service, which allows eBay users to place bids on live auctions

27   being held by auction houses and compete with floor bidders.  The offline bids made by the floor

28   bidders are reflected online, but eBay users are not provided any details regarding the bidder.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Mazur is an eBay user.  In order to become a user, she had to accept and agree to eBay's

2  Terms and Conditions.  See Somvichian Dec., Exh. A.[1]  Further, in order to use the Live Auction

3  service, Mazur had to agree to eBay's Live Auction User Agreement.  See id., Exh. B.

4  Defendant HJA holds auctions via eBay's live auction service using the monikers "Jewelry

5  Overstock Auctions" and "Paramount Auctions."  Molayem Dec., ¶ 2.  If an eBay user wants to bid

6  in one of HJA's auctions, the user is automatically presented with a copy of HJA's Terms and

7  Conditions to read and review.  Id., ¶ 3.  eBay users are able to read these Terms and Conditions

8  online by scrolling through the text of the terms.  Hongola Dec., Exh. A.  Alternatively, an eBay

9  user can also print the text of these Terms and Conditions.  Id., Exh. B.  eBay requires that HJA

10  upload a copy of its Terms and Conditions for every auction.  Mazur was presented with HJA's

11  Terms and Conditions prior to bidding and she agreed to those Terms and Conditions, including the

12  Dispute Resolution provision.  See Molayem Dec., ¶ 5.

13  The Dispute Resolution provision contained in the Terms and Conditions provides that if a

14  dispute between HJA and the plaintiff arises and cannot be resolved informally, the parties agree to

15  submit the dispute to In-House Attorneys, P.C. in Los Angeles, who will render a final and binding

16  decision.  Specifically, the agreement states:

17  DISPUTE RESOLUTION
Should a dispute occur between JOA and Buyer (the parties) that cannot be resolved,

18  then the parties agree to the rules, regulations and procedures of the dispute
resolution described below and agree to the following procedures for Resolution of

19  the Dispute: If either party alleges that the other party is in default under this
agreement, then the dispute or allegation shall be submitted for Binding resolution to

20  In House Attorneys, P.C. in the City of Los Angeles, California.  Each party shall
simply present their own case (limited to a maximum of one hour for each party) to In

21  House Attorneys, P.C., excluding witnesses, expert witnesses and attorneys.  The
parties agree and acknowledge that they are completely waiving their rights to have

22  the dispute heard in a conventional manner including use of attorneys, arbitration,
mediation and any civil court in California having jurisdiction over the dispute.  Any

23  award determined by In-House Attorneys, P.C. shall be binding and the prevailing
party shall be awarded full reimbursement of its actual paid fees in connection with

24  the dispute remedy listed herein.

25  Hongola Dec., Exh. B.  This purported Dispute Resolution provision shall hereinafter be referred to

26  as the "contested provision."  Mazur agreed to HJA's Terms and Conditions, which included the

27  contested provision, and bid during a HJA live auction.  She won the auction and directly paid HJA

28

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  | $4,602.90 for several pieces of HJA's jewelry that were then directly shipped to her.

2  |      In her complaint, Mazur claims that HJA made misrepresentations regarding the nature of its

3  | auction services and engaged in shill bidding practices.  She also complains that eBay falsely

4  | claimed the live auctions were safe and involved carefully screened reputable international auction

5  | houses with floor bidders.  Thus, she alleges a number of contract, tort and statutory claims against

6  | both defendants.

7  |

8  | LEGAL STANDARD

9  | I.     Arbitration

10 |      The Federal Arbitration Act ("FAA"), 9 U.S.C. sections 1–16, requires federal courts to

11 | enforce arbitration agreements and to stay any litigation that contravenes such agreements.  The

12 | court's role under the FAA is limited to (1) determining whether a valid agreement to arbitrate exists

13 | and, if it does, (2) deciding whether the agreement encompasses the dispute at issue.  9 U.S.C. § 4;

14 | Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir. 1999).

15 |      Despite the "liberal federal policy favoring arbitration agreements," Green Tree Fin. Corp. v.

16 | Randolph, 531 U.S. 79, 81 (2000), state law still has a role to play.  In interpreting 9 U.S.C. section

17 | 2, the Supreme Court has held that "state law, whether of legislative or judicial origin, is applicable

18 | *if* that law arose to govern issues concerning the validity, revocability, and enforceability of

19 | contracts generally."  Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987).  Therefore, "generally

20 | applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate

21 | arbitration agreements without contravening Section 2."  Doctor's Assocs., Inc. v. Casarotto, 517

22 | U.S. 681, 687 (1996).  "In making this determination, federal courts may not address the validity or

23 | enforceability of the contract as a whole."  Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937

24 | (9th Cir. 2001) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967)).

25 |

26 | II.     Rule 12(b)(6)

27 |      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

28 |

UNITED STATES DISTRICT COURT
For the Northern District of California

1  sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule

2  12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court

3  may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk

4  v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  Although the court is generally

5  confined to consideration of the allegations in the pleadings, when the complaint is accompanied by

6  attached documents, such documents are deemed part of the complaint and may be considered in

7  evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265,

8  1267 (9th Cir. 1987).

9       A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a

10  claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974

11  (2007).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient

12  facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

13  (9th Cir. 1990).

