1   CRAIG STUART LANZA*
    JOHN BALESTRIERE*
2   WILLIAM S. HOLLEMAN†
    **BALESTRIERE LANZA PLLC**
3   225 Broadway, Suite 2700
    New York, NY 10007
4   Telephone: (212) 374-5404
    Facsimile:  (212) 208-2613
5   * *Pro Hac Vice* application pending

6   MATTHEW A. SIROKA (CASBN 233050)
    **LAW OFFICE OF MATTHEW A. SIROKA**
7   600 Townsend Street, Suite 233050
    San Francisco, CA 94103
8   Telephone: (415) 522-1105
    Facsimile:  (415) 522-1506
9   Email:     mas@defendergroup.com
    *Attorneys for Plaintiffs and the Class*
10

                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                       SAN FRANCISCO DIVISION
13

14   **MICHELE MAZUR and SARAH BATES,**          Case No. C 07 3967 MHP
     **individually and for all others similarly**
15   **situated,**

16                         **Plaintiffs,**        **FIRST AMENDED**
                                                  **CLASS ACTION COMPLAINT**
17        **- against -**

18   **EBAY, INC., HOT JEWELRY**
     **AUCTIONS.COM d/b/a JEWELRY**               **JURY TRIAL DEMANDED**
19   **OVERSTOCK AUCTIONS.COM d/b/a**
     **PARAMOUNT AUCTIONS, NEIMANS**
20   **JEWELRY, GOANTIQUES.COM, INC.,**
     **and DOES 1-200, inclusive,**
21
                          **Defendants.**
22

23

24

25

26

27   / / /

28

1

## TABLE OF CONTENTS

2

3    NATURE OF THE CASE ........................................................................................... 1

4    JURISDICTION AND VENUE ................................................................................. 2

5    PARTIES .................................................................................................................... 2

6    CLASS ACTION ALLEGATIONS ......................................................................... 4

7    STATEMENT OF FACTS ........................................................................................ 6

8        I.      eBay Promises that Live Auctions Are Safe; They Are Not ................. 6

9        II.     Some Auctions, Including All Auctions Held By Seller Defendants, Are

10               Complete Frauds ........................................................................................ 9

11       III.    The Details of HJA's Fraud ..................................................................... 10

12       IV.     The Details Of Neimans's Fraud .............................................................. 12

13       V.      The Details of GoAntiques's Fraud ........................................................ 13

14       VI.     Seller Defendants are Engaged Shill Bidding SchemeS that eBay Does

15               Nothing to Stop and Which eBay Probably Even Coordinates ........................ 16

16       VII.    How eBay Profits From This Scheme and Why They Do Nothing to Stop

17               Fraudulent Auctions and Shill Bidding ................................................. 17

18       VIII.   Details of eBay's Fraudulent Misrepresentation ................................... 19

19       IX.     Defendants eBay and HJA Have Defrauded Plaintiff Mazur and Countless

20               Other Class Members ............................................................................... 20

21       X.      Defendants eBay and Neimans Have Defrauded Plaintiff Bates and

22               Countless Other Class Members .............................................................. 21

23       XI.     Defendants eBay and GoAntiques Have Defrauded Plaintiff Bates and

24               Countless Other Class Members .............................................................. 22

25       XII.    Defendants Are Engaged in an Elaborate Scheme to Defraud That Violates

26               the Racketeer Influenced and Corrupt Organizations Act ................... 23

27    CAUSES OF ACTION AGAINST EBAY ............................................................. 26

28       Count 1—Violations of Cal. Civil Code §§ 1750 et seq. .............................. 26

Count 2 — Violations of Cal. Bus. & Prof. Code §§ 17200 et seq. .................................. 28

Count 3 — Violations of Cal. Bus. & Prof. Code §§ 17500 et seq. .................................. 29

Count 4 — Violations of Cal. Civil Code §§ 1709, 1710 ...................................................... 31

Count 5 — Violations of Cal. Civil Code § 1572 .................................................................. 32

Count 6 — Violations of Cal. Civil Code § 1573 .................................................................. 34

Count 7 — Breach of Contract .............................................................................................. 34

Count 8 — Unjust Enrichment .............................................................................................. 35

Count 9 — Negligence ............................................................................................................ 36

Count 10 — Negligence Per Se .............................................................................................. 36

CAUSES OF ACTION AGAINST HJA ..................................................................................... 37

Count 11 — Violations of Cal. Civil Code §§ 1750 et seq. .................................................. 37

Count 12 — Violations of Cal. Bus. & Prof. Code §§ 17200 et seq. ................................... 40

Count 13 — Violations of Cal. Bus. & Prof. Code §§ 17500 et seq. ................................... 41

Count 14 — Violations of Cal. Civil Code §§ 1709, 1710 ................................................... 42

Count 15 — Violations of Cal. Civil Code § 1572 ............................................................... 43

Count 16 — Violations of Cal. Civil Code § 1573 ............................................................... 45

Count 17 — Breach of Contract ............................................................................................ 45

Count 18 — Unjust Enrichment ............................................................................................ 46

CAUSES OF ACTION AGAINST NEIMANS ............................................................................ 47

Count 19 — Violations of Cal. Civil Code §§ 1750 et seq. .................................................. 47

Count 20 — Violations of Cal. Bus. & Prof. Code §§ 17200 et seq. ................................... 49

Count 21 — Violations of Cal. Bus. & Prof. Code §§ 17500 et seq. ................................... 50

Count 22 — Violations of Cal. Civil Code §§ 1709, 1710 ................................................... 51

Count 23 — Violations of Cal. Civil Code § 1572 ............................................................... 53

Count 24 — Violations of Cal. Civil Code § 1573 ............................................................... 54

Count 25 — Breach of Contract ............................................................................................ 55

Count 26 — Unjust Enrichment ............................................................................................ 56

CAUSES OF ACTION AGAINST GOANTIQUES ..................................................................... 56

**Count 27 — Violations of Cal. Civil Code §§ 1750 et seq.** ............................................. **56**

**Count 28 — Violations of Cal. Bus. & Prof. Code §§ 17200 et seq.** ............................... **59**

**Count 29 — Violations of Cal. Bus. & Prof. Code §§ 17500 et seq.** ............................... **60**

**Count 30 — Violations of Cal. Civil Code §§ 1709, 1710** ................................................ **61**

**Count 31 — Violations of Cal. Civil Code § 1572** ............................................................ **62**

**Count 32 — Violations of Cal. Civil Code § 1573** ............................................................ **64**

**Count 33 —  Breach of Contract** ........................................................................................ **65**

**Count 34 —  Unjust Enrichment** ......................................................................................... **65**

**CAUSES OF ACTION AGAINST ALL DEFENDANTS** ....................................................... **66**

**Count 35 — Violations of 18 U.S.C.  § 1962(c)** ................................................................ **66**

**Count 36 — Violations of 18 U.S.C.  § 1962(a)** ................................................................ **68**

**Count 37 — Violations of 18 U.S.C.  § 1962(d)** ................................................................ **69**

**PRAYER FOR RELIEF** ............................................................................................................ **69**

**JURY DEMAND** ....................................................................................................................... **70**

1    Michele Mazur ("Mazur") and Sarah Bates ("Bates"), by their attorneys
2    Balestriere Lanza PLLC, for their First Amended Class Action Complaint respectfully
3    allege as follows upon information and belief, except as to allegations concerning
4    Plaintiffs or their counsel, which are made upon personal knowledge, and except as
5    otherwise indicated herein:

6    <u>**NATURE OF THE CASE**</u>

7    1.    Plaintiffs and the class of others similarly situated ("the Class" or "Class
8    Members") are victims of fraud on a grand scale. It is a fraud that has gone on for years,
9    facilitated, and perhaps even coordinated, by the world's largest online auction arena,
10   thereby costing the Class upwards of tens of millions of dollars. Defendants Hot Jewelry
11   Auctions.com ("HJA"), Neimans Jewelry ("Neimans"), and GoAntiques, Inc.
12   ("GoAntiques") (collectively, with Does 1-100, "Seller Defendants") have been
13   systematically defrauding Class Members in a fake or "shill" bidding operation made
14   possible by the gross misconduct, negligence, apparent coordination, and actual fraud of
15   eBay, Inc. ("eBay") (all defendants together "Defendants").

16   2.    At the end of the twentieth century, eBay launched a new online auction
17   platform known as eBay Live Auctions. These auctions differ from the regular, well-
18   known eBay auction format in several ways.

19   3.    In ordinary eBay auctions, sellers list items for sale that only registered
20   eBay members may bid on using the eBay website. The bidding period typically lasts
21   anywhere from several hours to several days.

22   4.    eBay Live Auctions, in contrast, allow Internet bidders to participate in live
23   auctions actually physically held on the floors of auction houses throughout the world.
24   The appeal is that registered eBay users can compete—through the Internet—with non-
25   eBay users who place live bids at real old-fashioned auctions. But despite eBay's
26   assertions that these auctions are "very safe," that "all live auctions are run by reputable
27   international auction houses, which are carefully screened by eBay," and that "floor
28   bidders" place their bids offline (not using the Internet), eBay facilitates hundreds of

1    auctions managed by Seller Defendants, including Does 1-100, that exist only to increase

2    the price Class Members pay for goods.  These auctions are marred by shill bidding and

3    maintained on no auction house floor; these auctions are completely fake.

4         5.    By participating in the sale of junk jewelry at artificially inflated prices,

5    Seller Defendants and eBay earn fat profits, while unsuspecting Class Members are

6    scammed out of tens of millions of dollars.  Seller Defendants are unjustly enriched by

7    charging higher prices than they otherwise could without this fraud.

8         6.    Plaintiffs bring this Class Action pursuant to Federal Rules of Civil

9    Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of all persons who have won, or

10   would have won but for fake shill bids, those eBay Live Auctions promoted by Seller

11   Defendants and operated by eBay between July 31, 2004 and April 2, 2008.

12        7.    Defendants are all fully aware of this illegal conduct and have clearly

13   taken no action to stop.  Accordingly, Plaintiffs and Class Members are forced to sue

14   Defendants to put a stop to its shill bidding practices.

15                        **JURISDICTION AND VENUE**

16        8.    This Court has subject matter jurisdiction over this nationwide class action

17   pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005

18   because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and

19   is a class action in which some members of the Class are citizens of states different than

20   Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).  This Court has personal jurisdiction over

21   Defendants eBay, HJA, and Neimans because they are based in the State of California

22   and personal jurisdiction over Defendant GoAntiques because it transacts significant

23   business in the State.

24        9.    Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Northern District of

25   California because Defendants resides in this District.

26                              **PARTIES**

27        10.   Plaintiff Michele Mazur is a citizen of Wisconsin who regularly transacts

28   business on eBay.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO:  C 07 3967 MHP

2

11.     Plaintiff Sarah Bates is a citizen of Wyoming who regularly transacts business on eBay.

12.     Defendant eBay is a Delaware corporation with its principal place of business at 2145 Hamilton Avenue, San Jose, California 95125.   According to the corporation's quarterly report filed with the Securities and Exchange Commission on February 29, 2008, eBay earned over $7.6 billion in net revenues in 2007, and has approximately 83 million active users.  eBay also has over 233 million registered users.

13.     Defendant HJA is a business entity of unknown organization, located at 2057 South Atlantic Boulevard, Los Angeles, California 90040.  HJA operates Internet jewelry auctions using eBay Live Auctions

14.     Defendant Neimans is a business entity of unknown organization, located at 17322 Murphy Avenue, Irvine, California 92614.  Neimans operates Internet jewelry auctions using eBay Live Auctions.

15.     Defendant GoAntiques is an Ohio corporation with a principal place of business at 94 North High Street, Suite 300, Dublin, Ohio 43017.  GoAntiques operates Internet auctions using eBay Live Auctions selling jewelry and other products.

16.     The true names and capacities (whether individual, corporate, associate, or otherwise) of Defendants Does 1-200, inclusive, are unknown to Plaintiffs. Does 1-100 are unknown sellers through eBay Live Auctions making use of shill bidding to drive up the price of goods at their auctions.  They may sell jewelry, such as HJA and Neimans, or they may sell other products, such as GoAntiques.  Does 101-200 are individuals who were personally involved in the fraudulent behavior of Defendants.  Does 101-200 very likely include eBay directors and employees but may also include individuals who work at or own Seller Defendants.  Therefore, Plaintiffs sue those Defendants by such fictitious names pursuant to Cal. Civ. Proc. Code § 474.   Plaintiffs further allege that each fictitiously-named Defendant is in some manner responsible for the acts and occurrences alleged herein.  Plaintiffs will seek leave of this Court to amend this Complaint to state the real names and capacities of said fictitiously-named Defendants when the same have

1    been ascertained.  Plaintiffs are informed and believe, and on that basis allege, that the

2    fictitiously-named Defendants proximately caused their damages.

3                              **CLASS ACTION ALLEGATIONS**

4         17.    Plaintiffs bring this class action pursuant to Federal Rule of Civil

5    Procedure 23 ("Rule 23") in their representative capacity on behalf of themselves and the

6    Class of all persons similarly situated, defined as follows:

7              All persons in the United States who won auctions managed

8              by Seller Defendants and operated by eBay, or who would

9              have won such auctions by virtue of being the highest bidder

10             who was not a shill bidder, from July 31, 2004 to April 2, 2008

11             ("Class Period").

12        18.    **Numerosity.** Although the exact number of Class Members is presently

13   unknown to Plaintiffs (but is known to Defendants), Plaintiffs believe that there are at

14   least tens of thousands of consumers who have made millions of purchases during the

15   Class Period.  There are enough Class Members to support multiple online auctions per

16   day and enough to compel each Seller Defendant to sponsor one auction every minute.

17   The members of the Class are so numerous that joinder of all members is impracticable.

18        19.    **Commonality.** A substantial pool of questions of law and fact exists that is

19   common to the Class.  Such common questions include, but are not limited to:

20             a.  Whether Seller Defendants ever hosted live auctions on any auction

21                 house floor;

22             b.  Whether eBay represented to Class Members that sellers involved with

23                 eBay Live Auctions were carefully screened, and that bidding in these

24                 auctions was safe;

25             c.  Whether Seller Defendants were orchestrating a shill bidding operation

26                 designed to defraud Class Members;

27

28

d.  Whether eBay took any actions to regulate shill bidding in response to complaints by Class Members and consumer protection groups concerning Seller Defendants; and

e.  Whether, as a result of Defendants' misconduct, Plaintiffs and the Class are entitled to restitution, disgorgement, equitable relief, and other relief, and if so, the amount and nature of such relief.

20.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are ordinary eBay users who, along with all Class Members, have been injured by the same wrongful acts and practices of Defendants as alleged herein.

21.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in the prosecution of complex and class litigation.

22.    **Superiority.** A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender.  This action will result in the orderly and expeditious administration of Class claims.  Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations.

23.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

24.    **Maintainability.** This action is properly maintainable as a class action for the prior independent reasons and under the following portions of Rule 23:

a.  The individual amounts of restitution involved, while significant, are generally so small that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

1          b.  Individual actions would create a risk of inconsistent results and would

2              be unnecessary and duplicative of this litigation;

3          c.  Defendants have acted or refused to act on grounds generally

4              applicable to the Class, thereby making appropriate final injunctive,

5              declaratory, or other appropriate equitable relief with respect to the

6              Class as a whole; and

7          d.  Individual actions would unnecessarily burden the courts and waste

8              judicial resources.

9     25.    **Predominance.** Questions of law and fact common to members of the Class

10  predominate over any questions affecting only individual members.

11     26.    Notice to the members of the Class may be accomplished inexpensively,

12  efficiently, and in a manner best designed to protect the rights of all Class Members.

13     27.    California, as the state of the headquarters of all Defendants, is the center

14  of gravity for this action such that it is appropriate and consistent with existing law to

15  certify a nationwide class of consumers, applying California law.

16     28.    Certification of a nationwide class under the laws of California is

17  appropriate because:

18          a.  All Defendants conduct substantial business in California;

19          b.  Defendants eBay, HJA, and Neimans maintain principal offices and

20              headquarters in California; and

21          c.  A significant number of Class Members reside in California.

22                   **<u>STATEMENT OF FACTS</u>**

23  **I.**     **EBAY PROMISES THAT LIVE AUCTIONS ARE SAFE; THEY ARE NOT**

24     29.    Since eBay Live Auctions launched in September 2000, the technology has

25  merged traditional auction houses and the Internet to create a powerful new medium for

26  economic transactions.  Using eBay Live Auctions, anyone connected to the Internet can

27  electronically place bids in auctions that are occurring on the floors of auction houses,

28  competing with live bidders.

30.    Several major auction houses, including Sotheby's, have embraced the forum.   In 2001, a Norman Rockwell painting entitled "The Dugout" was sold for $345,000 through eBay Live Auctions.

31.    Today, there are sixteen separate categories of goods sold in eBay Live Auctions, ranging from antiques to wine.   There are usually several auctions taking place during any given day, and many items sell for less than $1,000.

32.    Visitors to ebayliveauctions.com are greeted with a screen that advertises current and upcoming auctions.   By clicking the respective buttons, it is possible to either "Bid Now" or "View Live." (Partial screen shot below; complete screen shot attached as Exhibit A).