14       Allegations of material fact are taken as true and construed in the light most favorable to the

15  nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The court

16  need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted

17  deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979,

18  988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

19

20  III.   Fraud-based claims

21       A plaintiff alleging fraud must satisfy a heightened pleading standard that requires

22  circumstances constituting fraud be pled with particularity. Fed. R. Civ. P. 9(b).  Specifically, "[t]he

23  pleadings must state precisely the time, place, and nature of the misleading statements,

24  misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994),

25  cert. denied, 516 U.S. 810 (1995).  In addition, plaintiffs seeking to satisfy Rule 9(b) must "set forth

26  an explanation as to why the statement or omission complained of was false and misleading." In re

27  GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); see Fecht v. Price Co., 70

28

4

F.3d 1078, 1082 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1136 (1996).  The pleading must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

It is well established that Rule 9(b)'s requirement that allegations of fraud be pled with particularity applies to state-law causes of action before a federal court:  "'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule.'"  <u>Vess</u>, 317 F.3d at 1103 (quoting <u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 (1st Cir. 1985)); <u>see also</u> <u>Jenkins v. Commonwealth Land Title Ins. Co.</u>, 95 F.3d 791, 796 (9th Cir. 1996).

This heightened pleading standard applies to allegations of fraud and allegations that sound in fraud, including false misrepresentations.  <u>Vess</u>, 317 F.3d at 1106–07; <u>see also</u> <u>Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC</u>, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ("It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."); <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (same).

<u>DISCUSSION</u>

I.    <u>The Contested Provision</u>

HJA claims that the contested provision in its Terms and Conditions is binding and enforceable and amounts to arbitration under the FAA.  On this basis, HJA requests the court stay this action pending the outcome of arbitration.  There is no argument that if the contested provision is valid, this court must stay the instant proceedings with respect to the causes of action covered by the provision.  Plaintiff, however, contends the provision is unconscionable and therefore unenforceable.  Alternatively, plaintiff argues that her claims are not encompassed by the terms of the provision.  The two-pronged <u>Simula</u> test requires the court to determine, first, if the contested

1    provision is valid, and second, if the instant dispute falls within the scope of the provision.

2

3        A.    Validity

4        There is no argument amongst the parties that California law applies.  Under California law,

5    an arbitration agreement must be both procedurally and substantively unconscionable to be invalid.

6    Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000); see also Circuit

7    City Stores, Inc. v. Mantor, 335 F.3d 1101, 1105 (9th Cir. 2003).  Procedural unconscionability

8    exists when there is oppression or surprise in an agreement because of unequal bargaining power.[2]

9    Armendariz, 24 Cal. 4th at 114.  Substantive unconscionability exists when there are overly-harsh or

10   one-sided results.  Id.  The court applies a sliding scale that assesses procedural unconscionability in

11   proportion to substantive unconscionability:  "The more substantively oppressive the contract term,

12   the less evidence of procedural unconscionability is required to come to the conclusion that the term

13   is unenforceable, and vice versa."  Id.

14            1.    Procedural Unconscionability

15       As an initial matter, plaintiff argues that the version of the Terms and Conditions submitted

16   by HJA in the Walters declaration is not the version that users actually see.  The court agrees.  The

17   Walters declaration contains formatting and is much easier to read than the version actually seen by

18   users when they click to signify agreement.  The Hongola declaration contains the same agreement

19   in the manner in which it is presented to the user.  Compare Hongola Dec., Exh's. A & B with

20   Walters Dec., Exh. A.  In both instances, the contents of the agreement are identical.  Id.  Thus, the

21   court will consider Hongola's declaration and ignore Walters' declaration.  In essence then,

22   plaintiff's motion to strike Walters' declaration is granted.[3]

23       The court examines two factors when analyzing the procedural unconscionability of a

24   contract: oppression and surprise.  Mantor, 335 F.3d at 1106.  Oppression arises when there is an

25   unequal balance of bargaining power between the parties to a contract that precludes the weaker

26   party from enjoying a meaningful opportunity to negotiate the terms of the contract.  Id.  Surprise

27   arises when the terms to which the parties allegedly agreed are "hidden in the prolix printed form

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    drafted by the party seeking to enforce the disputed terms." Id. (quoting Stirlen v. Supercuts, Inc.,

2    51 Cal. App. 4th 1519, 1532 (1997)).

3        Oppression analysis first asks whether the contract is one of adhesion. Nagrampa v.

4    Mailcoups, Inc., 469 F.3d 1257, 1281 (9th Cir. 2006) (citing Flores v. Transamerica HomeFirst, Inc.,

5    93 Cal. App. 4th 846, 853 (2001)). A contract of adhesion is "a standardized contract, which,

6    imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party

7    only the opportunity to adhere to the contract or reject it." Ting v. AT&T, 319 F.3d 1126, 1148 (9th

8    Cir. 2003). Here, it is uncontested that the Terms and Conditions were drafted by HJA and plaintiff

9    had no opportunity to negotiate any of the provisions, including the contested provision. Though

10   plaintiff may be a business owner herself, her interaction with Live Auctions was in the capacity of

11   an ordinary consumer—she did not have a relationship with HJA that allowed her to negotiate the

12   Terms and Conditions. Thus, this agreement was unquestionably an oppressive contract of

13   adhesion.

14       This oppression was coupled with surprise. The format in which the Terms and Conditions

15   were presented to the plaintiff only allowed for a few single-spaced lines of block text to be visible

16   at any given time.[4] Furthermore, there were no paragraph, section or heading breaks that would aid

17   in reading comprehension or allow the user to navigate to a particular section. This single-spaced

18   massive block of impenetrable text looked the same when printed out. The section headings in the

19   agreement, which were in all-caps, did not aid comprehension either since they were embedded in

20   the text and could not be easily ascertained. Thus, case law that accords weight to section headings

21   is inapposite. Accordingly, since both oppression and surprise were present, the court is satisfied

22   that the agreement was procedurally unconscionable.