After clicking "View Live," a new web page opens with an image of the item currently being auctioned.   Under this image is a box that describes the auction as it occurs, showing bids as they are placed, one line at a time.   (Partial screen shot below; complete screen shot attached as Exhibit B).

| Message History: | # of bids: 23 |
|---|---|
| Floor Bid: US $ 15 | |
| Internet bid: US $ 18 (Internet bidder) | |
| Internet bid: US $ 21 (Internet bidder) | |
| Floor Bid: US $ 24 | |
| Internet bid: US $ 27 (Internet bidder) | |
| Internet bid: US $ 30 (Internet bidder) | |
| Floor Bid: US $ 33 | |
| Floor Bid: US $ 55 | |
| Internet bid: US $ 56 (Internet bidder) | |
| Floor Bid: US $ 61 | |
| Floor Bid: US $ 66 | |
| Internet bid: US $ 71 (Internet bidder) | |
| Floor Bid: US $ 76 | |
| Internet bid: US $ 81 (Internet bidder) | |
| Floor Bid: US $ 150 | |
| Internet bid: US $ 151 (Internet bidder) | |
| Floor Bid: US $ 200 | |
| Floor Bid: US $ 250 | |

33.    The draw of an eBay Live Auction is the competition between two classes of bidders: "Internet bidders" who place their bids online using eBay Live Auctions and

"floor bidders" who are supposedly physically present on the floor of the auction house. eBay defines floor bidders as "[b]idders participating offline in an auction." They explain further, "Offline bids can take the form of absentee bids placed in person or via fax, real time phone bids, or by a bidder physically present on the auction room floor during an event."[1]

34.    Any potential Internet bidder first encounters a header entitled, in large text, "How Live Auctions work." All Internet bidders on the eBay Live Auction platform are forced to read before going further a proclamation by eBay that "Participating in Live Auctions using the Internet is safe, easy, and fun!" eBay also says,

> During the event, you can follow everything that is happening in the auction house right here on the Live Auctions site! You can place bids against other Internet bidders as well as bidders on the auction house floor. If you prefer, you can just watch the live bidding.[2]

35.    On that same initial page which all Internet bidders, including Plaintiffs, must see before bidding, there is a header called, "Are Live Auctions Safe?" eBay begins its answer with the assertion, "Bidding on eBay Live Auctions is very safe."[3]

36.    eBay deliberately cultivates the impression that its auctions are operated by carefully vetted and internationally renowned sellers. In language clearly calculated to allay the concerns of the prospective bidder, eBay writes, "All live auctions are run by reputable international auction houses, which are carefully screened by eBay before being authorized to sell to you. Many of them have hundreds of years of experience in the auction business and fully stand behind their merchandise."[4]

---

[1] http://pages.ebay.com/liveauctions/help/welcome/terminology.html, (Viewed July 26, 2007, last viewed March 21, 2008).

[2] http://pages.ebay.com/liveauctions/help/welcome/how_works.html (viewed July 26, 2007, last viewed March 21, 2008).

[3] http://pages.ebay.com/liveauctions/help/welcome/lasafe.html (viewed July 26, 2007, last viewed March 21, 2008).

[4] http://pages.ebay.com/liveauctions/help/welcome/lasafe.html (viewed July 26, 2007, last viewed March 21, 2008).

37.     Under a header entitled "Seller Guarantee in eBay Live Auctions," eBay insists, "The auction houses who [sic] are part of eBay Live Auctions are leaders in their fields, with world-class reputations."[5]

38.     But despite each of these assertions that "all" live auctions are run by auction houses that are "carefully screened," eBay allows hundreds of fraudulent and fake auctions to occur on a daily basis.  As shown below, these auctions not only *do not occur* on the floor of auction houses with "world-class reputations." They do not occur on *any* floor at all.  They are *not* "safe."  They are *not* "run by reputable international auction houses."  The vendors could *not* have *possibly* been "screened by eBay before being *authorized* to sell to you" (emphasis added) if Plaintiffs' counsel—without the inside information eBay has—could determine that the vendors like Seller Defendants are engaged in shilling bidding.  eBay makes a series of misrepresentations to encourage Class Members to make purchases and increase its bottom line.

## II.     SOME AUCTIONS, INCLUDING ALL AUCTIONS HELD BY SELLER DEFENDANTS, ARE COMPLETE FRAUDS

39.     On almost every day of the week, Seller Defendants run a series of auctions through eBay Live Auctions.   These auctions can be found online at ebayliveauctions.com.

40.     Unlike other auctions, Seller Defendants operate some auctions that are designed to last only one minute.  Each item being auctioned off is knows as a "lot," and each series of lots is known as a "catalog."  Seller Defendants regularly operate catalogs of several hundred lots, lasting as long as 12 hours.

41.     During these auctions, Seller Defendants hawk bracelets, rings, necklaces, earrings, antiques, paintings, and other items.  The jewelry products consist primarily of "déclassé" gems which are set among cheap diamonds or gold.  Déclassé gems are

---

[5] http://pages.ebay.com/liveauctions/help/welcome/laguarantee.html (viewed July 26, 2007, last viewed March 21, 2008).

1  defined by jewelers as low-quality, unpolished, and flat stones that can be purchased for

2  several dollars apiece.

3      42.    By putting déclassé gems in a decent setting, Seller Defendants advertise

4  auctions for items with labels like "CERTIFIED 3 CAROT RUBY AND DIAMOND

5  RING, 18KT GOLD," or "CERTIFIED 11.75ctw EMERALD & DIAMOND RING 14KT

6  GOLD," or "ACA CERTIFIED 1.75ctw TANZANITE & DIAMOND RING 14KT GOLD."

7  These headings are misleading.

8      43.    Seller Defendants sell their wares on eBay Live Auctions.  According to

9  eBay, these auctions pit Internet bidders against floor bidders who are offline.  This is

10 exactly the point of eBay Live Auctions.

11 **III.    THE DETAILS OF HJA'S FRAUD**

12     44.    Defendant Hot Jewelry Auctions.com represents that its auctions are

13 hosted live.  At its website,[6] it says, "HOST OUR LIVE AUCTIONS.  Have fun and make

14 money as easy as 1, 2, 3! You will be the Auctioneer at this party! We are looking for a

15 few good people to host our Live Jewelry Auction Events at home, work, church or

16 wherever possible!"

17     45.    These are lies.  People are simply not hosting "Live Jewelry Auction

18 Events" at their homes, workplaces, churches, or anywhere else.  As noted above, these

19 auctions sometimes take place *every minute* for a *12-hour* period.  During these auctions,

20 the impossible occurs (if these auctions were actually live): *every single item* is sold, and

21 every item is bid on multiple times, presumably by multiple bidders.   The most

22 energetic auctioneer in the world could not possibly host a twelve-hour auction with

23 auctions literally every minute, in a room of enough people to bid back and forth for the

24 entire day.

25     46.    Despite this seeming impossibility, when one visits ebayliveauctions.com

26 and clicks the "View Live" button for HJA's auctions, they find *constant* bidding.  Within

27

28 [6] http://www.hotjewelryauctions.com/affiliates.asp#affiliates (viewed July 26, 2007, last viewed March 21, 2008).

1    the first six seconds of a given auction, there can be as many as 14 bids, supposedly

2    placed by actual people, physically present at the auction floors. Within the next *second*,

3    another *six* bids will appear on the screen, resulting in 20 live bids in seven seconds,

4    made and recorded by live individuals, if HJA is to be believed. Significantly, these

5    putative "floor bidders" do nearly *all* of the bidding, driving the price of the jewelry up

6    for everyone, including real users bidding online.

7           47.     A     representative     from     Defendant     Hot     Jewelry     Auctions.com

8    acknowledged this fraud. In a telephone conversation dated July 9, 2007, a sales

9    representative from Hot Jewelry Auctions.com was asked if it were possible to attend a

10    live auction. He stated, *"We do not have live auctions."* He claimed that the "floor

11    bidders" are actually "VIPs" who place bids "from their homes using the Internet."

12           48.     Despite this admission, eBay continues to represent that floor bidders are

13    "offline" bidders, and that its auctions allow Internet users to "bid in real time on

14    auctions taking place on the floor of some of the world's greatest auction houses!"[7]

15           49.     The claim that "floor bidders" in Defendant HJA's auctions are actually

16    "VIPs" is troubling for several reasons. First, HJA's statement that these individuals

17    place bids via the Internet raises the critical question of why they are called "floor

18    bidders" instead of "Internet bidders" on the eBay Live Auctions website. Second,

19    HJA's website does not mention—on any page—the prospect of becoming a VIP. The

20    label does not really exist. Third, unlike registered eBay users who participate in the

21    auctions as "Internet bidders," the so-called "floor bidders" are not members of eBay

22    and are not monitored by eBay in the same way. Floor bidders do not have to submit

23    any personal information or billing information to eBay, and thus are entirely free from

24    scrutiny. HJA exploits this weakness in the eBay Live Auctions forum to its advantage.

25    The term VIP sounds suspiciously like a euphemism for "employee," or "hired shill

26    bidder."

27

28

---

[7] http://pages.ebay.com/liveauctions/help/welcome/overview.html (viewed July 26, 2007, last viewed).

50.    In fact, upon information and belief, individuals who work at HJA's offices in Los Angeles are some of the individuals engaged in this shill bidding. Within HJA's corporate headquarters, approximately half a dozen HJA employees working approximately a dozen hours or more every day work in what HJA calls "the Click Room." In "the Click Room" these HJA employees pretend to be the live bidders that Internet bidders are bidding against. The room is apparently so named because these HJA employees defraud Internet bidders—day after day, week after week, for years during the Class Period—by clicking away on their mouses, driving up the prices that Internet bidders eventually pay.

## IV.    THE DETAILS OF NEIMANS'S FRAUD

51.    Neimans's auctions contain a pattern of bidding identical to HJA's, featuring constant bidding by "floor bidders," driving up prices at a rapid rate and conveying to Internet bidders the false sense of the value of and demand for the jewelry that Neimans sells.

52.    Defendant Neimans's website states, "We start almost all of our auctions at $1. There are No Reserve prices, and No gimmicks."[8]

53.    Just like Defendant Hot Jewelry Auctions.com, and despite its participation in eBay Live Auctions, Neimans also does not host auctions from any auction house floor. Its website defines "live auctions" as: "Those auction [sic] which are meant for certain interval and the bidding of an item *goes online only*." (emphasis added). Amid the confusing grammar, the phrase "online only" is clear enough.[9]

54.    No investigative phone call is needed to discern whether Neimans sponsors real live auctions. The same webpage cited above states, "We *only* accept PAYPAL [sic] as a mode of payment." (emphasis added). PayPal is an electronic payment system that enables anyone with an e-mail address to transfer funds via the

---

[8] http://www.neimansjewelry.com/Shop/Control/fp/SFV/31072/view_page/aboutus (viewed July 10, 2007, last viewed March 21, 2008).
[9] http://www.neimansjewelry.com/Shop/Control/fp/SFV/31072/view_page/faq (viewed July 10, 2007, last viewed March 21, 2008).

1   Internet.  Were Neimans one of the "reputable" auction houses sponsoring actual

2   auctions that eBay brags about, they would surely accept cash, credit, or personal

3   checks.  Neimans's live auctions, however, are "online only."

4       55.    Given the ease with which Plaintiffs' counsel could ascertain that Seller

5   Defendants do not actually host live auctions and the dozens and dozens of complaints

6   about shill bidding listed on blogs by defrauded purchasers, it is evident that the

7   "careful screening" promised by eBay Live Auctions is a farce.

8   **V.    THE DETAILS OF GOANTIQUES'S FRAUD**

9       56.    Defendant GoAntiques is engaged in fraud that is similar to those of HJA

10  and Neimans but with several twists, none of which lessens the severity of the fraud and

11  several of which make GoAntiques's behavior even more sinister.

12      57.    Unlike HJA and Neimans, GoAntiques's auctions are not limited to

13  jewelry.  As its name implies, GoAntiques also sells antiques, art, collectables, coins,

14  paintings, and estate items.  Not all the company's sales are through eBay Live Auctions,

15  and many items are sold at fixed prices through GoAntiques's own website.  These fixed

16  price items are beyond the scope of this First Amended Complaint.  However,

17  GoAntiques operates a large number of eBay Live Auctions—selling jewelry, paintings,

18  and antiques—which are rife with shill bidding.  These non-jewelry shill auctions are, if

19  anything, even more exploitive: items such as paintings are of a highly subjective value,

20  and believing that others are willing to pay a high price clearly increases the apparent

21  value to an Internet bidder.

22      58.    Also unlike HJA and Neimans, GoAntiques does not sell its own inventory

23  exclusively and primarily seems to sell goods for those in the antiques industry in

24  exchange for a monthly fee and a commission.[10]  That GoAntiques acts as a reseller is

25  completely irrelevant to this fraud, as the auctions themselves are operated exclusively

26  by GoAntiques.  In fact, acting as a reseller might result in even more encouragement for

27

28  _____

[10] http://www.goantiques.com/join/pricing_info.htm (last viewed March 22, 2008).

1  GoAntiques to shill bid, as they are under pressure from their own vendors to maintain

2  a reputation for achieving a high price for items.

3      59.    GoAntiques's actual shill bidding process is slightly different than the type

4  employed by HJA and Neimans: while HJA and Neimans run auctions where "floor

5  bidders" begin bidding as soon as an auction starts, the GoAntiques "floor bidders"

6  begin bidding only after an Internet bidder has placed an initial bid.  Once the shill

7  bidding begins, the shill bidders bid with just as much super-human speed as the ones

8  employed by HJA and Neimans.  This means that auctions often go by for a period of

9  time with no bids at all, then an Internet bidder will place a bid, and suddenly the "floor

10  bidders" will begin to furiously bid against each other.

11     60.    It stretches credulity to believe that there is an auction floor full of bidders

12  who sit idle for auction after auction, letting many similar items go unsold, only to

13  spring into action as soon as a lone Internet bidder places a bid.  Also, the initial floor

14  bid is often well above the initial Internet bid.  No rational floor bidder would possibly

15  behave in this manner, let alone a large group of them who would bid on these auctions

16  each day.

17     61.    Shockingly, GoAntiques attempts to somehow contract around this

18  fraudulent behavior in the GoAntiques Terms and Conditions (attached hereto as

19  Exhibit C), which is presented to consumers as a solid block of text without any

20  formatting.  The relevant part, which upon information and belief was added on or

21  around February 2005,[11] reads:

22          For bids placed on the goantiques.com website, GoAntiques'

23          Auctioneer will bid for the absentee bidder which will be

24          displayed during the Live Auction and on ebay's bid history

25          as an "Auction Floor bid".  The Auctioneer will also be

26

27  [11] *See* Amended Class Action Complaint with Jury Demand, *Farris v. GoAntiques, Inc., et al.*,
2:05-CV-00227 (S. D. Ohio, dismissed Feb. 6, 2006), of which this Court has taken judicial notice.

28

1               responsible for protecting the reserve of the seller which will

2               also be displayed as an "Auction Floor bid". "Auction Floor

3               bid" is the designation given by eBayLiveAuctions to bids

4               made by the Auctioneer in either situation. An additional

5               notice will be posted during the auction by GoAntiques

6               identifying such bids as "Auctioneer's bid for seller".

7        62.    This attempt to contract around fraud is absurd for several reasons.  First,

8 it is written in confusing language in a difficult-to-read user agreement which

9 GoAntiques knew very well few consumers would see or understand.  GoAntiques

10 could have easily chosen to put this information clearly in a place which would be seen

11 by all users, but deliberately chose to obfuscate the information.  The entire premise is

12 also extremely counter-intuitive to any consumer, because the entire eBay Live Auctions

13 website is dedicated to selling to users the concept of live "floor bidders," and the

14 auctions themselves *clearly* identify the bids as "floor bids."  To attempt to redefine the

15 entire premise of the service in such a way is ridiculous, parallel to if Christie's were to

16 have a small sign in a hallway stating that some of the bidders on its auctions were

17 actors hired by the auction house to bid up the price.

18        63.    Second, the disclaimer clearly states that *if* GoAntiques will be "protecting

19 the reserve of the seller," there will be an "additional notice" identifying such bids as

20 "Auctioneer's bid for seller."  This language is *nowhere to be found* in GoAntiques's eBay

21 Live Auctions. (a screenshot of an auction is attached hereto as Exhibit D).  So, in the

22 unlikely event that a consumer actually did fully read and understand the language

23 above, they would logically conclude that the "floor bids" in their particular auctions

24 *were not* simply protecting a reserve, since the promised language was not in place.

25        64.    This lack of additional notice means that the above-quoted portion of

26 GoAntiques's Terms and Conditions is effectively an explicit guarantee from

27 GoAntiques that in each of its auctions the "floor bids" come from actual floor bidders

28 and are not bids placed by GoAntiques for some other purpose.

65.    Given the extreme unlikelihood that GoAntiques runs daily auctions attended by actual persons who bid only when an eBay user bids first, and at that point bid extremely aggressively and at the rate of several bids *per second*, it is evident that GoAntiques is engaging is massive and systematic fraud.