23       HJA's three arguments in opposition are easily disposed. First, the procedural

24   unconscionability is not reduced by the fact that HJA's Terms and Conditions were available

25   elsewhere on eBay's and HJA's websites. Since plaintiff was not directed to these locations, the

26   presence of the Terms and Conditions at these locations is irrelevant. Second, the fact that plaintiff

27   could return her purchase within seven days also has no bearing upon the validity of the arbitration

28

7

clause. <u>Oestreicher v. Alienware Corp.</u>, 502 F. Supp. 2d 1061, 1070 (N. D. Cal. 2007) (Patel, J.), is inapposite because this court did not base its holding upon the return policy, but declined to establish a rule whereby "companies are required to ensure that customers actually read contracts before agreeing to them." <u>Id.</u>  Third, plaintiff's failure to allege that she could not have purchased her goods elsewhere does not save the contested provision from being procedurally unconscionable. This court will not require plaintiff to scour eBay's website to determine the least oppressive terms and conditions before bidding.  Indeed, all terms and conditions on eBay's website seem to be presented in a similar fashion, though in most instances they are more readably formatted, thereby removing the surprise element found here.

2.  <u>Substantive Unconscionability</u>

Although "parties are generally free to structure arbitration agreements as they see fit," <u>Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478–79 (1989), a determination of substantive unconscionability turns on the existence of overly-harsh or one-sided results, <u>Nagrampa</u>, 469 F.3d at 1280.  A contract may provide extra protection to the superior party without being unconscionable, but that party's need for the advantage must be explained in the contract or be factually established.  <u>Ingle v. Circuit City Stores</u>, 328 F.3d 1165, 1173 (9th Cir. 2003).  The key consideration in finding substantive unconscionability is a lack of mutuality.  <u>Nagrampa</u>, 469 F.3d at 1281 (citing <u>Abramson v. Jupiter Networks, Inc.</u>, 115 Cal. App. 4th 638, 651 (2004)).  "Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" <u>Ting</u>, 319 F.3d at 1149 (citing <u>Armendariz</u>, 24 Cal. 4th at 117).  "In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." <u>Id.</u> (citations omitted).  In sum, arbitration is intended to be a "forum for neutral dispute resolution" and not a means of maximizing the advantage of the drafter in an adhesion contract.  <u>See Armendariz</u>, 24 Cal. 4th at 117.

The contested provision calls for In-House Attorneys, P.C. in Los Angeles to be the decision makers.  Plaintiff argues the would-be decision makers are not neutral because they claim to be a

<b>UNITED STATES DISTRICT COURT</b><br><b>For the Northern District of California</b>

UNITED STATES DISTRICT COURT
For the Northern District of California

1    "virtual corporate legal department, offering [their] Small Business Clients a variety of services over

2    the internet." Pl.'s Opp. to HJA's Motion to Stay at 6. Indeed, In-House's website states that it

3    offers "corporate clients all of the services and expertise typically provided by law firms to corporate

4    clients, eliminating the need for an in-house legal department." Inhouse Attorneys, P.C.,

5    http://www.in-house-lawyers.com (last visited March 3, 2008). The website continues, "Inhouse is a

6    true alternative to in-house counsel." Id. This leaves little doubt as to In-House's duty of loyalty.

7    Interestingly, the "firm" lists only two lawyers, one of whom according to California State Bar

8    records has an address in Utah and shows no affiliation with In-House. The records also reflect that

9    he has been disciplined "w/actual suspension" and was returned to active status in 2006. The State

10    Bar of California, Attorney Search, http://members.calbar.ca.gov/search/member_detail.aspx?

11    x=208563 (last visited March 3, 2008). Under all of these circumstances, In-House's ability to offer

12    a neutral and fair resolution of the dispute is illusory.[5]

13        The terms of the contested provision also provide that each party has one hour to present its

14    case and that witnesses, including experts, and attorneys are not allowed. HJA claims the same

15    applies to both parties and therefore mutuality exists. This argument proves too much because it

16    also applies to a waiver of all litigation concerning the transaction. A complete waiver would be

17    bilateral, but would allow HJA to sell fake jewelry without any repercussions. HJA's argument is

18    therefore unpersuasive. As discussed below, this bilateral restriction has far greater adverse

19    consequences for plaintiff than it does for HJA.

20        The court is concerned by the "no-witnesses" provision even though the same has been held

21    valid in this district. See Kayne v. Thomas Kinkade Co., 2007 WL 4287364, at *5 n.4 (N. D. Cal.

22    Dec. 5, 2007) (Illston, J.) (order regarding motion to dismiss and motion to strike). The Kayne

23    court, however, upheld the provision only because "plaintiff was permitted to submit documentary

24    evidence, including declarations, in support of his arguments." Id. There is no such provision here.