## VI.    SELLER DEFENDANTS ARE ENGAGED SHILL BIDDING SCHEMES THAT EBAY DOES NOTHING TO STOP AND WHICH EBAY PROBABLY EVEN COORDINATES

66.    On its website, eBay itself defines shill bidding as "bidding that artificially increases an item's price or apparent desirability, or bidding by individuals with a level of access to the seller's item information not available to the general Community."[12] Shill bidding is strictly prohibited by eBay rules.[13]

67.    Based on the unusually high volume of bidding, the rapidity with which "floor bids" are placed, the information revealed by a Seller Defendant employee, the information regarding "the Click Room," and the obvious incentives shared by all Defendants, to drive prices higher, it is clear that Seller Defendants' auctions are rife with shill bidding.

68.    The strategy appears to be simple.  Seller Defendants host "live auctions" via eBay Live Auctions, suggesting to the Internet eBay users that real auctions are taking place somewhere at their auction houses.

69.    There are no live auctions taking place anywhere.  There are, however, auctions in which the only participants are bidding via the Internet.

70.    In a real live auction, one managed by a real, internationally established auction house, the auctioneer or an assistant would type the bids placed on the auction floor onto the Internet.  In Seller Defendants' "live" eBay Live Auctions, Seller

---

[12] http://pages.ebay.com/help/policies/seller-shill-bidding.html (viewed July 26, 2007, last viewed March 21, 2008).

[13] http://pages.ebay.com/help/policies/seller-shill-bidding.html (viewed July 26, 2007, last viewed March 21, 2008).

1  Defendants have the ability to pretend that there are real live bids, even though there is

2  not even a real auction floor.

3      71.    Using the Internet, Seller Defendants pretend that "floor bidders" are

4  aggressively bidding on jewelry made mostly from déclassé gems as well as other items.

5      72.    This drives the price of the merchandise up dramatically in a matter of

6  mere seconds.

7      73.    Internet participants in the auction are thus given the false impression that

8  there is a real auction in which real bidders are placing bids from the auction floor.

9  Online bidders are defrauded into relying on a supposedly live bidder able to see an

10  item and bidding on that item—perhaps the Internet bidder cannot actually see the

11  items, but a live bidder can, and his bid reassures the Internet bidder.  Seller Defendants

12  are thus able to create the illusion that there is substantial demand for each item.

13      74.    Plaintiffs and the members of the Class, using eBay Live Auctions,

14  purchased items from Seller Defendants.  They placed the highest bids in auctions that

15  were supposed to be taking place in real-time in a real place.  At best, they were

16  competing against other Internet users; at worst, they were bidding against ghosts,

17  responding to bids that no real person had actually placed.

18      75.    Seller Defendants' shill bidding enables them to sell cheap jewelry to

19  unsuspecting Internet bidders at grossly inflated prices.

20  **VII.    HOW EBAY PROFITS FROM THIS SCHEME AND WHY THEY DO**

21  **NOTHING TO STOP FRAUDULENT AUCTIONS AND SHILL BIDDING**

22      76.    eBay Live Auctions generates income for eBay in two ways.  First, eBay

23  earns a commission on every auction won by an Internet bidder, equal to five percent of

24  the sale price.  Second, eBay also charges auction houses $1,500 per catalog.

25      77.    During the week of July 9, 2007, Seller Defendants sponsored over twenty-

26  five eBay Live Auctions catalogs.  Presumably, Seller Defendants would not pay eBay

27  the catalog fee unless they was selling goods totaling, on average, more than $1,500 per

28

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO:  C 07 3967 MHP

17

1    catalogue.  With these auctions occurring each day of the year, eBay alone makes

2    perhaps tens of millions of dollars by facilitating Seller Defendants' fraud.

3          78.    Pocketing perhaps tens of thousands of dollars per day merely by allowing

4    Seller Defendants to pawn their goods, plus millions more each week and month from

5    commissions, eBay has decided that it is more lucrative to look the other way rather than

6    cut off a source of income, even if illegitimate.

7          79.    In this massive bait-and-switch, eBay promises its Internet audiences a safe

8    forum in which they can place bids that will compete with bids placed on the floors of

9    "reputable international auction houses." What eBay provides is the exact opposite.

10         80.    eBay allows Internet auctioneers to masquerade as legitimate operations.

11         81.    eBay enables Seller Defendants to run auctions that appear to be taking

12    place on an auction floor but which are not.

13         82.    eBay facilitates Seller Defendants' fraud, letting each bid up the value of its

14    own goods with zero oversight.  This shill bidding results in a windfall to eBay, as the

15    company collects 5% of an inflated sales price, paid by Plaintiff and the members of the

16    Class.  Upon information and belief, eBay generated revenues of $55 million in *2007*

17    *alone* from the live auction platform.

18         83.    eBay violates the trust that exists between eBay and its customers,

19    participating in a shill bidding scam and enabling Seller Defendants to get rich by

20    defrauding eBay's customers.

21         84.    In response to complaints from members of the Class, eBay has stated in

22    letters, that it is investigating the allegedly fraudulent auctions.  As noted above, even

23    the slightest investigation would reveal that Seller Defendants is not hosting live

24    auctions of the type promised by eBay Live Auctions.

25         85.    eBay has taken no action to ban Seller Defendants from eBay Live Auctions

26    and has provided no compensation to eBay Internet bidders who have been victimized

27    by Defendants' scheme.

28

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO:  C 07 3967 MHP

## VIII.  DETAILS OF EBAY'S FRAUDULENT MISREPRESENTATION

86.    eBay advances and makes possible the fraud of the Seller Defendants through a series of fraudulent misrepresentations upon which Class Members relied to their detriment (as detailed in paragraphs __-__ regarding plaintiffs Mazur and Bates). HJA, Neimans, GoAntiques, and the other Seller Defendants are not household names. eBay *is* a household name, and uses this reputation to allay the concerns of Class Members to induce those Class Members to trust the live auction platform.

87.    eBay induces this trust through a series of statements regarding the safety of the live auction platform.  These statements, which all Class Members must see before participating in one of the supposedly live auctions, assert that auctions are "very safe," are "carefully screened," that "all live auctions are run by reputable international auction houses," and that the "floor bidders" so designated in these auctions actually exist.

88.    These statements are lies.  As explained in detail in this First Amended Complaint, these auctions are not "safe."  The auction houses are not "carefully screened," and likely have not been given even a cursory glance.  The "international auction houses" appear to be almost exclusively small online-only operations specializing in defrauding unsuspecting consumers.  Not only do "floor bidders" not exist, but the auctions do not take place on any floor other than the floors of the "Click Rooms" described above.

89.    eBay could have chosen to be silent.  eBay could have simply provided a platform for the fraud and stopped sort of vouching for it.  But eBay chose to go one step further and vouch for the fraudster Seller Defendants because it makes enormous sums of money from the ongoing fraud of the Seller Defendants.

90.    Not only did eBay not do the due diligence on the Seller Defendants it promises the public it will do, but several high ranking individuals at eBay were well aware of the fraud of the Seller Defendants during the Class Period and did nothing to stop it.  Upon information and belief, the following eBay individuals were specifically

1  told by non-eBay individuals that the Seller Defendants were engaged in shill bidding:

2  Matt Ledwith, Director of eBay Live Auctions; Quincy Carroll, second in charge at eBay

3  Live Auctions; Andrea Weaver; Dean B. Gonzalez; Crystal Graham; Meg Whitman, CEO

4  of eBay; Bill Cobb, President of eBay; and Adam Sand, an attorney for eBay.

5         91.     The fact that management at eBay knew of the fraud and did nothing

6  about it explains another fact: HJA, Neimans, GoAntiques, and other Seller Defendants

7  are competitors.  Yet they are engaged in the *same* fraudulent scheme.  The only

8  explanation for this similarity of fraud by competitors is that eBay is somehow

9  coordinating the fraud.  While, prior to discovery, only eBay and the Seller Defendants

10  can know the full details of this coordination, Plaintiffs believe that one Seller Defendant

11  conjured up the basic fraudulent plan which eBay then shared with other Seller

12  Defendants so that they, too, could engage in the same kind of fraud—increasing eBay's

13  bottom line through the catalog fees it earns from the Seller Defendants and its

14  commission on each inflated purchase price.

15  **IX.**  **DEFENDANTS EBAY AND HJA HAVE DEFRAUDED PLAINTIFF MAZUR**

16        **AND COUNTLESS OTHER CLASS MEMBERS**

17         92.     Plaintiff Mazur, and countless other Class members, fell victim to eBay and

18  HJA's fraud.  On February 1, 2007, Mazur purchased 40 pieces of jewelry from HJA in

19  eBay Live Auctions over a course of about an hour for a total cost of $4,602.90.

20         93.     Mazur purchased these items to resell for her business, but she transacted

21  business with HJA on the exact same terms and in the exact same manner as any other

22  consumer.

23         94.     At the time of her purchases, Mazur was very familiar with and trusted the

24  eBay brand.

25         95.     Before participating in the auctions on February 1, 2007, Mazur had never

26  heard of HJA or any of the names under which it conducted its auctions.  She relied

27  upon eBay's reputation when deciding whether to do business with HJA.

28

96.    Prior to signing up for HJA's auctions, Mazur saw and relied upon specific representations from eBay that all auctions provided through eBay Live Auctions were "carefully screened," "safe," and involved "floor bidders" and "international auction houses."

97.    Each of the above statements was false, each was relied on by Mazur, and the falsity and reliance of each statement proximately caused her harm.

98.    The falsity of these statements is plainly apparent.  eBay clearly does not carefully screen its auction houses since very basic due diligence reveals that HJA is not running actual floor auctions.  The auctions are not safe, as they are rampant with shill bidding intended to sell very low-quality jewelry to consumers at fraudulently high prices.  They plainly involve no floor bidders, and the auction houses are clearly primarily small enterprises with questionable backgrounds, not established "international" companies with long, trust-worthy histories.

99.    Mazur relied upon each of these statements when making her purchases from HJA.

100.    These false statements harmed Mazur and other members of the Class by inducing them to transfer their trust in eBay, built up by years of goodwill, to HJA, a company involved in outright fraud and causing substantial financial harm to Mazur and other Class Members.

## X.    DEFENDANTS EBAY AND NEIMANS HAVE DEFRAUDED PLAINTIFF BATES AND COUNTLESS OTHER CLASS MEMBERS

101.    Plaintiff Bates, and countless other Class Members, fell victim to eBay and Neimans's fraud.  On December 20, 2007, Bates purchased a bracelet from Neimans in an eBay Live Auction for $355.

102.    Bates was introduced to eBay Live Auctions by her husband.  At the time, she was very familiar with and trusted the eBay brand.

103.    Prior to her purchase from it through eBay Live Auctions, Bates had never heard of Neimans.

104.    Previous to participating in the Neimans auction provided through eBay Live Auctions, Bates saw and relied upon specific representations from eBay that all auctions provided through eBay Live Auctions were "carefully screened," "safe," and involved "floor bidders" and "international auction houses."

105.    Each of the above statements was false, each was relied on by Bates, and the falsity and reliance of each statement proximately caused her harm.

106.    The falsity of these statements is apparent.  eBay plainly does not carefully screen its auction houses because even basic due diligence reveals that Neimans is not running actual floor auctions.  The auctions are not safe, as they are rampant with shill bidding intended to sell very low-quality jewelry to consumers at fraudulently high prices.  They plainly involve no floor bidders, and the auction houses are clearly primarily small enterprises with questionable backgrounds, and not established "international" companies with a long, trust-worthy history.

107.    Bates relied upon each of these statements when making her purchase from Neimans.

108.    These false statements harmed Bates and other members of the Class by inducing them to transfer their trust in eBay, built up by years of goodwill, to Neimans, a company involved in outright fraud and causing substantial financial harm to Bates and other Class Members.

## XI.    DEFENDANTS EBAY AND GOANTIQUES HAVE DEFRAUDED PLAINTIFF BATES AND COUNTLESS OTHER CLASS MEMBERS

109.    Plaintiff Mazur, along with countless other Class Members, was the victim of eBay and Neimans's fraud.  On February 4, 2007, Mazur purchased a painting of the United States Capitol from GoAntiques through an eBay Live Auction involving "floor bidders" for $2,206.

110.    When Mazur's painting arrived, it was in significantly worse condition that described in the auction.  While it was described as having "a few imperfections," the painting was actually missing significant amounts of paint, including two large holes

1   on the United States Capitol itself.  When Mazur bid for this item, she did not have an

2   imagine of the painting in sufficient detail to ascertain these flaws, but relied upon the

3   information given by the floor bidders: had the painting contained major flaws, actual

4   floor bidders would not have bid it up to a high price.

5          111.   Before purchasing this painting from GoAntiques, Mazur had never heard

6   of the GoAntiques and relied fully on eBay's reputation, a company she had often done

7   business with and from which she had come to expect a certain guarantee of quality of

8   service.

9          112.   Prior to signing up for GoAntiques's auctions, Mazur saw and relied upon

10  specific representations from eBay that all auctions provided through eBay Live

11  Auctions were "carefully screened," "safe" and involved "floor bidders" and

12  "international auction houses."

13         113.   Each of the above representations by eBay was false, each was relied on by

14  Mazur, and the falsity and reliance of each statement proximately caused her harm.

15         114.   The falsity of these statements is plainly apparent.  eBay does not carefully

16  screen as even basic diligence reveals it is very unlikely that GoAntiques is running

17  actual floor auctions.  The auctions are not safe, as they are rampant with shill bidding

18  intended to sell very low-quality jewelry to consumers at fraudulently high prices.  They

19  plainly involve no floor bidders, and the auction houses are clearly primarily small

20  enterprises with questionable backgrounds, and not established "international"

21  companies with long, trustworthy histories.

22         115.   Mazur relied upon each of these statements when making her purchases

23  from GoAntiques.

24         116.   These false statements caused harm to Mazur and other members of the

25  class by inducing them to transfer their trust in eBay, built up by years of goodwill, to

26  GoAntiques, a company involved in outright fraud and causing substantial financial

27  harm to Mazur and other Class Members.

28  **XII.   DEFENDANTS   ARE   ENGAGED   IN   AN   ELABORATE   SCHEME   TO**

1  DEFRAUD THAT VIOLATES THE RACKETEER INFLUENCED AND
2  CORRUPT ORGANIZATIONS ACT

3      117.    Plaintiffs and the Class have been victimized by a multi-million dollar
4  fraudulent scheme perpetuated in conspiracy by eBay and Seller Defendants.
5  Defendants' actions rise above the level of merely defrauding consumers on an
6  individual level and in fact constituted an intentional enterprise to cheat Class Members
7  on a massive scale.

8      118.    In this scheme, eBay provided Seller Defendants with a platform, an
9  established customer base, perhaps a general coordination of the fraudulent plan, and
10  most importantly the value of eBay's reputation so that Seller Defendants could run its
11  online auctions.  Seller Defendants then used these to run actions which contained
12  massive amounts of shill bidding, selling extremely low-quality jewelry for far more
13  than the value it would have fetched without this shill bidding.  All Defendants then
14  reaped profits from the activity.  Seller Defendants directly profited from selling their
15  merchandise and eBay received both a listing fee for each auction as well as a percentage
16  of each sale.

17      119.    eBay's reputation and apparent coordination were the crucial elements of
18  this scheme, as Seller Defendants' activities were so blatant that most consumers would
19  instantly become suspicious.  However, eBay has gone to great lengths elsewhere on its
20  website to prevent fraud and protect its customers: a user who became suspicious upon
21  what looked like shill bidding on Seller Defendants' auctions would reasonably assume
22  that since eBay had actively vouched for that they were "carefully screened," "safe" and
23  involved "floor bidders" and "international auction houses," such an obvious fraud
24  could not be taking place.

25      120.    Perversely, in this way the very audacity of Seller Defendants' shill
26  bidding became its strength: the shilling bidding was so obvious that even a cursory
27  review by eBay would have revealed the fraud, and eBay represented that it would not

28

1    allow unsafe auctions on its service.  Therefore, a consumer would be fully justified in

2    thinking that the shill bidders were in fact legitimate floor bidders.

3        121.    By analogy, the scheme between eBay and Seller Defendants' is something

4    like if Bonhams & Butterfields, a major auction house, were to rent out a room in its

5    building to a man who typically sold costume jewelry on the street and represent that

6    his auctions were completely safe and contained no fraud, then stood by while the man

7    accepted "phone bids" during an auction which were in fact completely fabricated, and

8    which the auction house knew to be completely fabricated.  An educated consumer who

9    otherwise would be skeptical would have her concerns mollified by the reputation of the

10   auction house, and the fake bids would convince the consumers that the jewelry was

11   worth far in excess of what it actually was.

12       122.    This scheme works even more effectively in an online setting, since online

13   customers cannot physically inspect the merchandise and would reasonably believe that

14   the putative floor bidders who would be able to inspect personally the merchandise

15   would make reasonably educated guesses.  eBay's reputation, Seller Defendants' shill

16   bidding, and the low quality of the jewelry all interconnect to form an ingenious  fraud.

17       123.    As Seller Defendants were major sellers on eBay's Live Auction service,

18   holding a new auction each minute for often twelve hours each day, there is no plausible

19   way that eBay was unaware of Seller Defendants' activities.  At the bare minimum, even

20   if eBay management were not made aware of this fraud, as they were, eBay implicitly

21   encouraged and turned a blind eye to Seller Defendants' fraudulent auctions.  Further

22   down the spectrum, it is entirely plausible that eBay had an internal policy on the matter

23   and intentionally allowed—and even encouraged—Seller Defendants to commit their

24   fraud.