25    Since plaintiff has the burden of proof, this bilateral restriction banning witnesses has the effect of

26    favoring HJA. The one hour bilateral time restriction, which disallows complex cases with multiple

27    factual disputes to be adjudicated properly, also has the effect of favoring HJA. To this court, the

28

9

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   envisioned proceedings seem indistinguishable from a small claims action being adjudicated by an

2   attorney of dubious qualifications and loyalties serving pro-tem.  The court is also concerned about

3   whether discovery would be allowed.  Since attorneys are banned, the scope, rules and procedures

4   regarding discovery are unclear.  Without discovery, it would likely be impossible for plaintiff to

5   prove her case.  In sum, the lopsided adverse consequences of the clause lead the court to find a high

6   degree of substantive unconscionability.  This coupled with the procedural unconscionability found

7   above renders the contested provision invalid.[6]

8       Further, the clause is especially egregious because individual damages are likely to be small

9   and class actions are thus the only effective way to litigate such disputes.  HJA claims that since the

10  contested provision does not explicitly prohibit class arbitration, this question would be a matter for

11  the decision maker.  See Ramirez v. Cintas Corp., 2005 WL 2894628, at *8 (N.D. Cal. Nov. 2, 2005)

12  (White, J.) (motion to dismiss).  However, this argument can cut both ways—since the provision

13  does not explicitly require class arbitration, the present class action must therefore proceed.

14  Ramirez is also distinguishable because the arbitration provision there incorporated the American

15  Arbitration Association's rules.  Id. at *2.  In contrast, there are no rules here save plaintiff having

16  one hour in which to personally make all arguments regarding the merits of her own claims and the

17  claims of her class-members.  This makes it de facto impossible to litigate a class action and thus

18  case law that holds de jure class action waivers to be substantively unconscionable is instructive

19  here.

20      The express terms of the provision state that parties are "completely waiving their rights to

21  have the dispute heard in a conventional manner including use of attorneys, arbitration, mediation

22  and any civil court in California having jurisdiction over the dispute."  Hongola Dec., Exh. B.  This

23  clause not only disavows traditional mediation and arbitration—which HJA argues the provision

24  provides—but also seems to be a blanket class action waiver.  This class action waiver would be

25  substantively unconscionable under the Shroyer standard.  The first requirement is met.  The

26  contract was presented on a "take it or leave it" basis with no opportunity to negotiate. The second

27  factor, regarding the amount of damages at issue, is also met because this court has held that

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   individual damages of $4,000 can sustain class actions.  Oestreicher, 502 F. Supp. 2d at 1067–68.

2   Third, Mazur alleges HJA was aware of the shill bidding scheme and did so intentionally to defraud

3   customers.  If proven, this would constitute a deliberate scheme to cheat consumers.  Accordingly,

4   all Shroyer factors are satisfied.  Finally, the adhesive nature of the contract provides the minimal

5   level of procedural unconscionability to render a contract unenforceable if the contract also contains

6   a substantively unconscionable class action waiver.  See Gatton v. T-Mobile USA, Inc., 152 Cal.

7   App. 4th 571, 586–88 (2007).  The class action waiver, if any, is therefore unconscionable and

8   unenforceable.  Consequently, this class action may be brought under the circumstances here.

9                    3.    Fraud

10          Plaintiff's argument that consent to the Terms and Conditions, including the contested

11  provision, was induced by fraud is to no avail.  Her entire argument to this effect is a recitation of

12  the elements of fraud followed by blanket allegations of misrepresentation, knowledge, intent,

13  reliance and damages.  This is nowhere near the level of showing necessary for the court to find the

14  entire contract void.

15

16  II.    Motion to Dismiss

17          Defendant eBay moves to dismiss plaintiff's causes of action one through eleven and twenty-

18  one.[7]  These causes of action allege that eBay made misrepresentations about Live Auctions in order

19  to intentionally attract and defraud its customers.  Specifically, eBay misstated that live auctions

20  were "safe," involved "floor bidders" and were carried out by "carefully-screened, reputable

21  international auction houses."  See generally Complaint.  On a webpage on its site entitled "Are Live

22  Auctions Safe?," eBay states:

23          Bidding on eBay Live Auctions is very safe.  All live auctions are run by reputable
            international auction houses, which are carefully screened by eBay before being
24          authorized to sell to you.  Many of them have hundreds of years of experience in the
            auction business and fully stand behind their merchandise.
25
            Each lot on the Live Auctions site is offered under the auction house's terms and
26          conditions of sale for that particular event.  They usually include both satisfaction and
            authenticity guarantees.  Check the auction overview page of any lot that you might
27          be interested in for a full description of the terms and conditions of sale for that
            auction.  If you have any questions, contact the auction house's administrative
28

                                                    11

1 contact - you can also find that information on the auction overview page.

2 In addition, you can always use the Feedback Forum to instantly check the
"reputation" or business practices of any eBay member.  The Feedback Forum is a

3 place where eBay users leave comments about each other's buying and selling
experiences.  If you're a bidder, check you're [sic] an auction house's Feedback

4 Profile to learn about the way they do business before you place a bid.

5 Somvichian Dec., Exh. C.

6 Based upon the above assertions, plaintiff claims the following:  1) violations of the

7 California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq.;

8 2) violations of the California Unfair Competition Law ("UCL"), California Business Code §§

9 17200 et seq., 17500 et seq.; 3) wilful deception and deceit, California Civil Code §§ 1709, 1710; 4)

10 actual and constructive fraud, California Civil Code §§ 1572, 1573; 5) breach of contract;[8] 6) unjust

11 enrichment; 7) negligence and negligence per se; and 8) violations of the federal RICO statute, 18

12 U.S.C. § 1962(c).  eBay, however, argues that is has no liability because: 1) it is immune from

13 liability under section 230 of the Communication Decency Act ("CDA"); 2) its user agreements

14 have a release of liability; 3) plaintiff's fraud contentions fail to meet heightened pleading

15 requirements; and 4) plaintiff's unjust enrichment and negligence claims are improper.  Each is

16 discussed in turn.