25       124.    The fact that HJA, Neimans, and GoAntiques are competitors and yet

26   perpetuated the **same** fraudulent scheme with eBay supports the conclusion eBay

27   actually coordinated the fraud.  It is even possible that eBay and Seller Defendants had

28   an actual agreement among themselves.  It is impossible for the Class to know the exact

1    nature of the relationship between the Defendants before discovery, but it is at least clear

2    that Defendants are engaged in a de facto enterprise to defraud.

3                    **CAUSES OF ACTION AGAINST EBAY**

4    **COUNT 1—VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.**

5                              **(AGAINST EBAY)**

6        125.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

7    through 124 of this First Amended Complaint as if fully set forth herein.

8        126.    Plaintiffs bring this claim individually and on behalf of the Class against

9    eBay.

10        127.    At all times relevant hereto, Plaintiffs and each member of the Class was a

11    "consumer," as defined in Cal. Civ. Code§ 1761(d).

12        128.    At all times relevant hereto, the auctions provided by eBay Live Auctions

13    constituted a "service," as defined in Civ. Code§ 1761(b).

14        129.    At all times relevant hereto, Seller Defendants' products, the merchandise

15    sold by them through the eBay Live Auctions service, constituted "goods," as defined in

16    Civ. Code§ 1761(a).

17        130.    At all times relevant hereto, eBay, HJA, and Neimans each constituted a

18    "person," as defined in Civ. Code§ 1761(c).

19        131.    At all times relevant hereto, Plaintiffs' and each class member's purchase

20    of a good using eBay Live Auctions constituted a "transaction," as defined in Civ. Code§

21    1761(e).

22        132.    Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following

23    unfair methods of competition and unfair or deceptive acts or practices undertaken by

24    any person in a transaction intended to result or what results in the sale or lease of

25    goods or services to any consumer are unlawful: . . .

26                (1) Passing off goods or services as those of another. . . .

27                (2) Misrepresenting the source, sponsorship, approval, or certification of

28                goods or services. . . .

1    (3) Misrepresenting the affiliation, connection, or association with, or

2    certification by, another. . . .

3    (4) Using deceptive representations or designations of geographic origin in

4    connection with goods or services. . . .

5    (5) Representing that goods or services have sponsorship, approval,

6    characteristics, ingredients, uses, benefits, or quantities which they do not

7    have. . . .

8    (9) Advertising goods or services with the intent not to sell them as

9    advertised. . . .

10    (16) Representing that the subject of a transaction has been supplied in

11    accordance with a previous representation when it has not."

12    133.    eBay has violated and continues to violate Civ. Code § 1770(a)(1) by

13    passing off the goods sold on eBay Live Auctions as those of carefully-screened,

14    reputable international auction houses. In fact, many of these auctions are run by

15    organizations which are neither reputable, international, nor auction houses.

16    134.    eBay has violated and continues to violate Civ. Code § 1770(a)(2) by

17    representing that the goods sold through the eBay Live Auctions service were provided

18    by carefully-screened, reputable international auction houses, when they in fact were

19    not.

20    135.    eBay has violated and continues to violate Civ. Code § 1770(a)(3) by

21    representing that the eBay Live Auctions service was affiliated only with carefully-

22    screened, reputable international auction houses.

23    136.    eBay has violated and continues to violate Civ. Code § 1770(a)(4) by

24    deceptively representing that all auction houses connected with the eBay Live Auctions

25    service were international in scope.

26    137.    eBay has violated and continues to violate Civ. Code § 1770(a)(5) by

27    representing that its eBay Live Auctions service had the characteristic of connecting

28    users with carefully-screened, reputable international auction houses for auctions that

took place on live auctions floor.  In fact, the service which was provided had no such characteristics.

138.    eBay has violated and continues to violate Civ. Code § 1770(a)(9) by advertising that its auctions took place live on the floors of carefully-screened, reputable international auction houses.  In fact, eBay had no intent to provide the service as advertised.

139.    eBay has violated and continues to violate Civ. Code § 1770(a)(16) by representing that its service was supplied in accordance with the previous representation that the auctions provided through the eBay Live Auctions service took place live on the floors of carefully-screened, reputable international auction houses, when in fact they were not.

140.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining eBay from engaging in the methods, acts, and practices alleged herein.

141.    Pursuant to Civ. Code § 1782, Plaintiffs have given notice to eBay of their intention to file an action under Civ. Code §§ 1760 et seq. unless eBay corrects or otherwise rectifies the consumer fraud resulting from the misrepresentations.  A copy of Plaintiff's CLRA notice to eBay is attached hereto as Exhibit E.

142.    Also pursuant to Cal. Civ. Code § 1782, as eBay has failed to "correct or otherwise rectify" its illegal acts within 30 days of being given notice of the same, Plaintiffs have amend this Complaint with claims for:

      a.  actual damages;

      b.  restitution of money to Plaintiffs and Class members;

      c.  punitive damages;

      d.  attorneys' fees and costs; and

      e.  other relief that this Court deems proper.

## COUNT 2—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.

## (AGAINST EBAY)

143.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 142 of this First Amended Complaint as if fully set forth herein.

144.    Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or fraudulent business practices and acts.  Said statute is liberally construed to protect the public.

145.    In committing the acts alleged herein, eBay has engaged and continues to engage in an unlawful, unfair, and deceptive business practice in violation of Cal. Bus. & Prof Code §§ 17200 et seq.  eBay's wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of eBay's business.  Thus, eBay's conduct impacts the public interest.

146.    eBay's acts and practices have deceived and are likely to deceive consumers.

147.    eBay's acts and practices are unlawful because they violate Civ. Code §§ 1572, 1573, 1709, 1710, 1770(a)(1), 1770(a)(2), 1770(a)(3), 1770(a)(4), 1770(a)(5), 1770(a)(9), and 1770(a)(16); Cal. Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341, 1343, and 1961.  Specifically, eBay made false and deceptive representations that its auctions were safe and took place live on the floors of carefully-screened, reputable international auction houses.  Such claims are material and substantial.

148.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on behalf of themselves and all members of the Class, seeks an order of this Court permanently enjoining eBay from continuing to engage in its unfair and unlawful conduct as alleged herein.  Plaintiffs also seek an order awarding full restitution of all monies wrongfully obtained.

## COUNT 3—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.
## (AGAINST EBAY)

149.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 148 of this First Amended Complaint as if fully set forth herein.

150.    Plaintiffs bring this claim individually and on behalf of the Class against eBay.

151.    During the Class Period, eBay marketed, advertised, and sold to the public the eBay Live Auctions service on a nationwide basis, including in California.

152.    eBay has engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the use of the eBay Live Auctions service.

153.    eBay's advertisements and marketing representations that auctions were safe and took place live on the floors of carefully-screened, reputable international auction houses are false, misleading, and deceptive as set forth more fully above.

154.    At the time it made and disseminated the statements alleged herein, eBay knew or should have known that the statements were untrue, deceptive, or misleading and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

155.    eBay actively concealed its knowledge that the auctions did not take place live on the floors of carefully-screened, reputable international auction houses.

156.    eBay's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induced consumers to participate in the eBay Live Auctions service, which is then operated under false pretenses.

157.    As a result of the violations of California law described above, eBay has been and will be unjustly enriched at the expense of Plaintiffs and the members of the Class. Specifically, eBay has been unjustly enriched by receipt of millions of dollars in monies received from the fraudulent auctions which were marketed, advertised, and sold in the State of California and the United States through material misrepresentations regarding the state of the eBay Live Auctions service.

158.    As a result of the violations of California law described above, Plaintiffs and the members of the Class have suffered injury in fact and have lost money.

159.    Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Bus. & Prof. Code §§ 17535 et seq.

## <u>COUNT 4—VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710</u>

## <u>(AGAINST EBAY)</u>

160.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 159 of this First Amended Complaint as if fully set forth herein.

161.   Plaintiffs bring this claim individually and on behalf of the Class against eBay.

162.   Cal. Civ. Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

163.   Cal. Civ. Code § 1710 provides in relevant part that "deceit . . . is either:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing it."

164.   eBay has violated and continues to violate Civ. Code § 1710(1) by suggesting that the auctions on the eBay Live Auctions service were safe and took place live on the floors of carefully-screened, reputable international auction houses, when eBay did not believe this to be true.

165.   eBay has violated and continues to violate Civ. Code § 1710(2) by asserting that the auctions on the eBay Live Auctions service were safe and took place live on the floors of carefully-screened, reputable international auction houses, when eBay had no reasonable grounds for believing it to be true.

166.   eBay has violated and continues to violate Civ. Code § 1710(3) by suppressing the fact the auctions on the eBay Live Auctions service were not safe and

did not take place live on the floors of carefully-screened, reputable international auction houses.

167.    eBay has violated and continues to violate Civ. Code § 1710(4) by promising that the auctions on the eBay Live Auctions service were safe and took place live on the floors of carefully-screened, reputable international auction houses, when in fact eBay had no intention of performing on this promise.

168.    Plaintiffs and members of the Class were harmed by eBay's allegations regarding the fairness and safety of the auctions because they would not have participated in the auctions had they known that they were offered under false pretenses, were rigged, and did not take place on a live auction floor.

169.    In addition, Plaintiffs and members of the Class were harmed directly and explicitly by eBay's failure to properly monitory eBay Live Auctions because the resulting systematic shill bidding practices resulted in harm in the form of the difference between the price for which the item was sold and the last good faith bid prior to the completion of the sale.

170.    Pursuant to Cal. Civ. Code § 1709, eBay is liable for any damage which was proximately caused to Plaintiffs and members of the Class by eBay's deceit.

## <u>COUNT 5 — VIOLATIONS OF CAL. CIVIL CODE § 1572</u>
## <u>(AGAINST EBAY)</u>

171.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 170 of this First Amended Complaint as if fully set forth herein.

172.    Plaintiffs bring this claim individually and on behalf of the Class against eBay.

173.    Cal. Civ. Code § 1572 provides in relevant part that "[a]ctual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

    1.  The suggestion, as a fact, of that which is not true, by one who does not

1    believe it to be true;

2        2.  The positive assertion, in a manner not warranted by the information of

3        the person making it, of that which is not true, though he believes it to be

4        true;

5        3.   The suppression of that which is true, by one having knowledge or

6        belief of the fact;

7        4.  A promise made without any intention of performing it; or,

8        5.  Any other act fitted to deceive."

9        174.    eBay has violated and continues to violate Civ. Code § 1572(1) by

10   suggesting that the auctions on the eBay Live Auctions service were safe and took place

11   live on the floors of carefully-screened, reputable international auction houses, which

12   eBay did not believe to be true.

13       175.    eBay has violated and continues to violate Civ. Code § 1572(2) by asserting

14   both that its auctions were safe and fair and took place on a live auction floor.  In fact,

15   both of these assertions were false and known by eBay to be false.

16       176.    eBay has violated and continues to violate Civ. Code § 1572(3) by

17   suppressing the fact that the auctions on the eBay Live Auctions service were not safe

18   and did not take place live on the floors of carefully-screened, reputable international

19   auction houses.

20       177.    eBay has violated and continues to violate Civ. Code § 1572(4) by

21   promising that the auctions on the eBay Live Auctions service were safe and took place

22   live on the floors of carefully-screened, reputable international auction houses, when in

23   fact they had no intention of performing on the promise.

24       178.    eBay has violated and continues to violate Civ. Code § 1572(5) by making

25   false misrepresentations which were intended to lure their customers into auctions

26   which were not screened as promised and were in fact extremely fraudulent.

27       179.    As a direct and proximate result of eBay' fraud, Plaintiffs and the members

28   of the Class have and will continue to suffer damages.

1    180.    Plaintiffs seek damages against eBay including but not limited to
2    disgorgement of all proceeds eBay obtained from the contracts entered into with
3    Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

4    ## COUNT 6 — VIOLATIONS OF CAL. CIVIL CODE § 1573

5    ## (AGAINST EBAY)

6    181.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1
7    through 180 of this First Amended Complaint as if fully set forth herein.

8    182.    Plaintiffs bring this claim individually and on behalf of the Class against
9    eBay.

10    183.    Cal. Civ. Code § 1573(1) provides in relevant part that "[c]onstructive
11    fraud consists . . . [i]n any breach of duty which, without an actually fraudulent intent,
12    gains an advantage . . . by misleading another to his prejudice . . ."

13    184.    eBay has violated and continues to violate Civ. Code § 1573(1) by
14    misleading Plaintiffs and the members of the Class to believe that the auctions on the
15    eBay Live Auctions service were safe and took place live on the floors of carefully-
16    screened, reputable international auction houses.  These actions constituted constructive
17    fraud because they gave eBay an unfair advantage, achieved by unfair means, over
18    Plaintiffs and the members of the Class.

19    185.    As a direct and proximate result of eBay's constructive fraud, Plaintiffs and
20    the members of the Class have suffered and will continue to suffer damages.

21    186.    Plaintiffs seek damages against eBay, including but not limited to
22    disgorgement of all proceeds eBay obtained from their unlawful business practices as
23    well as pre-judgment interests and costs.

24    ## COUNT 7 — BREACH OF CONTRACT

25    ## (AGAINST EBAY)

26    187.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1
27    through 187 of this First Amended Complaint as if fully set forth herein.

28

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO:  C 07 3967 MHP

34

188.   Plaintiffs bring this claim individually and on behalf of the Class against eBay.

189.   Participants in the eBay Live Auctions service all agreed to eBay's terms and conditions.

190.   eBay made representations that the auctions on the eBay Live Auctions service were safe and took place live on the floors of carefully-screened, reputable international auction houses.

191.   eBay does not have any valid defense to the formation of the contract.

192.   Plaintiffs complied with all terms and conditions of the contract.

193.   eBay breached the contract by failing to carefully screen the parties who ran eBay Live Auctions, and by allowing parties who were not carefully-screened, international auction houses to operate auctions through eBay Live Auctions.

194.   eBay is aware of these violations of the contract and has taken no steps to correct these violations.

195.   As a direct and proximate result of eBay's breach of contract, Plaintiffs and the members of the Class have and will continue to suffer damages.

196.   Plaintiffs and Class Members seek damages from eBay including but not limited to disgorgement of all proceeds eBay obtained from the contracts entered into with Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

## COUNT 8— UNJUST ENRICHMENT

## (AGAINST EBAY)

197.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 196 of this First Amended Complaint as if fully set forth herein.

198.   Plaintiffs bring this as individuals and on behalf of the Class against eBay.

199.   Through its unlawful shill bidding practices referenced hereinabove, eBay has unlawfully enriched itself at the cost of innocent bidders.  Plaintiffs and members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of eBay as alleged herein.

1    200.    If eBay is permitted to keep monies collected under such false pretenses, it

2    will be unjustly enriched at the expense of members of the Class.

3    201.    Plaintiffs seek an order requiring eBay to:

4        a.   immediately cease their unlawful acts and practices;

5        b.   make full restitution of all monies wrongfully obtained; and

6        c.   disgorge all ill-gotten revenues.

7                    **COUNT 9 — NEGLIGENCE**

8                      **(AGAINST EBAY)**

9    202.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

10   through 201 of this First Amended Complaint as if fully set forth herein.

11   203.    Plaintiffs bring this claim individually and on behalf of the Class against

12   eBay.

13   204.    eBay owed a duty of care to Plaintiffs and the members  of the Class to

14   exercise reasonable care in the conduct of its auctions, a duty which eBay recognized

15   through its guarantee of "safe" auctions.

16   205.    eBay breached this duty of care through its refusal to adequately screen

17   auctioneers participating in the eBay Live Auctions service.  eBay also breached its duty

18   of care by failing to take reasonable steps to ensure that it was not facilitating shill

19   bidding operations.  eBay was also negligent in its response to complaints regarding

20   shill bidding and fraudulent auctions.

21   206.    eBay's breach was the proximate cause of injuries to Plaintiffs and the

22   members of the Class,  specifically the money they were fraudulently induced to spend

23   through the shill bidding which took place on the eBay Live Auctions service.

24   207.    Plaintiffs seek damages against eBay including but not limited to

25   disgorgement of all proceeds eBay obtained from its unlawful business practices as well

26   as pre-judgment interests and costs.

27                  **COUNT 10 — NEGLIGENCE PER SE**

28                      **(AGAINST EBAY)**

208. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 207 of this First Amended Complaint as if fully set forth herein.

209. Plaintiffs bring this claim individually and on behalf of the Class against eBay.

210. eBay has breached its duty of care to Plaintiffs and the members of the Class through negligence per se. Specifically, eBay has violated Cal. Civ. Code §§ 1572, 1573, 1709, 1710, 1770(a)(1), 1770(a)(2), 1770(a)(3), 1770(a)(4), 1770(a)(5), 1770(a)(9), and 1770(a)(16); Cal. Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341, 1343, and 1961.

211. Plaintiffs and the members of the Class are within the class of people intended to be protected by the abovementioned statutes, and the harm suffered by them was within the scope of harm the statutes were intended to protect against.