18 A. CDA

19  1. Applicability and Scope

20 The CDA establishes immunity for providers of interactive computer services that provide an

21 online platform allegedly used by third-parties to facilitate wrongful conduct.  Specifically, section

22 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the

23 publisher or speaker of any information provided by another information content provider."  47

24 U.S.C. § 230(c)(1).  The provider of an interactive computer service is broadly defined to encompass

25 "any information service, system, or access software provider that provides or enables computer

26 access by multiple users to a computer server."  Id. § 230(f)(2).  An information content provider is

27 "any person or entity that is responsible, in whole or in part, for the creation or development of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   information provided through the Internet or any other interactive computer service." Id. §

2   230(f)(3).  Here, eBay qualifies as the provider of an interactive computer service.  See Genry v.

3   eBay, 99 Cal. App. 4th 816, 834 (2002) (holding eBay to be a provider of interactive computer

4   services).  Similarly, HJA is an information content provider with respect to information about its

5   wares.  Thus, to the extent plaintiff seeks to hold eBay liable for information provided by HJA, eBay

6   is immune from liability.  See 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no

7   liability may be imposed under any State or local law that is inconsistent with this section.").

8       eBay, however, may be both an interactive computer service as well as an information

9   content provider.  See Anthony v. Yahoo! Inc., 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006)

10  (Whyte, J.) ("It is not inconsistent for eBay to be an interactive service provider and also an

11  information content provider; the categories are usually not mutually exclusive.  The critical issue is

12  whether eBay acted as an information content provider with respect to the information that [plaintiff]

13  claim[s] is false or misleading.").  Plaintiff seeks to hold eBay liable for misconduct with respect to

14  eBay's own statements regarding the safety, circumstances and caliber of its live auctions.  The

15  CDA does not immunize eBay for its own fraudulent misconduct.

16      However, plaintiff's assertion that eBay knew of the seller's illegal conduct and failed to

17  prevent it is nevertheless under the ambit of section 230.  Specifically:

18      Regarding the allegation that eBay knew or should have known about the sellers'
        illegal conduct but failed to prevent it by withdrawing or altering the fraudulent
19      content, the Gentry court stated: 'This is the classic kind of claim that Zeran found to
        be preempted by section 230, . . . one that seeks to hold eBay liable for its exercise of
20      a publisher's traditional editorial functions.'

21  Barrett v. Rosenthal, 40 Cal. 4th 33, 47 (2006) (citing Gentry, 99 Cal. App. 4th at 835).  Similarly,

22  eBay's assertion that the auction houses were screened is not actionable because "'lawsuits seeking

23  to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such

24  as deciding whether to publish . . . —are barred.'"  Gentry, 99 Cal. App. 4th at 828–29 (quoting

25  Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997)).  Screening a potential auction house

26  when deciding whether to include it in Live Auctions is akin to deciding whether to publish and

27  therefore eBay is immune under section 230 for its screening decisions.  eBay represents that it

28

                                                    13

1   "carefully screens" for "reputable" auction houses, but the modifier "carefully" with respect to

2   "screened" and the adjective "reputable" both indicate opinion and are therefore not actionable.

3            2.    <u>Affirmative Representations</u>

4            Independent of the above immunity, eBay's assertions that the live auctions were "safe" and

5   involved "floor bidders" involved with "international" auction houses may still be actionable as

6   affirmative misrepresentations. <u>Gentry</u> is distinguishable in this respect because the assertions of

7   safety there were made upon the basis of user feedback. 99 Cal. App. 4th at 833–34. Specifically,

8   the indicators of safety—the color-coded star symbol, the Power Sellers endorsement and the

9   Feedback Forum—were all driven by eBay users. The Feedback Forum was populated by eBay

10  users and the star symbol and Power Sellers endorsement were merely short-hand representations

11  based upon an aggregation of information in the Feedback Forum. <u>Id.</u> There is no such parallel

12  here. eBay unequivocally stated, of its own volition, that live auctions were "safe" and involved

13  "floor bidders" and "international" auction houses.

14           eBay argues that it makes clear in its Live Auction User Agreement that it: 1) only provides a

15  venue; 2) is not involved in the actual transaction between buyer and seller; and 3) does not

16  guarantee any of the goods offered in any auction. Specifically, eBay is "solely a passive conduit"

17  and "not an auction house," it is "not conducting the live auctions" and it does not have control over

18  the "quality, safety or legality of the items advertised." Somvichian Dec., Exh. B.[9] None of these

19  statements, save possibly the last one, have any bearing upon the credibility of the auction houses

20  that hold auctions on the Live Auctions site. Specifically, these statements, except possibly the last

21  one, do not negate either the fact that eBay vouched for the safety of live auctions or the implicit

22  suggestion that they have investigated the auction houses. Though eBay is correct in asserting that

23  the full contents of the agreement must be scrutinized, <u>see</u> <u>Twombly</u>, 127 S. Ct. at 1972 n.13, these

24  statements, as a whole, do not undermine eBay's representation that Live Auctions are safe.

25           Moreover, the assurance that live auctions are "very safe" is followed by statements that the

26  auction house's terms and conditions "usually include both satisfaction and authenticity guarantees."