212. eBay's breach was the proximate cause of injuries to Plaintiffs and the members of the Class, specifically the money they were fraudulently induced to spend through the shill bidding which took place on the eBay Live Auctions service

213. Plaintiffs seek damages from eBay including but not limited to disgorgement of all proceeds eBay obtained from the contracts entered into with Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

## CAUSES OF ACTION AGAINST HJA

## COUNT 11 — VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.

## (AGAINST HJA)

214. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 213 of this First Amended Complaint as if fully set forth herein.

215. Plaintiff Mazur brings this claim individually and on behalf of the Class against HJA.

216. At all times relevant hereto, Mazur, and each Class member, was a "consumer," as defined in Civ. Code § 1761(d).

217.    At all times relevant hereto, HJA's products, the jewelry sold by it through eBay Live Auctions, constituted "goods," as defined in Civ. Code § 1761(a).

218.    At all times relevant hereto, HJA's service, the auctions through which it sold jewelry on eBay Live Auctions, constituted a "service," as defined in Civ. Code § 1761(b).

219.    At all times relevant hereto, Defendant HJA constituted a "person," as defined in Civ. Code § 1761(c).

220.    At all times relevant hereto, Mazur's and each Class Member's purchase of HJA's jewelry constituted a "transaction," as defined in Civ. Code § 1761(e).

221.    At all times relevant hereto, Mazur's and each Class member's winning an eBay Live Auction constituted a "transaction," as defined in Civ. Code § 1761(e).

222.    Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or what results in the sale or lease of goods or services to any consumer are unlawful: . . .

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . .

> (9) Advertising goods or services with the intent not to sell them as advertised. . . .

> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions. . .

> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

223.    HJA has violated and continues to violate Civ. Code § 1770(a)(5) by advertising that its auctions take place on a live auction floor, when in fact so such live auctions exist and they take place entirely online.

224. HJA has violated and continues to violate Civ. Code § 1770(a)(9) by advertising that its jewelry was being sold at auctions with a $1 starting bid and no reserve. In fact, HJA had no intent to sell these items to any consumer at any prices remotely close to $1, and systematically utilized shill bidding to drive up auction prices.

225. HJA has violated and continues to violate Civ. Code § 1770(a)(13) by making statements that there were price reductions in the form of putatively high-priced jewelry being offered in auctions with a starting bid of $1. In fact, due to HJA's systematic shill bidding, the effective starting bid was far higher than $1.

226. HJA has violated and continues to violate Civ. Code § 1770(a)(16) by representing that its auctions took place on a live auction floor, as represented previously, when in fact no such live auctions exist and the auctions which do exist take place entirely online.

227. HJA has also violated and continues to violate Civ. Code § 1770(a)(16) by representing that its jewelry was supplied in accordance with the previous representation that the auctions are conducted as $1 minimum bid, no reserve auctions. In fact, HJA utilized shill bidding to effectively make the minimum bids on these auctions much higher than $1.

228. Pursuant to Cal. Civ. Code § 1780(a), Mazur seeks an order enjoining HJA from engaging in the methods, acts, and practices alleged herein.

229. Pursuant to Civ. Code § 1782, Mazur has given notice to HJA of her intention to file an action under Civ. Code §§ 1760 et seq. unless HJA corrects or otherwise rectifies the consumer fraud resulting from the misrepresentation and shill bidding practices. A copy of Mazur's CLRA notice to HJA is attached hereto as Exhibit F.

230. Also pursuant to Cal. Civ. Code § 1782, as HJA has failed to "correct or otherwise rectify" its illegal acts within 30 days of being given notice of the same, Mazur has amend this Complaint with claims for:

    a. actual damages;

1        b.  restitution of money to Mazur and Class members;

2        c.  punitive damages;

3        d.  attorneys' fees and costs; and

4        e.  other relief that this Court deems proper.

5    **COUNT 12—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**

6    **(AGAINST HJA)**

7    231.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

8    through 230 of this First Amended Complaint as if fully set forth herein.

9    232.    Plaintiff Mazur brings this claim individually and on behalf of the Class

10    against HJA.

11    233.    Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or

12    fraudulent business practices and acts.  Said statute is liberally construed to protect the

13    public.

14    234.    In doing the acts alleged herein, HJA engaged and continues to engage in

15    an unlawful, unfair, and deceptive business practice in violation of Cal. Bus. & Prof

16    Code §§ 17200 et seq.  HJA's wrongful conduct alleged herein is part of a pattern or

17    generalized course of conduct that occurred and continues to occur in the ordinary

18    course of HJA's business.  Thus, HJA's conduct impacts the public interest.

19    235.    HJA's acts and practices have and are likely to deceive consumers.

20    236.    HJA's acts and practices are unlawful because they violate Civ. Code §§

21    1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(13), and 1770(a)(16); Cal. Bus. &

22    Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341, 1343, and 1961.  Specifically, HJA

23    engaged in shill bidding practices and made false and deceptive representations that its

24    auctions were live actions taking place on an actual auction floor.  Such claims are

25    material and substantial.

26    237.    Pursuant to Cal. Bus. & Prof. Code § 17203, Mazur, on behalf of herself and

27    all members of the Class, seeks an order of this Court permanently enjoining HJA from

28

1   continuing to engage in its unfair and unlawful conduct as alleged herein. Mazur also

2   seeks an order awarding full restitution of all monies wrongfully obtained.

3   **COUNT 13—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.**

4   **(AGAINST HJA)**

5   238.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

6   through 237 of this First Amended Complaint as if fully set forth herein.

7   239.    Plaintiff Mazur brings this claim individually and on behalf of the Class

8   against HJA.

9   240.    During the Class Period, HJA marketed, advertised, and sold to the public

10  jewelry on a nationwide basis, including in California.

11  241.    HJA has engaged in the advertising and marketing alleged herein with the

12  intent to directly or indirectly induce the purchase of the jewelry it sold via eBay Live

13  Auctions.

14  242.    HJA's advertisements and marketing representations regarding the $1

15  starting bid, no reserve auctions, and the auctions taking place on a live auction floor are

16  false, misleading, and deceptive as fully set forth above.

17  243.    At the time HJA made and disseminated the statements alleged herein,

18  HJA knew or should have known that the statements were untrue, deceptive, or

19  misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

20  244.    HJA actively concealed its knowledge that the auctions did not take place

21  on an auction floor, and that the auctions had in effect a much higher minimum bid than

22  the $1 advertised, due to HJA's systematic shill bidding.

23  245.    HJA's acts of untrue and misleading advertising present a continuing

24  threat to consumers because such advertisements induced consumers to participate in its

25  auctions, which are then operated under false pretenses.

26  246.    As a result of the violations of California law described above, HJA has

27  been and will continue to be unjustly enriched at the expense of Mazur and the members

28  of the Class. Specifically, HJA has been unjustly enriched by receipt of millions of

1    dollars in monies received from customers who purchased jewelry which was marketed,

2    advertised, and sold in the State of California and the United States through material

3    misrepresentations regarding the auctions provided by HJA.

4        247.    As a result of the violations of California law described above, Mazur and

5    the members of the Class have suffered injury in fact and have lost money.

6        248.    Plaintiffs seek restitution, injunctive relief, and all other relief allowable

7    under Bus. & Prof. Code §§ 17535 et seq.

## COUNT 14—VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710

## (AGAINST HJA)

10       249.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

11   through 248 of this First Amended Complaint as if fully set forth herein.

12       250.    Plaintiff Mazur brings this claim individually and on behalf of the Class

13   against HJA.

14       251.    Cal. Civ. Code § 1709 prohibits willful deception of another with intent to

15   induce a detrimental change in position.

16       252.    Cal. Civ. Code § 1710 provides in relevant part that "deceit . . . is either:

17           1.  The suggestion, as a fact, of that which is not true, by one who does not

18           believe it to be true;

19           2.  The assertion, as a fact, of that which is not true, by one who has no

20           reasonable ground for believing it to be true;

21           3.  The suppression of a fact, by one who is bound to disclose it, or who

22           gives information of other facts which are likely to mislead for want of

23           communication of that fact; or,

24           4.  A promise, made without any intention of performing it."

25       253.    HJA has violated and continue to violate Civ. Code § 1710(1) by suggesting

26   both that its auctions were fair and that they took place on live auction floors.  In fact,

27   both of these were false and were known by HJA to be false.

28

254.    HJA has violated and continues to violate Civ. Code § 1710(2) by asserting both that its auctions were fair and that they took place on live auction floors.  In fact, both of these were false and were known by HJA to be false.

255.    HJA has violated and continues to violate Civ. Code § 1710(3) by suppressing the fact that its auctions involved systematic shill bidding and did not take place on live auction floors.

256.    HJA has violated and continues to violate Civ. Code § 1710(4) by promising both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by HJA to be false.

257.    Mazur and members of the Class were harmed by HJA's allegation regarding the fairness of the auctions because Mazur and members of the Class would not have participated in the auctions had they known that the auctions were offered under false pretenses, were rigged, and did not take place on any live auction floors.

258.    In addition, Mazur and members of the Class were harmed directly and explicitly by HJA's systematic shill bidding practices by the difference between the prices at which the jewelry was sold and the last good faith bid prior to the completion of the sale.

259.    Pursuant to Cal. Civ. Code § 1709, HJA is liable for any damage which was proximately caused to Plaintiffs and members of the Class by HJA's deceit.

260.    Mazur seeks damages against HJA including but not limited to disgorgement of all proceeds HJA obtained from its unlawful business practices as well as pre-judgment interests and costs.

## COUNT 15—VIOLATIONS OF CAL. CIVIL CODE § 1572

## (AGAINST HJA)

261.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 260 of this First Amended Complaint as if fully set forth herein.

262.    Plaintiff Mazur brings this claim individually and on behalf of the Class against HJA.

263.    Cal. Civ. Code § 1572 provides in relevant part that "[a]ctual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2.  The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3.  The suppression of that which is true, by one having knowledge or belief of the fact;

4.  A promise made without any intention of performing it; or,

5.  Any other act fitted to deceive."

264.    HJA has violated and continues to violate Civ. Code § 1572(1) by suggesting both that its auctions were fair and that they took place on live auction floors. In fact, these suggestions were false and were known by HJA to be false.

265.    HJA has violated and continues to violate Civ. Code § 1572(2) by asserting both that its auctions were fair and that they took place on live auction floors.  In fact, these assertions were false and were known by HJA to be false.

266.    HJA has violated and continues to violate Civ. Code § 1572(3) by suppressing the fact that its auctions involved systematic shill bidding and did not take place on live auction floors.

267.    HJA has violated and continues to violate Civ. Code § 1572(4) by promising both that its auctions were fair and that they took place on live auction floors. In fact, these promises were false and were known by HJA to be false.

268.    HJA has violated and continues to violate Civ. Code § 1572(5) through its systematic shill bidding practices, which are intended to deceive legitimate bidders and lead them to believe that the other bidders are actual, flesh and blood bidders on live auction floors.  In fact, these floor bidders are nonexistent.

269.   As a direct and proximate result of HJA's fraud, Plaintiffs and the members of the Class have and will continue to suffer damages.

270.   Mazur seeks damages against HJA including but not limited to disgorgement of all proceeds HJA obtained from its unlawful business practices as well as pre-judgment interests and costs.

## COUNT 16—VIOLATIONS OF CAL. CIVIL CODE § 1573

## (AGAINST HJA)

271.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 270 of this First Amended Complaint as if fully set forth herein.

272.   Plaintiff Mazur brings this claim individually and on behalf of the Class against HJA.

273.   Cal. Civ. Code § 1573(1) provides in relevant part that "[c]onstructive fraud consists . . . [i]n any breach of duty which, without an actually fraudulent intent, gains an advantage . . . by misleading another to his prejudice . . ."

274.   HJA has violated and continues to violate Civ. Code § 1573(1) by neglecting to inform Mazur and the members of the Class of the fact that HJA's auctions involved systematic shill bidding and did not take place on live auction floors.  These actions constituted constructive fraud because they gave HJA an unfair advantage, achieved by unfair means, over Plaintiffs and the members of the Class.

275.   As a direct and proximate result of HJA's constructive fraud, Mazur and the members of the Class have suffered and will continue to suffer damages.

276.   Mazur seeks damages against HJA including but not limited to disgorgement of all proceeds HJA obtained from the contracts entered into with Mazur and the members of the Class as well as pre-judgment interests and costs.

## COUNT 17— BREACH OF CONTRACT

## (AGAINST HJA)

277.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 276 of this First Amended Complaint as if fully set forth herein.

278.    Plaintiff Mazur brings this claim individually and on behalf of the Class against HJA.

279.    Participants in the auctions of HJA, including Mazur, all agreed to HJA's terms and conditions.

280.    HJA made representations that its auctions took place on a live auction floor and that all auctions had a $1 starting bid with no reserve.

281.    HJA does not have any valid defense to the formation of the contract.

282.    Mazur complied with all terms and conditions of the contract.

283.    HJA breached the contract by holding auctions that took place entirely online and by engaging in systematic shill bidding practices which effectively made the minimum bids in the auctions much higher than $1.

284.    HJA is aware of these violations of the contract and has taken no steps to correct these violations.

285.    As a direct and proximate result of HJA's breach of contract, Mazur and the members of the Class have and will continue to suffer damages.

286.    Mazur seeks damages from HJA including but not limited to disgorgement of all proceeds HJA obtained from the contracts entered into with Mazur and the members of the Class as well as pre-judgment interests and costs.

## COUNT 18— UNJUST ENRICHMENT

## (AGAINST HJA)

287.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 286 of this First Amended Complaint as if fully set forth herein.

288.    Plaintiff Mazur brings this claim individually and on behalf of the Class against HJA.

289.    Through its unlawful shill bidding practices referenced hereinabove, HJA has unlawfully enriched itself at the expense of innocent bidders.  Mazur and members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of HJA as alleged herein.

1    290.    If HJA is permitted to keep monies collected under such false pretenses, it

2    will be unjustly enriched at the expense of members of the Class.

3    291.    Mazur seeks an order requiring HJA to:

4        a.    immediately cease its unlawful acts and practices;

5        b.    make full restitution of all monies wrongfully obtained; and

6        c.    disgorge all ill-gotten revenues.

7    **CAUSES OF ACTION AGAINST NEIMANS**

8    **COUNT 19—VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.**

9    **(AGAINST NEIMANS)**

10    292.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

11    through 291 of this First Amended Complaint as if fully set forth herein.

12    293.    Plaintiff Bates brings this claim individually and on behalf of the Class

13    against Neimans.

14    294.    At all times relevant hereto, Bates and each Class member was a

15    "consumer," as defined in Civ. Code § 1761(d).

16    295.    At all times relevant hereto, Neimans's products, the jewelry sold by it

17    through eBay Live Auctions, constituted "goods," as defined in Civ. Code § 1761(a).

18    296.    At all times relevant hereto, Neimans's service, the auctions through which

19    it sold jewelry on eBay Live Auctions, constituted a "service," as defined in Civ. Code §

20    1761(b).

21    297.    At all times relevant hereto, Defendant Neimans constituted a "person," as

22    defined in Civ. Code § 1761(c).

23    298.    At all times relevant hereto, Bates's and each Class Member's purchase of

24    Neimans's jewelry constituted a "transaction," as defined in Civ. Code § 1761(e).

25    299.    At all times relevant hereto, Bates's and each Class member's winning an

26    eBay Live Auction constituted a "transaction," as defined in Civ. Code § 1761(e).

27    300.    Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following

28    unfair methods of competition and unfair or deceptive acts or practices undertaken by

1  any person in a transaction intended to result or what results in the sale or lease of

2  goods or services to any consumer are unlawful: . . .

3          (5) Representing that goods or services have sponsorship, approval,

4          characteristics, ingredients, uses, benefits, or quantities which they do not

5          have. . . .

6          (9) Advertising goods or services with the intent not to sell them as

7          advertised. . . .

8          (13) Making false or misleading statements of fact concerning reasons for,

9          existence of, or amounts of price reductions. . .

10          (16) Representing that the subject of a transaction has been supplied in

11          accordance with a previous representation when it has not."

12          301.    Neimans has violated and continues to violate Civ. Code § 1770(a)(5) by

13  advertising that its auctions took place on a live auction floor, when in fact so such live

14  auctions exist and take place entirely online.

15          302.    Neimans has violated and continues to violate Civ. Code § 1770(a)(9) by

16  advertising that its jewelry was being sold at auctions with a $1 starting bid and no

17  reserve.  In fact, Neimans had no intent to sell these items to any consumer at any prices

18  remotely close to $1 and systematically utilized shill bidding to drive up auction prices.

19          303.    Neimans has violated and continues to violate Civ. Code § 1770(a)(13) by

20  making statements that there were price reductions in the form of putatively high-priced

21  jewelry being offered in auctions with a starting bid of $1.  In fact, due to Neimans's

22  systematic shill bidding, the effective starting bid was far higher than $1.

23          304.    Neimans has violated and continues to violate Civ. Code § 1770(a)(16) by

24  representing that its auctions took place on a live auction floor, as represented

25  previously, when in fact so such live auctions exist and they take place entirely online.

26          305.    Neimans has also violated and continues to violate Civ. Code § 1770(a)(16)

27  by representing that its jewelry was supplied in accordance with the previous

28  representation that the auctions are conducted as $1 minimum bid, no reserve auctions.