27  Somvichian Dec., Exh. C. The webpage goes on to state that the user "can always use the Feedback

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Forum to instantly check the 'reputation' or business practices of any eBay member. . . . If you're a

2  bidder, check you're [sic] an auction house's Feedback Profile to learn about the way they do

3  business before you place a bid." Id.  These statements do not demonstrate that the initial safety

4  assurances were not made by eBay.  Indeed, they indicate that guarantees made by the auction house

5  and the feedback of eBay users add to the safety, but do not demonstrate that eBay's assurances

6  were premised upon the auction house's guarantee and the Feedback Forum.  Similarly, the webpage

7  entitled "Participating in Live Auctions using the Internet is safe, easy, and fun!" explains that, in

8  order to participate, the buyer must: 1) agree to eBay's Live Auction terms and conditions; 2) sign

9  up for each individual auction with the auction house; 3) agree to the auction house's terms and

10  conditions; 4) deal with the auction house directly.  See id, Exh. D.  Again, these statements do not

11  disavow eBay's prior assurances of safety or demonstrate that the safety is premised upon following

12  the four outlined steps.

13          3.      Falsity of the Representations

14       eBay claims that its representations are false only if the HJA engaged in wrongdoing and that

15  the CDA provides a safe harbor for exactly this type of derivative liability.  See Doe v.

16  SexSearch.com, 502 F. Supp. 2d 719 (N. D. Ohio 2007).  In SexSearch, defendant claimed that "all

17  persons on its site are '18+' years of age."  502 F. Supp. 2d at 729.  There, however, defendant's

18  statements were merely a regurgitation of its users' representations.  Specifically, "[i]n order to gain

19  access to SexSearch as a member, all potential members must check a box that appears on the

20  webpage, which states: 'I am over 18, I have read and agree to the terms and conditions and the

21  privacy policy.'" Id.  This action is distinguishable as eBay has not presented any evidence

22  regarding safety assurances it received from HJA and other auctioneers.  In addition, in SexSearch,

23       Plaintiff, as a registered member of the site, knew the membership-registration
     process did not involve an age-verification procedure.  But more importantly,

24       Plaintiff cannot claim he was misled or he reasonably relied on the representation that
     'all members are 18+' when the Terms and Conditions clearly state the website did

25       not guarantee (and took no responsibility for verifying) members' ages.

26  Id. at 729–30.  Though eBay's Live Auctions User Agreement disavows any guarantee that

27  participating auction houses maintain licenses or comply with applicable laws, nothing specifically

28

1    states that eBay does not guarantee that bidding in Live Auctions is safe.  Consequently, SexSearch,

2    which had an explicit waiver, does not apply.

3          eBay claims Prickett v. InfoUSA, Inc., No. 4:05-CV-10, 2006 WL 887431, at *3 (E. D. Tex.

4    Mar. 30, 2006) is applicable here.  In Prickett, a directory listing service assured its customers of the

5    following: "We deliver the utmost quality information, and this is one way we keep track of all the

6    business changes that are happening.  We also call every business to verify the information, so you

7    can be assured of the most current and accurate listings."  2006 WL 887431, at *3.  The Prickett

8    court held, without any analysis:

9          Additionally, the Plaintiffs argue that the Defendant operated as an information
      content provider because the Defendant assures the accuracy of its listings via its
10         verification process.  The Plaintiffs are presumably alleging that they were harmed by
      third party content and that the Defendant is liable for failing to verify the accuracy of
11         the content.  See Barnes v. Yahoo!, Inc., 2005 WL 3005602, *4 (D.Or.2005).  'Any
      such claim by [the Plaintiffs] necessarily treats the [Defendant] as 'publisher' of the
12         content and is therefore barred by § 230.'  Id.  The Plaintiffs' argument that they seek
      to hold the Defendant liable for its alleged failure to verify the accuracy of the listing
13         does not remove this case from the immunity provided by § 230.  See id.  '[The
      Plaintiffs'] claim remains an effort to hold the [Defendant] liable for failing to
14         perform the duties of a publisher, . . .' Id.

15   Id. at *5.  The Barnes court, upon which Prickett relied, held:

16         Plaintiff's argument that she seeks to hold defendant liable only for its alleged
      'failure to fulfil its promise to remove the unauthorized profiles,' does not remove
17         this case from the immunity provided by § 230.  Plaintiff's claim remains an effort to
      hold the service provider liable for failing to perform the duties of a publisher, such
18         as screening or removing third-party content.  See also, Schneider v. Amazon.com,
      Inc., 108 Wash.App. 454, 31 P.3d 37, 41-43 (2001)(court rejected plaintiff's claim
19         that defendant 'promised to remove' allegedly tortuous reviews, but then 'failed to do
      so, and reposted the reviews rather than deleting them.'  Court held that § 230 barred
20         plaintiff's claim because the 'broken promise' claims were based on an alleged
      'failure to remove the posting,' and therefore based on defendant's 'exercise of
21         editorial discretion' subject to § 230's prohibition on publisher liability).

22   Barnes v. Yahoo!, Inc., No. Civ. 05-926-AA, 2005 WL 3005602, at *4 (D. Or. Nov. 8, 2005).  In

23   Prickett and Barnes CDA immunity was established because of a failure to verify the accuracy of a

24   listing or the failure to remove unauthorized profiles.  Since both acts fell squarely within the

25   publisher's editorial function, the CDA was implicated.  The case at bar, however, is opposite.  eBay

26   did not make assurances of accuracy or promise to remove unauthorized auctioneers.  Instead, eBay

27   promised that Live Auctions were safe.  Though eBay styles safety as a screening function whereby

28

UNITED STATES DISTRICT COURT
For the Northern District of California

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1  eBay is responsible for the screening of safe auctioneers, this court is unconvinced.  eBay's

2  statement regarding safety affects and creates an expectation regarding the procedures and manner in

3  which the auction is conducted and consequently goes beyond traditional editorial discretion.