1   In fact, Neimans utilized shill bidding to effectively make the minimum bids on these
2   auctions much higher than $1.

3        306.    Pursuant to Cal. Civ. Code § 1780(a), Bates seeks an order enjoining eBay
4   from engaging in the methods, acts, and practices alleged herein.

5        307.    Pursuant to Civ. Code § 1782, Bates has given notice to Neimans of her
6   intention to file an action under Civ. Code §§ 1760 et seq. unless Neimans corrects or
7   otherwise rectifies the consumer fraud resulting from the misrepresentation and shill
8   bidding practices.   A copy of Bates's CLRA notice to Neimans is attached hereto as
9   Exhibit G.

10        308.    Also pursuant to Cal. Civ. Code § 1782, if Neimans does not "correct or
11   otherwise rectify" its illegal acts within 30 days, Bates intends to amend this Complaint
12   to add claims for:

13              a.   actual damages;

14              b.   restitution of money to Bates and Class members;

15              c.   punitive damages;

16              d.   attorneys' fees and costs; and

17              e.   other relief that this Court deems proper.

18   **COUNT 20—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**
19   **(AGAINST NEIMANS)**

20        309.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1
21   through 308 of this First Amended Complaint as if fully set forth herein.

22        310.    Plaintiff Bates brings this claim individually and on behalf of the Class
23   against Neimans.

24        311.    Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or
25   fraudulent business practices and acts.   Said statute is liberally construed to protect the
26   public.

27        312.    In doing the acts alleged herein, Neimans engaged and continues to
28   engage in an unlawful, unfair, and deceptive business practice in violation of Cal. Bus. &

1  Prof Code §§ 17200 et seq.  Neimans's wrongful conduct alleged herein is part of a

2  pattern or generalized course of conduct that occurred and continues to occur in the

3  ordinary course of Neimans's business.  Thus, Neimans's conduct impacts the public

4  interest.

5      313.    Neimans's acts and practices have and are likely to deceive consumers.

6      314.    Neimans's acts and practices are unlawful because they violate Civ. Code

7  §§ 1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(13), and 1770(a)(16); Cal. Bus. &

8  Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341, 1343, and 1961.  Specifically, Neimans

9  engaged in shill bidding practices and made false and deceptive representations that its

10  auctions were live actions taking place on an actual auction floor.  Such claims are

11  material and substantial.

12      315.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Bates, on behalf of

13  herself and all members of the Class, seeks an order of this Court permanently enjoining

14  Neimans from continuing to engage in its unfair and unlawful conduct as alleged

15  herein.  Bates also seeks an order awarding full restitution of all monies wrongfully

16  obtained.

17  ### COUNT 21 — VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.

18  ### (AGAINST NEIMANS)

19      316.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

20  through 315 of this First Amended Complaint as if fully set forth herein.

21      317.    Plaintiff Bates brings this claim individually and on behalf of the Class

22  against Neimans.

23      318.    During the Class Period, Neimans marketed, advertised, and sold to the

24  public jewelry on a nationwide basis, including in California.

25      319.    Neimans has engaged in the advertising and marketing alleged herein

26  with the intent to directly or indirectly induce the purchase of the jewelry it sold via

27  eBay Live Auctions.

28

320.    Neimans's advertisements and marketing representations regarding the $1 starting bid, no reserve auctions, and auctions taking place on a live auction floor are false, misleading, and deceptive as set forth more fully above.

321.    At the time it made and disseminated the statements alleged herein, Neimans knew or should have known that the statements were untrue, deceptive, or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

322.    Neimans actively concealed its knowledge that the auctions did not take place on an auction floor, and that the auctions had in effect a much higher minimum bid than the $1 advertised due to Neimans's systematic shill bidding.

323.    Neimans's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induced consumers to participate in its auctions, which are then operated under false pretenses.

324.    As a result of the violations of California law described above, Neimans has been and will continue to be unjustly enriched at the expense of Bates and the members of the Class.  Specifically, Neimans has been unjustly enriched by receipt of millions of dollars in monies received from customers who purchased jewelry which was marketed, advertised, and sold in the State of California and the United States through material misrepresentations regarding the state of the auctions provided by Neimans.

325.    As a result of the violations of California law described above, Bates and the members of the Class have suffered injury in fact and have lost money.

326.    Bates seeks restitution, injunctive relief, and all other relief allowable under Bus. & Prof. Code §§ 17535 et seq.

## COUNT 22—VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710
## (AGAINST NEIMANS)

327.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 326 of this First Amended Complaint as if fully set forth herein.

328. Plaintiff Bates brings this claim individually and on behalf of the Class against Neimans.

329. Cal. Civ. Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

330. Cal. Civ. Code § 1710 provides in relevant part that "deceit . . . is either:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing it."

331. Neimans has violated and continue to violate Civ. Code § 1710(1) by suggesting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by Neimans to be false.

332. Neimans has violated and continues to violate Civ. Code § 1710(2) by asserting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by Neimans to be false.

333. Neimans has violated and continues to violate Civ. Code § 1710(3) by suppressing the fact that its auctions involved systematic shill bidding and did not take place on live auction floors.

334. Neimans has violated and continues to violate Civ. Code § 1710(4) by promising both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by Neimans to be false.

335. Bates and members of the Class were harmed by Neimans's allegation regarding the fairness of the auctions because they would not have participated in the

1   auctions had they known that they were offered under false pretenses, were rigged, and

2   did not take place on any live auction floors.

3       336.    In addition, Bates and members of the Class were harmed directly and

4   explicitly by Neimans's systematic shill bidding practices by the difference between the

5   prices at which the jewelry was sold and the last good faith bid prior to the completion

6   of the sale.

7       337.    Pursuant to Cal. Civ. Code § 1709, Neimans is liable for any damage which

8   was proximately caused to Plaintiff and members of the Class by Neimans's deceit.

9       338.    Bates seeks damages against Neimans including but not limited to

10  disgorgement of all proceeds Neimans obtained from its unlawful business practices as

11  well as pre-judgment interests and costs.

12          **COUNT 23 — VIOLATIONS OF CAL. CIVIL CODE § 1572**

13                      **(AGAINST NEIMANS)**

14      339.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

15  through 338 of this First Amended Complaint as if fully set forth herein.

16      340.    Plaintiff Bates brings this claim individually and on behalf of the Class

17  against Neimans.

18      341.    Cal. Civ. Code § 1572 provides in relevant part that "[a]ctual fraud . . .

19  consists in any of the following acts, committed by a party to the contract, or with his

20  connivance, with intent to deceive another party thereto, or to induce him to enter into

21  the contract:

22          1.  The suggestion, as a fact, of that which is not true, by one who does not

23      believe it to be true;

24          2.  The positive assertion, in a manner not warranted by the information of the

25      person making it, of that which is not true, though he believes it to be true;

26          3.  The suppression of that which is true, by one having knowledge or belief of

27      the fact;

28          4.  A promise made without any intention of performing it; or,

1        5. Any other act fitted to deceive."

2    342.    Neimans has violated and continues to violate Civ. Code § 1572(1) by

3    suggesting both that its auctions were fair and that they took place on live auction floors.

4    In fact, both of these were false and were known by Neimans to be false.

5    343.    Neimans has violated and continues to violate Civ. Code § 1572(2) by

6    asserting both that its auctions were fair and that they took place on live auction floors.

7    In fact, both of these were false and were known by Neimans to be false.

8    344.    Neimans has violated and continues to violate Civ. Code § 1572(3) by

9    suppressing the fact that its auctions involved systematic shill bidding and did not take

10   place on live auction floors.

11   345.    Neimans has violated and continues to violate Civ. Code § 1572(4) by

12   promising both that its auctions were fair and that they took place on live auction floors.

13   In fact, both of these were false and were known by Neimans to be false.

14   346.    Neimans has violated and continues to violate Civ. Code § 1572(5) through

15   its systematic shill bidding practices, which are intended to deceive legitimate bidders

16   and lead them to believe that the other bidders are actual, flesh and blood bidders on

17   live auction floors.  In fact, these floor bidders are nonexistent.

18   347.    As a direct and proximate result of Neimans's fraud, Bates and the

19   members of the Class have suffered and will continue to suffer damages.

20   348.    Bates seeks damages against Neimans including but not limited to

21   disgorgement of all proceeds Neimans obtained from its unlawful business practices as

22   well as pre-judgment interests and costs.

23   **<u>COUNT 24 — VIOLATIONS OF CAL. CIVIL CODE § 1573</u>**

24   **<u>(AGAINST NEIMANS)</u>**

25   349.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

26   through 348 of this First Amended Complaint as if fully set forth herein.

27   350.    Plaintiff Bates brings this claim individually and on behalf of the Class

28   against Neimans.

351.    Cal. Civ. Code § 1573(1) provides in relevant part that "[c]onstructive fraud consists . . . [i]n any breach of duty which, without an actually fraudulent intent, gains an advantage . . . by misleading another to his prejudice . . ."

352.    Neimans has violated and continues to violate Civ. Code § 1573(1) by neglecting to inform Bates and the members of the Class of the fact that Neimans's auctions involved systematic shill bidding and did not take place on live auction floors. These actions constituted constructive fraud because they gave Neimans an unfair advantage, achieved by unfair means, over Plaintiff and the members of the Class.

353.    As a direct and proximate result of Neimans's constructive fraud, Bates and the members of the Class have and will continue to suffer damages.

354.    Bates seeks damages against Neimans including but not limited to disgorgement of all proceeds Neimans obtained from the contracts entered into with Bates and the members of the Class as well as pre-judgment interests and costs.

## COUNT 25 — BREACH OF CONTRACT

## (AGAINST NEIMANS)

355.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 354 of this First Amended Complaint as if fully set forth herein.

356.    Plaintiff Bates brings this claim individually and on behalf of the Class against Neimans.

357.    Participants in the auctions of Neimans, including Bates, all agreed to Neimans's terms and conditions.

358.    Neimans made representations that its auctions took place on a live auction floor and that all auctions had a $1 starting bid with no reserve.

359.    Neimans does not have any valid defense to the formation of the contract.

360.    Bates complied with all terms and conditions of the contract.

361.    Neimans breached the contract by holding auctions that took place entirely online and by engaging in systematic shill bidding practices which effectively made the minimum bids in the auctions much higher than $1.

1    362.    Neimans is aware of these violations of the contract and has taken no steps

2    to correct these violations.

3    363.    As a direct and proximate result of Neimans's breach of contract, Bates and

4    the members of the Class have and will continue to suffer damages.

5    364.    Bates seeks damages from Neimans including but not limited to

6    disgorgement of all proceeds Neimans obtained from the contracts entered into with

7    Bates and the members of the Class as well as pre-judgment interests and costs.

8    ### COUNT 26 — UNJUST ENRICHMENT

9    ### (AGAINST NEIMANS)

10    365.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

11    through 364 of this First Amended Complaint as if fully set forth herein.

12    366.    Plaintiff Bates brings this claim individually and on behalf of the Class

13    against Neimans.

14    367.    Through its unlawful shill bidding practices referenced hereinabove,

15    Neimans has unlawfully enriched itself at the cost of innocent bidders.  Bates and

16    members of the Class have suffered harm as a proximate result of the violations of law

17    and wrongful conduct of Neimans as alleged herein.

18    368.    If Neimans is permitted to keep monies collected under such false

19    pretenses, it will be unjustly enriched at the expense of members of the Class.

20    369.    Bates seeks an order requiring Neimans to:

21        a.    immediately cease its unlawful acts and practices;

22        b.    make full restitution of all monies wrongfully obtained; and

23        c.    disgorge all ill-gotten revenues.

24    ### CAUSES OF ACTION AGAINST GOANTIQUES

25    ### COUNT 27 — VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.

26    ### (AGAINST GOANTIQUES)

27    370.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

28    through 369 of this First Amended Complaint as if fully set forth herein.

371.    Plaintiff Mazur brings this claim individually and on behalf of the Class against GoAntiques.

372.    At all times relevant hereto, Mazur and each Class member was a "consumer," as defined in Civ. Code § 1761(d).

373.    At all times relevant hereto, GoAntiques's products, the jewelry, paintings, antiques, and any other items sold by it through eBay Live Auctions, constituted "goods," as defined in Civ. Code § 1761(a).

374.    At all times relevant hereto, GoAntiques's service, the auctions through which it sold items on eBay Live Auctions, constituted a "service," as defined in Civ. Code § 1761(b).

375.    At all times relevant hereto, Defendant GoAntiques constituted a "person," as defined in Civ. Code § 1761(c).

376.    At all times relevant hereto, Mazur's and each Class Member's purchase of GoAntiques's merchandise constituted a "transaction," as defined in Civ. Code § 1761(e).

377.    At all times relevant hereto, Mazur's and each Class member's winning an eBay Live Auction constituted a "transaction," as defined in Civ. Code § 1761(e).

378.    Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or what results in the sale or lease of goods or services to any consumer are unlawful: . . .

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . .

> (9) Advertising goods or services with the intent not to sell them as advertised. . . .

> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

1    379.    GoAntiques has violated and continues to violate Civ. Code § 1770(a)(5) by

2    advertising that its auctions took place on a live auction floor when, in fact, so such live

3    auctions exist and they take place entirely online.

4    380.    GoAntiques has violated and continues to violate Civ. Code § 1770(a)(9) by

5    advertising in its Terms and Conditions that its merchandise was being sold at auctions

6    with no reserve unless the auction featured a specific statement to the contrary.  In fact,

7    GoAntiques had no intent to honor this promise and systematically utilized shill bidding

8    to drive up auction prices on auctions with no such statement.

9    381.    GoAntiques has violated and continues to violate Civ. Code § 1770(a)(16)

10   by representing that its auctions took place on a live auction floor, as represented

11   previously, when in fact no such live auctions exist and the auctions which do exist take

12   place entirely online.

13   382.    GoAntiques has also violated and continues to violate Civ. Code §

14   1770(a)(16) by representing that its merchandise was supplied in accordance with the

15   previous representation that the auctions have no reserve.   In fact, GoAntiques utilized

16   shill bidding to effectively create a reserve for these auctions without the consumers'

17   knowledge or consent.

18   383.    Pursuant to Cal. Civ. Code § 1780(a), Mazur seeks an order enjoining

19   GoAntiques from engaging in the methods, acts, and practices alleged herein.

20   384.    Pursuant to Civ. Code § 1782, Mazur has given notice to GoAntiques of her

21   intention to file an action under Civ. Code §§ 1760 et seq. unless GoAntiques corrects or

22   otherwise rectifies the consumer fraud resulting from the misrepresentation and shill

23   bidding practices.  A copy of Mazur's CLRA notice to GoAntiques is attached hereto as

24   Exhibit H.

25   385.    Also pursuant to Cal. Civ. Code § 1782, if GoAntiques does not "correct or

26   otherwise rectify" its illegal acts within 30 days, Mazur intends to amend this Complaint

27   to add claims for:

28        a.   actual damages;

1    b. restitution of money to Bates and Class members;

2    c. punitive damages;

3    d. attorneys' fees and costs; and

4    e. other relief that this Court deems proper.

5   **COUNT 28—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**

6     **(AGAINST GOANTIQUES)**

7  386. Plaintiffs repeat and reallege the allegations contained in paragraphs 1

8 through 385 of this First Amended Complaint as if fully set forth herein.

9  387. Plaintiff Mazur brings this claim individually and on behalf of the Class

10 against GoAntiques.

11  388. Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or

12 fraudulent business practices and acts. Said statute is liberally construed to protect the

13 public.

14  389. In doing the acts alleged herein, GoAntiques engaged and continues to

15 engage in an unlawful, unfair, and deceptive business practice in violation of Cal. Bus.

16 & Prof. Code §§ 17200 et seq. GoAntiques's wrongful conduct alleged herein is part of a

17 pattern or generalized course of conduct that occurred and continues to occur in the

18 ordinary course of GoAntiques's business. Thus, GoAntiques's conduct impacts the

19 public interest.

20  390. GoAntiques's acts and practices have and are likely to deceive consumers.

21  391. GoAntiques's acts and practices are unlawful because they violate Civ.

22 Code §§ 1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(13), and 1770(a)(16); Cal.

23 Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341, 1343, and 1961. Specifically,

24 GoAntiques engaged in shill bidding practices and made false and deceptive

25 representations that its auctions were live actions taking place on an actual auction floor.

26 Such claims are material and substantial.

27  392. Pursuant to Cal. Bus. & Prof. Code § 17203, Mazur, on behalf of herself and

28 all members of the Class, seeks an order of this Court permanently enjoining

1    GoAntiques from continuing to engage in its unfair and unlawful conduct as alleged

2    herein.  Mazur also seeks an order awarding full restitution of all monies wrongfully

3    obtained.

4        **COUNT 29—VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.**

5                                **(AGAINST GOANTIQUES)**

6        393.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

7    through 392 of this First Amended Complaint as if fully set forth herein.

8        394.    Plaintiff Mazur brings this claim individually and on behalf of the Class

9    against GoAntiques.