4       Finally, plaintiff's argument that eBay is improperly converting the CDA from a shield to a

5  sword is without avail.  Specifically, prior suits against eBay with respect to shill bidding practices

6  by others does not put eBay on notice with respect to HJA's alleged shill bidding.[10]  Furthermore, it

7  is unclear how eBay's current use of the CDA is as a sword and its prior use was a shield when in

8  both instances eBay invoked the CDA in a motion to dismiss.

9

10       B.     User Agreements

11       The eBay Live Auction User Agreement has a release of liability in favor of eBay for any

12  disputes a user has with an auction house.  Somvichian Dec., Exh. B, § 3(3).  This provision is not

13  applicable in the instant case because plaintiff has an independent dispute with eBay based on

14  eBay's representations.  This is true even though eBay's liability depends upon first establishing

15  HJA's wrongdoings.  In addition, the eBay User Agreement has a provision which provides that

16  "[y]ou will not hold eBay responsible for other users' actions or inactions, including things they

17  post."  Id., Exh. A, Liability section.  This provision suffers from the same ailment as above.

18       eBay's argument that its User Agreements fully disclaim any warranties by eBay regarding

19  the auction houses' compliance with the law is also to no avail for the reasons stated above.

20  Furthermore, eBay states very conspicuously that Live Auctions are safe and then buries this

21  disclaimer in a User Agreement.  These statements, if contradictory, require that this court deny the

22  motion to dismiss.  In fact, since eBay has far superior bargaining power and made both of these

23  representations, any ambiguities ought to be construed against it.

24       Finally, plaintiff's argument regarding procurement of the agreements by fraud suffer from

25  the same defects as those enumerated above.  Specifically, relying on eBay's statements that the

26  auctions were safe and run by carefully screened auctioneers to set aside the User Agreement puts

27  the cart before the horse.  Before any agreement between plaintiff and eBay can be set aside,

28

17

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    plaintiff must first demonstrate that HJA's actions converted those statements into

2    misrepresentations and that plaintiff relied upon those misrepresentations to her detriment.

3

4        C.    <u>Fraud</u>

5        eBay argues that plaintiff fails to allege that she ever read or relied on any eBay statements

6    when deciding to purchase from HJA.  This is correct.  Plaintiff pleads reliance in a conclusory

7    manner and merely regurgitates the statements that allegedly induced reliance.  These allegations,

8    which include eBay's assurances of "safety" and the participation of "carefully-screened,

9    international auction houses" purportedly put eBay on notice of the alleged misrepresentations that

10   form the basis of plaintiff's claims.  Though "the court is not required to accept legal conclusions

11   cast in the form of factual allegations," it may accept them if those conclusions can reasonably be

12   drawn from the facts alleged.  <u>Clegg,</u> 18 F.3d at 754–55.  Here, however, plaintiff's contentions are

13   vague and conclusory.  Thus, the court holds that plaintiff's fraud based claims, including the

14   CLRA, UCL, and RICO claims, are not properly pled.

15       The dictates of Federal Rule of Civil Procedure 9(b) require plaintiff to plead with specificity

16   the facts, circumstances, statements and misrepresentations that constitute the fraud.  As stated

17   above, plaintiff must particularly set forth the time, place, and nature of the misleading statements,

18   misrepresentations and specific acts of fraud.  Plaintiff must explain why the statement or omission

19   complained of was false and misleading.  The same level of specificity is required with respect to

20   reliance.  Finally, regarding the RICO claim, plaintiff is to provide the details requested in the RICO

21   standing order given to plaintiff's counsel during the hearing on January 14, 2008.

22       Due to a lack of particularity, the court dismisses plaintiff's fraud-based claims.  However, in

23   order to allow plaintiff to allege fraud with specificity, the court grants plaintiff leave to amend her

24   complaint.

25

26       D.    <u>Unjust Enrichment</u>

27       eBay also argues that unjust enrichment cannot be brought as a stand-alone claim if a legally

28

18

1  enforceable contract between the parties exists. The section on unjust enrichment in the complaint

2  asks for restitution as a remedy. Plaintiff's briefing also suggests that the claim was included for the

3  remedy in case the User Agreement is unenforceable. Again, putting substance over form, this court

4  holds that plaintiff may validly seek restitution damages independent of how it is labeled. See

5  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004). Furthermore, inconsistent theories of

6  recovery may be alleged in a complaint. Steps may be taken at trial to prevent duplicative recovery.

7

8        E.    <u>Negligence</u>

9        Finally, eBay argues that plaintiff's negligence and negligence per se claims should be

10  dismissed as an improper effort to manufacture a tort from a contract dispute. Here, however,

11  plaintiff's allegations sound in fraud and not breach of contract. Therefore, <u>Erlich v. Menezes</u>, 21

12  Cal. 4th 543 (1999), does not apply. Plaintiff claims that since eBay guaranteed safety, they owed a

13  duty of care and were consequently in breach of that duty when they allowed shill bidding practices

14  to occur. This is sufficient to state a valid claim. eBay's argument that plaintiff's negligence claims

15  run afoul of the economic loss rule applies to damages only and is therefore premature.