10       395.    During the Class Period, GoAntiques marketed, advertised, and sold to the

11   public jewelry, paintings, antiques, and other items on a nationwide basis, including in

12   California.

13       396.    GoAntiques has engaged in the advertising and marketing alleged herein

14   with the intent to directly or indirectly induce the purchase of the merchandise it sold

15   via eBay Live Auctions.

16       397.    GoAntiques's advertisements and marketing representations regarding

17   and the reserves on its auctions and the auctions taking place on a live auction floor are

18   false, misleading, and deceptive as set forth more fully above.

19       398.    At the time it made and disseminated the statements alleged herein,

20   GoAntiques knew or should have known that the statements were untrue, deceptive, or

21   misleading, and acted in violation of Cal.  Bus. & Prof. Code §§ 17500 et seq.

22       399.    GoAntiques actively concealed its knowledge that the auctions did not

23   take place on an auction floor, and that the auctions had secret reserve prices due to

24   GoAntiques's systematic shill bidding.

25       400.    GoAntiques's acts of untrue and misleading advertising present a

26   continuing threat to consumers because such advertisements induced consumers to

27   participate in its auctions, which are then operated under false pretenses.

28

401.    As a result of the violations of California law described above, GoAntiques has been and will continue to be unjustly enriched at the expense of Mazur and the members of the Class.  Specifically, GoAntiques has been unjustly enriched by receipt of millions of dollars in monies received from customers who purchased merchandise which was marketed, advertised, and sold in the State of California and the United States through material misrepresentations regarding the auctions provided by GoAntiques.

402.    As a result of the violations of California law described above, Mazur and the members of the Class have suffered injury in fact and have lost money.

403.    Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Bus. & Prof. Code §§ 17535 et seq.

## COUNT 30 — VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710
## (AGAINST GOANTIQUES)

404.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 403 of this First Amended Complaint as if fully set forth herein.

405.    Plaintiff Mazur brings this claim individually and on behalf of the Class against GoAntiques.

406.    Cal. Civ. Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

407.    Cal. Civ. Code § 1710 provides in relevant part that "deceit . . . is either:

1.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2.  The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3.  The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4.  A promise, made without any intention of performing it."

408.    GoAntiques has violated and continue to violate Civ. Code § 1710(1) by suggesting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

409.    GoAntiques has violated and continues to violate Civ. Code § 1710(2) by asserting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

410.    GoAntiques has violated and continues to violate Civ. Code § 1710(3) by suppressing the fact that its auctions involved systematic shill bidding and did not take place on live auction floors.

411.    GoAntiques has violated and continues to violate Civ. Code § 1710(4) by promising both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

412.    Mazur and members of the Class were harmed by GoAntiques's allegation regarding the fairness of the auctions because they would not have participated in the auctions had they known that they were offered under false pretenses, were rigged, and did not take place on any live auction floors.

413.    In addition, Mazur and members of the Class were harmed directly and explicitly by GoAntiques's systematic shill bidding practices by the difference between the prices at which the merchandise was sold and the last good faith bid prior to the completion of the sale.

414.    Pursuant to Cal. Civ. Code § 1709, GoAntiques is liable for any damage which was proximately caused to Plaintiffs and members of the Class by GoAntiques's deceit.

415.    Mazur seeks damages against GoAntiques including but not limited to disgorgement of all proceeds GoAntiques obtained from its unlawful business practices as well as pre-judgment interests and costs.

## COUNT 31—VIOLATIONS OF CAL. CIVIL CODE § 1572

## (AGAINST GOANTIQUES)

416.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 415 of this First Amended Complaint as if fully set forth herein.

417.    Plaintiff Mazur brings this claim individually and on behalf of the Class against GoAntiques.

418.    Cal. Civ. Code § 1572 provides in relevant part that "[a]ctual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

    1.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    2.  The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

    3.  The suppression of that which is true, by one having knowledge or belief of the fact;

    4.  A promise made without any intention of performing it; or,

    5.  Any other act fitted to deceive."

419.    GoAntiques has violated and continues to violate Civ. Code § 1572(1) by suggesting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

420.    GoAntiques has violated and continues to violate Civ. Code § 1572(2) by asserting both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

421.    GoAntiques has violated and continues to violate Civ. Code § 1572(3) by suppressing the fact that its auctions involved systematic shill bidding and did not take place on live auction floors.

422.    GoAntiques has violated and continues to violate Civ. Code § 1572(4) by promising both that its auctions were fair and that they took place on live auction floors. In fact, both of these were false and were known by GoAntiques to be false.

1    423.    GoAntiques has violated and continues to violate Civ. Code § 1572(5)

2    through its  systematic shill bidding practices, which are intended to deceive legitimate

3    bidders and lead them to believe that the other bidders are actual, flesh and blood

4    bidders on live auction floors.  In fact, these floor bidders are nonexistent.

5    424.    As a direct and proximate result of GoAntiques's fraud, Plaintiffs and the

6    members of the Class have and will continue to suffer damages.

7    425.    Mazur seeks damages against GoAntiques including but not limited to

8    disgorgement of all proceeds GoAntiques obtained from its unlawful business practices

9    as well as pre-judgment interests and costs.

10    **COUNT 32 — VIOLATIONS OF CAL. CIVIL CODE § 1573**

11    **(AGAINST GOANTIQUES)**

12    426.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

13    through 425 of this First Amended Complaint as if fully set forth herein.

14    427.    Plaintiff Mazur brings this claim individually and on behalf of the Class

15    against GoAntiques.

16    428.    Cal. Civ. Code § 1573(1) provides in relevant part that "[c]onstructive

17    fraud consists . . . [i]n any breach of duty which, without an actually fraudulent intent,

18    gains an advantage . . . by misleading another to his prejudice . . ."

19    429.    GoAntiques has violated and continues to violate Civ. Code § 1573(1) by

20    neglecting to inform Mazur and the members of the Class of the fact that GoAntiques's

21    auctions involved systematic shill bidding and did not take place on live auction floors.

22    These actions constituted constructive fraud because they gave GoAntiques an unfair

23    advantage, achieved by unfair means, over Plaintiffs and the members of the Class.

24    430.    As a direct and proximate result of GoAntiques's constructive fraud,

25    Mazur and the members of the Class have and will continue to suffer damages.

26    431.    Mazur seeks damages against GoAntiques including but not limited to

27    disgorgement of all proceeds GoAntiques obtained from the contracts entered into with

28    Mazur and the members of the Class as well as pre-judgment interests and costs.

1

## COUNT 33 — BREACH OF CONTRACT

2

## (AGAINST GOANTIQUES)

3      432.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

4   through 431 of this First Amended Complaint as if fully set forth herein.

5      433.    Plaintiff Mazur brings this claim individually and on behalf of the Class

6   against GoAntiques.

7      434.    Participants in the auctions of GoAntiques, including Mazur, all agreed to

8   GoAntiques's terms and conditions.

9      435.    GoAntiques made representations that its auctions took place on a live

10  auction floor that the auctions had no reserve.

11     436.    GoAntiques does not have any valid defense to the formation of the

12  contract.

13     437.    Mazur complied with all terms and conditions of the contract.

14     438.    GoAntiques breached the contract by holding auctions that took place

15  entire online and by engaging in systematic shill bidding practices which effectively

16  created a reserve price.

17     439.    GoAntiques is aware of these violations of the contract and has taken no

18  steps to correct these violations.

19     440.    As a direct and proximate result of GoAntiques's breach of contract, Mazur

20  and the members of the Class have and will continue to suffer damages.

21     441.    Mazur seeks damages from GoAntiques including but not limited to

22  disgorgement of all proceeds GoAntiques obtained from the contracts entered into with

23  Mazur and the members of the Class as well as pre-judgment interests and costs.

24

## COUNT 34 — UNJUST ENRICHMENT

25

## (AGAINST GOANTIQUES)

26     442.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

27  through 441 of this First Amended Complaint as if fully set forth herein.

28

443.    Plaintiff Mazur brings this claim individually and on behalf of the Class against GoAntiques.

444.    Through its unlawful shill bidding practices referenced hereinabove, GoAntiques has unlawfully enriched itself at the cost of innocent bidders.  Mazur and members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of GoAntiques as alleged herein.

445.    If GoAntiques is permitted to keep monies collected under such false pretenses, it will be unjustly enriched at the expense of members of the Class.

446.    Mazur seeks an order requiring GoAntiques to:

    a.    immediately cease its unlawful acts and practices;

    b.    make full restitution of all monies wrongfully obtained; and

    c.    disgorge all ill-gotten revenues.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

## COUNT 35—VIOLATIONS OF 18 U.S.C. § 1962(C)

## (AGAINST ALL DEFENDANTS)

447.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 446 of this First Amended Complaint as if fully set forth herein.

448.    Plaintiffs bring this claim individually and on behalf of the Class against all Defendants.

449.    All Defendants have acted in violation of RICO, 18 U.S.C. § 1962(c) to the detriment of Plaintiffs and members of the Class.

450.    At all times relevant to this First Amended Complaint, all Defendants were "person[s]" within the meaning of 18 U.S.C. § 1961(3).

451.    At all times relevant to this First Amended Complaint, all Defendants had an ongoing business relationship, whereby eBay provided each of Seller Defendants with a forum to sells its products in exchange for various fees.  Does 101-200 had various but instrumental roles at either eBay or Seller Defendants and were also involved in this ongoing business relationship.

1    452.    This ongoing business relationship constituted an "association in fact"

2    enterprise within the meaning 18 U.S.C. § 1961(4) that was engaged in, or the activities

3    of which affected, interstate or foreign commerce (the "Enterprise").

4    453.    The members of the Enterprise had defined roles, and the enterprises as a

5    whole had ongoing existences, structures, and hierarchies.

6    454.    As set forth more fully above, Defendants corrupted the Enterprise and

7    caused Plaintiffs and members of the Class damages through a pattern of racketeering

8    activity.    At all times relevant to this First Amended Complaint, Defendants were

9    persons associated with the Enterprise and conducted or participated, directly or

10   indirectly, in the operation and management of the Enterprise through a pattern of

11   racketeering activity within the meaning of 18 U.S.C. §§ 1981(1) and (5) and § 1962.  This

12   pattern of racketeering activity entailed at least two acts of racketeering activity by

13   Defendants, at least one of which occurred within ten years after the commission of a

14   prior act of racketeering activity.

15   455.    The aforementioned pattern of racketeering consisted of a multitude of acts

16   that are indictable under, inter alia, 18 U.S.C. §§ 1341, 1343, and 1346 and are within the

17   scope of 18 U.S.C. 1961(1)(A) and (1)(B).  As set out more fully herein, the commission of

18   those related predicate acts over the period of time alleged constituted a continuous and

19   related pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5).

20   456.    As part of and in furtherance of the fraudulent schemes and artifices

21   described in detail in paragraphs 117 through 124 above, Defendants made repeated use

22   of, or had reason to believe that others would use, the U.S.  Postal Service, interstate

23   overnight couriers, and the interstate wires to transmit various documents, information,

24   and items including, inter alia, websites, images, terms and conditions, and the jewelry

25   itself (the "Transmissions").

26   457.    Each Transmission constituted either the transmittal by means of wire

27   communication in interstate commerce of signals, sounds, or writings; the use of the U.S.

28   Postal Service; or the use of interstate overnight couriers for the purpose of executing or

1    in connection with the aforementioned schemes and artifices to defraud.  Defendants

2    knew or had reason to believe that these Transmissions were in furtherance of executing

3    the aforementioned schemes or artifices or were incidental to an essential part of these

4    schemes or artifices.

5         458.    Defendants made or caused these Transmissions to be made with the

6    specific intent of defrauding Plaintiffs, the members of the Class, and others.  Each of

7    these Transmissions furthered the aforementioned schemes and artifices to defraud,

8    which were intended to and did proximately cause injury to Plaintiffs, the members of

9    the Class, and others in their business and property through shill bidding auctions and

10   deprived Plaintiffs and the members of the Class of the intangible right to honest

11   services with those they engaged in business with.  Those acts constituted offenses

12   indictable as crimes under, inter alia, the "mail fraud" and "wire fraud" statutes, 18

13   U.S.C.  §§ 1341, 1343, and 1346.

14        459.    Plaintiffs and the members of the Class reasonably relied upon the written

15   statements made to them by Defendants in connection with the aforementioned schemes

16   or artifices to defraud.

17        460.    As a direct and proximate result of the foregoing pattern of racketeering,

18   Plaintiffs and the members of the Class have suffered damage to their businesses and

19   property and are entitled to receive treble the damages that they have suffered due to

20   Defendants' violations of 18 U.S.C. § 1962(c).

21              **COUNT 36 — VIOLATIONS OF 18 U.S.C.  § 1962(A)**

22                       **(AGAINST ALL DEFENDANTS)**

23        461.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

24   through 460 of this First Amended Complaint as if fully set forth herein.

25        462.    Plaintiffs bring this claim individually and on behalf of the Class against

26   all Defendants.

27        463.    All Defendants have acted in violation of RICO, 18 U.S.C. § 1962(a), to the

28   detriment of Plaintiffs and members of the Class.

464.    eBay and Seller Defendants clearly profited financially from the Enterprise, and most likely Does 101-200 did as well.  At least some of this money was reinvested back into the scheme to defraud consumers.

465.    These reinvested monies proximately harmed Plaintiffs and members of the Class, in violation of 18 U.S.C. § 1962(a), as the funds provided necessary capital to fund the unlawful racketeering operations of Defendants.

## COUNT 37—VIOLATIONS OF 18 U.S.C. § 1962(D)
## (AGAINST ALL DEFENDANTS)

466.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 465 of this First Amended Complaint as if fully set forth herein.

467.    Plaintiffs bring this claim individually and on behalf of the Class against all Defendants.

468.    All Defendants have acted in violation of RICO, 18 U.S.C. § 1962(d), to the detriment of Plaintiffs and members of the Class.

469.    Each of Defendants have willingly and unlawfully combined, conspired, confederated, and agreed between and among each other to viodate 18 U.S.C. §§ (a) and (c), i.e., to conduct and participate, directly and indirectly, in the affairs of the Enterprise through a pattern of racketeering and invested at least some of the proceeds thereof back into the Enterprise, all in violation of 18 U.S.C. § 1962(d).

470.    As part of this conspiracy, each of the Defendants agreed to commit and in fact committed two or more racketeering acts and agreed to conduct and in fact conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(a) and (c).  In addition, each of the Defendants was aware of other Defendants' violations of 18 U.S.C. §§ 1962(a),(c) and adopted, as a goal, the violation of §§ 1962(a),(c) and facilitated other Defendants' violation of the same.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment against Defendants as follows:

(a)    an order certifying the Class, and appointing Plaintiffs and their undersigned counsel of record to represent the Class;

(b)    a permanent injunction enjoining Defendants, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, form in any way engaging in the practices set forth herein;

(c)    a permanent injunction enjoining Defendants, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, form utilizing any monies acquired by Defendants' unfair business practices, including all profits, revenues, and proceeds both direct and indirect;

(d)    imposition of a constructive trust upon all monies and assets Defendants have acquired as a result of their unfair practices;

(e)    compensatory damages and full restitution of all funds acquired from Defendants' unfair business practices, including disgorgement of profits;

(f)    actual damages suffered by Plaintiffs and Class members;

(g)    trebling of all damages awarded under 18 U.S.C. § 1962;

(h)    punitive damages, to be awarded to Plaintiffs and each Class member;

(i)    costs of suit herein;

(j)    investigation costs;

(k)    both pre- and post-judgment interest on any amounts awarded;

(l)    payment of reasonable attorneys' fees;

(m)    declaratory relief;  and

(n)    such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demands trial by jury on all issues so triable.