16  Furthermore, the economic loss rule may apply to a manufacturer's liability only. <u>See</u> <u>Aas v.</u>

17  <u>Superior Court</u>, 24 Cal. 4th 627, 636 (2000) (superceded on other grounds by Cal. Civ. Code

18  §§ 895–945.5).

19

20  <u>CONCLUSION</u>

21        For the foregoing reasons, defendants' Motions to Stay are DENIED, eBay's Motion to

22  Dismiss is GRANTED in part and DENIED in part and Plaintiff's Motion to Strike is GRANTED.

23        As to those claims dismissed with leave to amend, an amended complaint, if any, shall be

24  filed within thirty (30) days of the date of this order. The answer shall be filed within thirty (30)

25  days of the filing of the amended complaint.

26

27        IT IS SO ORDERED.

28

19

Dated: March 3, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

**ENDNOTES**

1.      The court hereby takes judicial notice of the following under Federal Rule of Evidence 201(b):  1) eBay's User Agreement; 2) eBay's Live Auction User Agreement; 3) eBay's "Are Live Auctions Safe?" webpage; 4) eBay's "How Live Auctions Work" webpage; and 5) Butler v. eBay, Inc., 06-02704 JW (N. D. Cal. Dec. 13, 2006) (Ware, J.) (order granting defendant eBay's motion to dismiss the third cause of action).  See generally Somvichian Dec.

2.      Plaintiff argues that the standard from Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 982 (9th Cir. 2007), be used here.  The Shroyer court held that procedural unconscionability is determined by "focusing on oppression or surprise due to unequal bargaining power" in order to set out a three-part standard. 498 F.3d at 982–83.  Specifically, a contract was procedurally unconscionable if: 1) the contract was a "a consumer contract of adhesion" drafted by a party with superior bargaining power; 2) the agreement occurred "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and 3) "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."  Id. at 983 (quoting Cohen v. DirecTV, Inc., 142 Cal. App. 4th 1442, 1451–53 (2006)).  This three-part standard, however, is specific to class action waivers in consumer contracts and is therefore inapplicable here.  Id. at 983. The broader oppression and surprise standard, however, is applicable.

3.      The court considers substance over form.  Plaintiff's characterization of her motion as a motion to strike—which is only applicable to pleadings—is not fatal.  The court will use the version of the agreement most reflective of reality when making its decision.

4.      HJA argues that it submitted the Terms and Conditions to eBay with section breaks and that eBay must have removed the section breaks before posting the document.  Who removed the section breaks, however, is irrelevant because the issue is what plaintiff saw when she accepted the Terms and Conditions.  There is no dispute that plaintiff saw the Terms and Conditions without section breaks.  Similarly, the assertion that the Terms and Conditions may sometimes fail to fully load is irrelevant because there has been no contention by plaintiff that the entire text was not available to her when she signified assent.

5.      Plaintiff claims that since In-House Attorneys makes no mention of arbitration services on its website, the contested provision must have been drafted by In-House.  Drafting the provision, however, is insufficient to find substantive unconscionability as even reputable arbitration agencies such as the American Arbitration Association provide language that parties may use in their contracts.  See Hongola Dec., Exh. C at 4.

6.      Since the contested clause is held to be invalid, its scope is irrelevant.  Consequently, both defendants' motions to stay are also denied.

7.      Plaintiff has withdrawn her fifth cause of action against eBay.

UNITED STATES DISTRICT COURT
For the Northern District of California

8.      Plaintiff appears to have withdrawn her breach of contract claim.  See Pl.'s Opp. to Motion to Dismiss at 7 ("Defendant is being sued for fraud, not breach of contract.").

9.      The eBay Live Auction User Agreement states, in relevant part:
> **3. eBay is Only a Venue.**
> > **1. Services.** We are not an auction house and are not conducting the live auctions. Our service allows you to participate in live auctions conducted by the AHs. We are solely a passive conduit to facilitate communication between you and the AH. We reserve the right in our sole discretion to change some or all of our services at any time.
> > **2. Control.** We have no control over the quality, safety or legality of the items advertised, the truth or accuracy of the listings, the ability of AHs to sell or the ability of buyers to buy items. We do not ensure that a buyer or seller will actually complete a transaction.
> > **3. Release.** Because we are not involved in the actual transaction between buyers and AHs, in the event that you have a dispute with an AH, you release eBay (and our officers, directors, agents, parent, subsidiaries, joint ventures, and employees) from claims, demands and damages (actual and consequential) of every kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way connected with such disputes. If you are a California resident, you waive California Civil Code § 1542, which says: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."
> **4. Auction Houses.** AHs will list items up for auction for you to bid on. Auction dates and times, as well as the number, character, and order and schedule of the items to be auctioned are set by the AH and are subject to change without notice. Individual lots and items may be modified or changed at any time. Some lots and items that are made available on the auction floor will not be included in the online live auction services. We do not control the information that is provided by AH's and which is made available through our system. We do not guarantee that the AH's maintain proper auctioneer's licenses or comply with all laws.

Somvichian Dec., Exh. B.

10.     The court hereby takes judicial notice of the following pursuant to Federal Rule of Evidence 201: 1) Amended Class Action Complaint with Jury Demand, Farris v. GoAntiques, Inc., et al., 2:05-CV-00227 (S. D. Ohio, dismissed Feb. 6, 2006); and 2) eBay's Amended Motion to Dismiss Plaintiff's First Amended Complaint, Farris v. GoAntiques, Inc., et al., 2:05-CV-00227 (S. D. Ohio, dismissed Feb. 6, 2006).  See generally Siroka Dec.