1

2    Dated:    San Francisco, California          Respectfully submitted,
                 April 3, 2008

3                                                 /s Matthew A. Siroka
                                                  MATTHEW A. SIROKA (CASBN 233050)
4                                                 **LAW OFFICE OF MATTHEW A. SIROKA**
                                                  600 Townsend Street, Suite 233050
5                                                 San Francisco, CA 94103
                                                  Telephone:   (415) 522-1105
6                                                 Facsimile:    (415) 522-1506
                                                  Email:       mas@defendergroup.com
7
                                                  CRAIG STUART LANZA
8                                                 JOHN BALESTRIERE
                                                  WILLIAM S. HOLLEMAN
9                                                 **BALESTRIERE LANZA PLLC**
                                                  225 Broadway, Suite 2700
10                                                New York, NY 10007
                                                  Telephone:   (212) 374-5404
11                                                Email:       clanza@balestriere.net
                                                  *Attorneys for Plaintiffs and the Class*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

     [†] Admission pending to the New York State Bar.
27

28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO:  C 07 3967 MHP

# Exhibit A



# Exhibit B



# Exhibit C

GoAntiquesTermsandConditions

GOANTIQUES LIVE AUCTION BUYERS TERMS & CONDITIONS New buyers to GoAntiques Live Auctions, and buyers who are currently registered with GoAntiques to purchase items from dealers listing inventory on GoAntiques' websites (www.goantiques.com), must accept the following Terms & Conditions to participate in GoAntiques' Live Auctions. Buyer acknowledges that by accepting these Terms & Conditions you are entering a legally binding agreement and opting in to receive emails and notifications about this sale and by placing a bid or accepting a second chance post-auction offer on a GoAntiques Live Auction item that such actions constitute acceptance of the following terms: 1. Buyer's Premium: A buyer's premium shall be added to each purchase to reach the total sales price. The buyer's premium is posted on each item detail page. 2. Total Sales Price: The total sales price of an item includes (i) the hammer price of the item (ii) the buyer's premium (iii) applicable sales and other taxes due on account of the sale, (iv) packing, shipping transportation and insurance charges, and customs fees and charges and duties, if applicable, and (v) any other amount due from the Buyer as provided in the Seller's E-commerce Policies posted on the Item Detail Page. Buyer may be charged tax based on the laws and regulations in the state where the Seller has nexis. Please note that the seller will collect the Buyer's Premium and remit to GoAntiques. 3. Online Bidding: By registering to bid through GoAntiques' Live Auction service you agree to accept GoAntiques' policies of bid history disclosure, including the policy that live online bidder's increments are not reported when bidding against an absentee bid until the absentee bid is surpassed. Bidders may leave absentee bids on items they wish to purchase. For bids placed on the goantiques.com website, GoAntiques' Auctioneer will bid for the absentee bidder which will be displayed during the Live Auction and on ebay's bid history as an "Auction Floor bid". The Auctioneer will also be responsible for protecting the reserve of the seller which will also be displayed as an "Auction Floor bid". "Auction Floor bid" is the designation given by eBayLiveAuctions to bids made by the Auctioneer in either situation. An additional notice will be posted during the auction by GoAntiques identifying such bids as "Auctioneer's bid for seller". All bids left by eBay bidders will be marked with the user's eBay id. Our Silent Auctions allow you to leave absentee bids on any item that you wish to bid on. The auction begins at 11:00 p.m. and only items that receive bids prior to the auction will come up during the auction. If you see something that you must have, be sure to leave your bid prior to the start of the auction. Please register to bid well in advance of the start time. Neither GoAntiques' nor its suppliers or affiliates will be held responsible for errors or failure to execute bid(s). Absentee bids must be submitted electronically during the preview period on http://www.GoAntiques.com, http://www.ebayliveauctions.com, or http://www.eBay.com. 4. Methods of Payments: Acceptable forms of payment are listed on each item detail. Payment methods vary with each item in accordance with Seller's Payment Policies. 5. Payment Due: Buyer shall communicate with Seller within three (3) days of the completion of the auction. Complete payment is due upon receipt of notification of a successful bid and shall be received by the Seller no later than 10 days following the auction. Title shall pass to the Buyer once payment in full has been made. All shipping charges will be borne by the Buyer unless otherwise negotiated with the Seller. Any risk of loss during shipment will be borne by the Buyer following delivery of the purchased item to the designated common carrier. Failure to remit payment to the Seller in the time period outlined in this agreement may result in legal action against the Buyer. 6. Winning Bid: The highest bidder shall be the buyer and if any dispute arises between two or more bidders, the auction coordinator shall decide the buyer. 7. Record of Sale: The record of sale, posted on GoAntiques Live Auctions, will be taken as absolute and final in all disputes. 8. Reserve Price: All lots are offered subject to a reserve. A reserve is a confidential minimum price below which such a lot will not be sold. GoAntiques will act to protect the reserve by bidding through the auctioneer. The auctioneer may open the bidding on any lot below the reserve by placing a bid on behalf of the Seller and may continue to bid on behalf of the Seller up to the amount of the reserve. This may be done by placing absentee bids, consecutive bids, or by placing bids in response to other

GoAntiquesTermsandConditions

bidders. 9. Inquiries: All inquiries regarding lots must be sent directly to the Seller via email and received 24 hours prior to the start of the auction. 10. Withdrawal Prior to Sale: GoAntiques reserves the right to withdraw any property before the sale and shall have no liability whatsoever for such withdrawal 11. Guarantee Terms: All items in the catalog are sold as described by the Seller of the item. No statement regarding condition, kind, value or quality of a lot shall be construed to be an expressed or implied warranty, representation or assumption of liability by GoAntiques. If an item is materially different than was described by the Seller, Buyer shall have 48 hours from the date the property is received to notify the Seller. After the 48 hour period all items are considered "as is", without recourse. Refunds in cash or credit shall be as outlined in the Seller's Refund Policies. The foregoing guarantee is only valid to the original buyer. The item(s) must be returned in the same condition as when purchased. Discrepancies of description shall be decided by mutually agreed upon experts whose determination must be in writing and is at the expense of the Buyer. 12. Role of GoAntiques GoAntiques Live Auctions bring Sellers and Buyers together. We do not screen or verify the items listed by Sellers in our Live Auctions. We assume no obligation or liability in connection with disputes between Buyers and Sellers. Buyers and Sellers are encouraged to communicate to resolve any questions prior to a purchase or that may arise after the purchase. 13. LIMITATION OF LIABILITY. GOANTIQUES AND ITS SUPPLIERS WILL NOT BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES (HOWEVER ARISING, INCLUDING NEGLIGENCE) ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. IN NO EVENT WILL GOANTIQUES OR GOANTIQUES AFFILIATES BE LIABLE TO BUYER FOR ANY CLAIMS RELATED TO THE LIVE AUCTION TECHNOLOGY. THIS INCLUDES DELIVERY OF EMAILS TO BUYERS. IN THE CASE OF A TECHNOLOGY FAILURE DURING THE AUCTION, GOANTIQUES RESERVES THE RIGHT TO WITHDRAW ITEMS IN QUESTION AND APPLY FOR A MUTUAL BACKOUT FOR BOTH BIDDER AND SELLER. 14. Entire Agreement; Waiver. This Agreement, including the GoAntiques' User Agreement and all exhibits and other documents incorporated by reference, set forth the entire understanding and agreement of the parties and supersedes any and all other written or oral agreements or understandings between the parties as to the subject matter of this Agreement. In the event of an inconsistency between this Agreement and any other document, which is part of this Agreement, the terms of this Agreement shall govern. From time to time during the term of this Agreement, GoAntiques may amend this Agreement (including any incorporated documents) by posting the amended terms on the GoAntiques Site, emailing notice of the amendment to the Buyer, or otherwise communicating such amendment to the Buyer. Each amendment will be effective immediately after it is initially posted on the GoAntiques Site, emailed to the Buyer, or otherwise communicated to the Buyer. The waiver of a breach of any provision of this Agreement will not operate or be interpreted as a waiver of any other or subsequent breach. The laws of the State of Ohio shall govern all transactions.

# Exhibit D

ebY | LiVE auctions™

GoAntiques.com
GoAntiques - Fabulous Findings

Auctions Open

Currently Auctioning...
Lot #2085383 - "Solar Verandah" - Russian traditions school #2085383

Estimate: US $ 1800 - US $ 2300

Starting price: US $ 140

Current bid: **US $ 300**
High bidder: **Floor bidder**

You're currently watching this auction...
Click here to participate

auctioneer's bid for seller-please bid again

Message History:

Floor Bid: US $ 150
Internet bid: US $ 160 (Internet bidder)
Floor Bid: US $ 170
Floor Bid: US $ 180
Floor Bid: US $ 190
Floor Bid: US $ 200
Floor Bid: US $ 210
Floor Bid: US $ 220
Floor Bid: US $ 230
Floor Bid: US $ 240
Floor Bid: US $ 250
Floor Bid: US $ 275
Floor Bid: US $ 300

# of bids: 14

951 of 999 (95%) lots remaining

Lots/Groups | Large Image |

currently-open lots:

| Lot # | Name | Starting Price |
|---|---|---|
| 2085383 | "Solar Verandah" - Russian traditions school #2085383 Larger Image | US $ 140 |

next lots:

| Lot # | Name | Starting Price |
|---|---|---|
| 2085384 | "Autumn Romance" - Russian traditions school #2085384 Larger Image | US $ 95 |
| 2085385 | "Flowers Of Autumn" - Russian traditions school #2085385 Larger Image | US $ 140 |
| 2085386 | "Forest Lake" - Russian traditions school #2085386 Larger Image | US $ 140 |
| 2085387 | "First Flowers" - Russian traditions school #2085387 Larger Image | US $ 95 |
| 2085388 | "Good Catch" - Russian traditions school #2085388 Larger Image | US $ 95 |
| 2085389 | "Spring River" - Russian traditions school #2085389 Larger Image | US $ 95 |
| 2085390 | "Winter In Province" Russian traditions school #2085390 Larger Image | US $ 95 |
| 2085391 | Impressionism oil "Mallow" by Sorokina T. #2085391 Larger Image | US $ 95 |
| 2085392 | "Moon night" romantic's marine by Russian #2085392 Larger Image | US $ 120 |
| 2085393 | "Night Kalimadze" oil in impressionism style #2085393 Larger Image | US $ 95 |

Applet beengine started

# Exhibit E

JOHN BALESTRIERE
225 BROADWAY SUITE 2700
NEW YORK, NY 10007
PHONE:  +1.212.374.5401
CELL:   +1.917.318.3844
FAX:    +1.212.208.2613
JB@BALESTRIERE.NET
WWW.BALESTRIERE.NET

August 1, 2007

***Certified Mail – Return Receipt Requested***
Meg Whitman
Chairman and Chief Executive Officer
eBay, Inc.
2145 Hamilton Avenue
San Jose, California 95125

        Re:    eBay Live Auctions Shill Bidding

Dear Ms. Whitman:

       Pursuant to § 1782 of the California Consumers Legal Remedies Act, our client, Michele Mazur, hereby notifies eBay, Inc. ("eBay") that she believes eBay has violated California Civil Code § 1750 et seq., and that she will file suit on behalf of herself and a class of similarly situated consumers (the "Class") unless eBay rectifies the consumer fraud resulting from the misrepresentation of the eBay Live Auctions service.

       Ms. Mazur alleges that eBay has made false and misleading statements and has concealed material information in the marketing and advertising of eBay Live Auctions to consumers during the period July 30, 2004 to the present. eBay marketed and profited off of the eBay Live Auctions service by promising that the auctions therein would be safe, the auctions would be run by carefully-screened auction houses, and would take place live on an auction floor complete with live, offline bidders. Ms. Mazur and thousands of other consumers used the eBay Live Auctions service pursuant to eBay's promises, yet eBay failed to provide consumers with the promised service.

       As a result of eBay's false and misleading statements and its failure to honor its promise that the eBay Live Auctions would be provided by carefully-screened, international auction houses, Ms. Mazur and the Class have suffered pecuniary loses, including but not limited to extra money spent due to the shill bidding which plagues many of the auctions operated through the eBay Live Auction service.

       Ms. Mazur hereby demands that eBay immediately refund to her and all users of eBay Live Auctions during the period from July 16, 2004 to the present all monies made through their participation in the eBay Live Auctions service. Ms. Mazur further demands that eBay cease representing that all eBay Live Auctions are safe and consist of carefully-screened international auction houses.

                              Sincerely,

                              John Balestriere

# Exhibit F

**BALESTRIERE**
PLLC

**JOHN BALESTRIERE**
225 BROADWAY SUITE 2700
NEW YORK, NY 10007
PHONE:    +1.212.374.5401
CELL:     +1.917.318.3844
FAX:      +1.212.208.2613
JB@BALESTRIERE.NET
WWW.BALESTRIERE.NET

August 1, 2007

*__Certified Mail – Return Receipt Requested__*
General Manager
Hot Jewelry Auctions.com
2057 South Atlantic Boulevard
Los Angeles, California 90040

Re:     <u>eBay Live Auctions Shill Bidding</u>

To Whom It May Concern:

Pursuant to § 1782 of the California Consumers Legal Remedies Act, our client, Michele Mazur, hereby notifies Hot Jewelry Auctions.com ("HJA") that she believes HJA has violated California Civil Code § 1750 et seq., and that he will file suit on behalf of herself and a class of similarly situated consumers (the "Class") unless HJA rectifies the consumer fraud resulting from the misrepresentations described below.

Ms. Mazur alleges that HJA represents that its auctions are fair, live auctions, and has concealed material information in the marketing, advertising, and operation of eBay Live Auctions to consumers during the period July 30, 2004 to the present. HJA marketed and profited off of the eBay Live Auctions service by promising that the auctions therein would be fair and that the auctions would take place live on an auction floor complete with live, offline bidders. Ms. Mazur and thousands of other consumers used the eBay Live Auctions service pursuant to HJA's promises, yet HJA failed to provide consumers with the promised service.

As a result of HJA's false and misleading statements and its failure to honor its promise that its auctions were occurring live and were fair, Ms. Mazur and the Class have suffered pecuniary loses, including but not limited to extra money spent due to the shill bidding which plagues all HJA's auctions run through eBay Live Auctions.

Ms. Mazur hereby demands that HJA immediately refund to her and all users of eBay Live Auctions during the period from July 30, 2004 to the present all monies made through their participation in the eBay Live Auctions service. Ms. Mazur further demands that HJA cease participating in eBay Live Auctions, or only participate in eBay Live Auctions when an actual auction is occurring on an auction floor in the complete absence of shill bidding.

Sincerely,

John Balestriere

# Exhibit G

April 2, 2008

<u>Certified Mail – Return Receipt Requested</u>

General Manager
Neimans Jewelry
17322 Murphy Avenue
Irvine, California 92614

    Re:  <u>eBay Live Auctions Shill Bidding</u>

To Whom It May Concern:

  Pursuant to § 1782 of the California Consumers Legal Remedies Act, our client, Sarah Bates, hereby notifies you that she believes Neimans Jewelry has violated California Civil Code § 1750 et seq., and that she will file suit on behalf of herself and a class of similarly situated consumers (the "Class") unless Neimans Jewelry rectifies the consumer fraud resulting from the misrepresentation of the Neimans Jewelry service as described below.

  Ms. Bates alleges that Neimans Jewelry has made false and misleading statements and has concealed material information in the marketing and advertising of Neimans Jewelry to consumers during the period July 31, 2004, to April 4, 2008. Neimans Jewelry marketed and profited from the eBay Live Auctions Service by promising that its auctions contained no shill bidding and that the jewelry sold was comparable in quality to that provided by mainstream retail stores. Ms. Bates and thousands of other consumers used the Neimans Jewelry service pursuant to these promises, yet Neimans Jewelry failed to provide consumers, including Ms. Bates and Class members, with the promised service.

  As a result of Neimans Jewelry's false and misleading statements and failure to honor its promise to provided the abovementioned services, Ms. Bates and the Class have suffered pecuniary loses, including but not limited to extra money spent due to the shill bidding, which seems to run rampant through most if not all of Neimans Jewelry's jewelry auctions.

Ms. Bates hereby demands that Neimans Jewelry immediately refund to her and all users of eBay Live Auctions during the period from July 31, 2004, to April 3, 2008, all monies made through their participation in the Neimans Jewelry service. Ms. Bates further demands that Neimans Jewelry cease representing that it offers auctions free from shill bidding providing high-quality jewelry.

Sincerely,

John Balestriere / MDz

John Balestriere

cc:    Craig Stuart Lanza
       William S. Holleman

# Exhibit H

**BALESTRIERE**
PLLC

April 2, 2008

<u>Certified Mail – Return Receipt Requested</u>

Jim Kamnikar
President and Chief Executive Officer
GoAntiques, Inc.
94 N. High Street
Suite 300
Dublin, Ohio 43017

        Re:    <u>eBay Live Auctions Shill Bidding</u>

Mr. Kamnikar:

        Pursuant to § 1782 of the California Consumers Legal Remedies Act, our client, Michele Mazur, hereby notifies you that she believes GoAntiques, Inc. has violated California Civil Code § 1750 et seq., and that she will file suit on behalf of herself and a class of similarly situated consumers (the "Class") unless GoAntiques, Inc. rectifies the consumer fraud resulting from the misrepresentation of the GoAntiques, Inc. service as described below.

        Ms. Mazur alleges that GoAntiques, Inc. has made false and misleading statements and has concealed material information in the marketing and advertising of GoAntiques, Inc. to consumers during the period July 31, 2004, to April 4, 2008. GoAntiques, Inc. marketed and profited from the eBay Live Auctions Service by promising that its auctions contained no shill bidding. Ms. Mazur and thousands of other consumers used the GoAntiques, Inc. service pursuant to these promises, yet GoAntiques, Inc. failed to provide consumers, including Ms. Mazur and Class members, with the promised service.

        As a result of GoAntiques, Inc.'s false and misleading statements and failure to honor its promise to provide the abovementioned services, Ms. Mazur and the Class have suffered pecuniary loses, including but not limited to extra money spent due to the shill bidding, which seems to run rampant through most if not all of GoAntiques, Inc.'s auctions.

**BALESTRIERE**
PLLC

**JOHN BALESTRIERE**
225 BROADWAY SUITE 2700
NEW YORK, NY 10007
PHONE: +1.212.374.5401
CELL: +1.917.318.3844
FAX: +1.212.208.2613
JB@BALESTRIERE.NET
WWW.BALESTRIERE.NET

Ms. Mazur hereby demands that GoAntiques, Inc. immediately refund to her and all users of eBay Live Auctions during the period from July 31, 2004, to April 3, 2008, all monies made through their participation in the GoAntiques, Inc. service. Ms. Mazur further demands that GoAntiques, Inc. cease representing that it offers auctions free from shill bidding.

Sincerely,

John Balestriere

cc:     Craig Stuart Lanza
William S. Holleman