CRAIG STUART LANZA*
JOHN BALESTRIERE*
WILLIAM S. HOLLEMAN†
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone: (212) 374-5400
Facsimile:  (212) 208-2613
* *Pro Hac Vice* application pending

MATTHEW A. SIROKA (CASBN 233050)
**LAW OFFICE OF MATTHEW A. SIROKA**
600 Townsend Street, Suite 233050
San Francisco, CA 94103
Telephone: (415) 522-1105
Facsimile:  (415) 522-1506
Email:        mas@defendergroup.com
*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **MICHELE MAZUR and SARAH BATES, individually and for all others similarly situated,**<br><br>　　　　　　　　　**Plaintiffs,**<br><br>　- against -<br><br>**EBAY, INC., HOT JEWELRY AUCTIONS.COM d/b/a JEWELRY OVERSTOCK AUCTIONS.COM d/b/a PARAMOUNT AUCTIONS, NEIMANS JEWELRY, GOANTIQUES.COM, INC., and DOES 1-200, inclusive,**<br><br>　　　　　　　　　**Defendants.** | Case No. C 07 3967 MHP<br><br>**PLAINTIFFS' RICO CASE STATEMENT** |

/ / /

Plaintiffs hereby file their initial Racketeer Influenced and Corrupt Organizations Act ("RICO") case statement pursuant to Judge Patel's Standing Order Regarding RICO Cases.

**RESPONSES**

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962 (a), (b), (c), and/or (d).**

Defendants' fraudulent and unlawful conduct constituted violations of subsections (a), (c), and (d) of 18 U.S.C. § 1962.

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

A. <u>eBay, Inc. ("eBay")</u>—eBay, acting through its employees, has actively held out Defendants Hot Jewelry Auctions.com, Neimans Jewelry, GoAntiques, Inc., and others including Does 1-200 (collectively "Seller Defendants") as reputable sellers through its eBay Live Auctions service. In fact, Seller Defendants were anything but reputable, engaging in shill bidding on *every* auction they operated through the eBay Live Auction service. eBay was not only aware of this and failed to act, but likely actively encouraged the behavior and very possibly coordinated it. Direct evidence of such coordination is unavailable to Plaintiffs pre-discovery, but reasonable inference strongly suggests that if Seller Defendants, as direct competitors, were all engaged in the *exact* same fraudulent scheme, then eBay, in a position to both easily coordinate and handsomely profit from such activity, somehow organized the fraud. Upon information and belief, the following eBay employees were specifically informed by non-eBay individuals that Seller Defendants were engaged in shill bidding: Matt Ledwith, Director of eBay Live Auctions; Quincy Carroll, second in charge at eBay Live Auctions; Andrea Weaver; Dean B. Gonzalez; Crystal Graham; Meg Whitman, CEO of eBay; Bill Cobb, President of eBay; and Adam Sand, an attorney for eBay.

B. <u>Hot Jewelry Auctions.com d/b/a Jewelry Overstock Auctions and d/b/a Paramount Auctions ("HJA")</u>—HJA, operating auctions under the names Jewelry Overstock Auctions ("JOA") and Paramount Auctions ("PA"), apparently in an effort to conceal from consumers the

sheer number of auctions they operate through the eBay Live Auctions service, is likely the most egregious of the known Seller Defendants. HJA commonly operates two simultaneous auctions, one through each of its pseudonyms, for twelve hours a day, six days a week, and on some days operates a third auction. Each of these auctions "sells" a piece of jewelry *every minute*, in auctions which often include only fake "floor bidders" shill bidding against themselves in an attempt to convince consumers that these auctions are popular and filled with eager buyers for what HJA represents are bargain prices on jewelry. In fact, once a consumer is tricked into participating in and winning one of these auctions, she often finds that she has purchased an item which commonly would cost more to melt down than they are worth on the market for scrap.

HJA appears to exist for no purpose except to dispose of massive amounts of what is essentially costume jewelry through fake auctions on eBay. After reasonable diligence, Plaintiffs' counsel was unable to ascertain any information regarding HJA's corporate form, a concealment which is likely deliberate on HJA's part. HJA's website provides only email addresses and a toll-free phone number, and Plaintiffs' counsel needed to perform a thorough investigation even to obtain an *address* so that HJA could be served in this action. Upon information and belief, as further detailed in the First Amended Complaint, HJA operates a "Click Room" in which its employees sit for hours at a time doing nothing but clicking to bid on HJA's live auctions as shill "floor bidders." The existence of a "Click Room" alone shows that HJA operates with what can only be described as a flagrant disregard for the law.

C. Neimans Jewelry ("Neimans")—Neimans operates a business which, to outward appearances, seems almost identical to HJA's. Like HJA, Neimans appears to operate for no other purpose than to dispose of worthless jewelry. While Neimans's website features a business address, Plaintiffs' counsel was unable to ascertain, even after an extensive search, any information about Neimans's business form. Its misleading name is clearly intended to suggest to consumers a connection with Neiman Marcus, Inc., a high-end luxury retailer with which Neimans almost certainly has no relationship whatsoever.

D. GoAntiques.com, Inc. ("GoAntiques")—GoAntiques runs in a slightly different style from HJA and Neimans and is likely engaged in legitimate business in other parts of its

1  operations. Its live auctions, though, shill bid in a manner which is materially identical to the
2  shill auctions run by HJA and Neimans. Such blatant shill bidding by what appears to be an
3  otherwise reputable company illustrates not only the pervasiveness of shill bidding on eBay Live
4  Auctions, but the extent to which eBay encourages, at the very least implicitly, such behavior.
5  GoAntiques, unlike HJA and Neimans, acts largely as a reseller of items on a commission basis.
6  This has no affect on their culpability, as the auctions GoAntiques runs on the eBay Live
7  Auctions service are without a doubt administered solely by GoAntiques, and such liability is
8  solely their own. In another notable departure from HJA and Neimans, GoAntiques sells not just
9  jewelry, but other items such as antiques and paintings, and shills on all of these auctions.

10  GoAntiques's actual shill bidding technique is slightly different from that of HJA or
11  Neimans. HJA and Neimans engage in "floor bidder" shilling regardless of whether any actual
12  Internet bidders are participating, and will bid against themselves at length and commonly will
13  "win" these auctions, the goods presumably simply remaining in HJA's inventory to be sold again
14  in a later auction. GoAntiques's shill bidders, in contrast, spring into action only after an Internet
15  bidder has placed an initial bid and will allow many auctions to close without any bidding at all.

16  This makes perfect sense: since GoAntiques is acting as a middleman, it would be difficult
17  to explain to its own sellers why an item which had been "won" by a GoAntiques-hired shill
18  bidder had not, in fact, been sold. This variation in shill bidding technique, the first observed by
19  Plaintiffs' counsel, also suggests that shilling may infect the entire eBay Live Auction platform.

20  E. Does 1-100—Does 1-100 are unknown sellers through eBay Live Auctions making use
21  of shill bidding to drive up the price of goods at their auctions. They may sell jewelry, such as
22  HJA and Neimans, or they may sell other products, such as GoAntiques. Whatever their product,
23  they are all involved in an elaborate scheme to defraud consumers, and as continuing
24  investigation reveals their identities, Plaintiffs will respectfully seek leave to amend the
25  Complaint and this RICO Statement to add the names of Does 1-100.

26  F. Does 101-200—Does 101-200 are individuals who were personally involved in the
27  fraudulent behavior of Defendants. Does 101-200 very likely include eBay directors and
28  employees but may also include individuals who work at or own Seller Defendants. These

1  individuals were not merely aware of the illegal activities of Defendants but also actually devised
2  the plans; actively participated in the scheme; or were complicit in the conspiracy by turning a
3  blind eye and profiting, directly or indirectly, financially or career-wise, from the activities of
4  Defendants. While the specific eBay individuals listed above, who upon information and belief
5  had personal knowledge of Seller Defendants' activities, may be members of Does 101-200, it is
6  not completely clear at this time as to the nature and extent of their knowledge or involvement in
7  such schemes. As further investigations and discovery reveal the exact names of Does 101-200,
8  Plaintiffs will respectfully seek leave to amend the Complaint and this RICO Statement to add
9  their names.

10      3.    **List the alleged victims and state how each victim was injured.**

11  Victims who have suffered RICO injuries include Michele Mazur ("Mazur"), Sarah Bates
12  ("Bates"), and all other members of the Class. Mazur purchased jewelry totaling $6,855 from
13  HJA and a single painting from GoAntiques for $2,206. Bates purchased a bracelet for $355
14  from Neimans. All other members of the Class engaged in similar transactions with Seller
15  Defendants. Nearly all of these items were of far lower quality than what were advertised and all
16  of them had their price driven up way above what the selling price would be without the existence
17  of shill bidding. Each of these Class members was harmed by the difference of price they would
18  have paid in the absence of shill bidders and the final purchase price.

19      4.    **Describe in detail the pattern of racketeering activity for each alleged RICO**
20  **claim. A description of the pattern of racketeering shall include the following information:**

21          **a. List the alleged predicate acts and the specific statutes that were**
22          **allegedly violated;**

23  All Defendants have engaged in a systematic and extensive series of illegal acts that
24  formed a pattern and practice of racketeering activity. The pattern and practice of racketeering
25  activities included, but may not have been limited to, mail fraud in violation of 18 U.S.C. § 1341
26  and wire fraud in violation of 18 U.S.C. § 1343. Defendants violated these statutes through their
27  systematic advancement of shill bidding through the eBay Live Auctions service, which made
28  heavy use of interstate wire transmissions and, at least in the case of HJA and Neimans, the

1  United States Postal Service.

2  **b. If the RICO claim is based on the predicate offenses of wire fraud,**
3  **mail fraud, or fraud in the sale of securities, the circumstances of fraud or**
4  **mistake shall be stated with particularity;**

5  On February 1, 2007, Mazur purchased 40 individual items of jewelry from HJA auctions
6  provided through the eBay Live Auctions service for a total of $4,602.90.  HJA's representation
7  of these items, their price, and a summary of the bidding is as follows:

- A "CERTIFIED 2.53 ctw SAPPHIRE & DIAMONG RING YELLOW GOLD" for $51, which closed after 11 bids: 2 from Mazur and 9 from "floor bidders";
- A "CERT. 0.50ctw DIAMOND STUD FLOWER EARRINGS 14K GOLD" for $101, which closed after 20 bids: 1 from Mazur and 19 from "floor bidders";
- An "ACA CERT. .50 ctw GARNET LADIES RING IN YELLOW GOLD" for $48, which closed after 11 bids: 1 from Mazur and 10 from "floor bidders";
- An "ACA CERT. 5.32ctw SAPPHIRE & DIAMONG BRACELET GOLD" for $111, which closed after 29 bids: 6 from Mazur and 23 from "floor bidders";
- An "OVERSTOCK CERTIFIED .38 ctw EMERALD PENDANT YELLOW GOLD" for $33, which closed after 12 bids: 2 from Mazur and 10 from "floor bidders";
- An "OVERSTOCK SOLITAIRE 0.20ctw DIAMOND STUD EARRINGS GOLD" for $61, which closed after 14 bids: 2 from Mazur and 12 from "floor bidders";
- An "OVERSTOCK CERTIFIED 1.10ctw SAPPHIRE & DIAMOND PENDANT WHITE GOLD" for $71, which closed after 16 bids: 2 from Mazur and 14 from "floor bidders";

- An "ACA CERT. 1.0ctw EMERALD & DIAMOND RING WHITE GOLD" for $91, which closed after 17 bids: 1 from Mazur and 16 from "floor bidders";
- A "CERT. 0.51 ctw SAPPHIRE & DIAMOND PENDANT GOLD" for $48, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- An "OVERSTOCK 6.20ctw GARNET TENNIS BRACELET YELLOW GOLD" for $141, which closed after 24 bids: 5 from Mazur, 2 from another Internet bidder, and 17 from "floor bidders";
- A "VINTAGE STYLE 0.52ctw DIAMOND & CITRINE RING WHITE GOLD" for $48, which closed after 11 bids: 1 from Mazur and 10 from "floor bidders";
- An "ACA CERT. .07 ctw EMERALD LADIES RING YELLOW GOLD" for $61, which closed after 16 bids: 4 from Mazur and 12 from "floor bidders";
- An "ACA CERT. .51 ctw SAPPHIRE & DIAMOND RING GOLD" for $71, which closed after 17 bids: 2 from Mazur and 15 from "floor bidders";
- A "CERTIFIED 1.30ctw RUBY & DIAMOND NECKLACE YELLOW GOLD" for $71, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- A "CERTIFIED .61 ctw RUBY & DIAMOND EARRING YELLOW GOLD" for $61, which closed after 15 bids: 1 from Mazur and 14 from "floor bidders";
- A "CERTIFIED 1.02 ctw SAPPHIRE LADIES RING YELLOW GOLD" for $71, which closed after 19 bids: 1 from Mazur and 18 from "floor bidders";
- A "CERTIFIED .22ctw RUBY & DIAMOND LADIES RING YELLOW GOLD" for $48, which closed after 14 bids: 2 from Mazur and 12 from "floor bidders";

- A "CERTIFIED 1.01 ctw RUBY & DIAMOND HEART PENDANT GOLD" for $81, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- A "CERTIFIED .52 ctw SAPHHIRE LADIES PENDANT YELLOW GOLD" for $33, which closed after 11 bids: 1 from Mazur and 10 from "floor bidders";
- An "OVERSTOCK CERTIFIED .33ctw OPAL LADIES RING YELLOW GOLD" for $61, which closed after 15 bids: 3 from Mazur and 12 from "floor bidders";
- A "CERTIFIED THREE-STONE 1.0ctw EMERALD RING YELLOW GOLD" for $71, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- An "ACA CERT. 1.05 ctw OPAL & DIAMOND RING YELLOW GOLD" for $56, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- A "CERTIFIED 1.65 ctw AMETHYST & DIAMOND RING WHITE GOLD" for $101, which closed after 15 bids: 2 from Mazur and 13 from "floor bidders";
- A "CERTIFIED .40 ctw AMETHYST LADIES RING YELLOW GOLD" for $61, which closed after 15 bids: 2 from Mazur and 13 from "floor bidders";
- An "OVERSTOCK SOLITAIRE 0.25ctw DIAMOND STUD EARRINGS GOLD" for $96, which closed after 22 bids: 1 from Mazur and 21 from "floor bidders";
- A "CERTIFIED 2.25ctw RUBY & DIAMOND RING YELLOW GOLD 14KT" for $101 which closed after 19 bids: 1 from Mazur and 18 from "floor bidders";

- A "CERTIFIED THREE-STONE 1.0ctw TANZANITE RING YELLOW GOLD" for $111, which closed after 17 bids: 2 from Mazur and 15 from "floor bidders";
- A "CERTIFIED 1.0ctw TANZANITE & DIAMOND RING YELLOW GOLD" for $101, which closed after 17 bids: 1 from Mazur and 16 from "floor bidders";
- A "CERTIFIED .51ctw RUBY & DIAMOND LADIES RING YELLOW GOLD" for $71 which closed after 13 bids: 1 from Mazur and 12 from "floor bidders";
- An "OVERSTOCK 6.10ctw AMETHYST TENNIS BRACELET WHITE GOLD" for $121, which closed after 20 bids: 1 from Mazur and 19 from "floor bidders";
- A "CERTIFIED .57 ctw EMERLD & DIAMOND RING WHITE GOLD" for $61, which closed after 16 bids: 1 from Mazur and 15 from "floor bidders";
- A "CERTIFIED THREE-STONE 1.0ctw RUBY RING YELLOW GOLD" for $81, which closed after 13 bids: 2 from Mazur and 11 from "floor bidders";
- A "CERTIFIED 1.30ctw OPAL & DIAMOND NECKLACE YELLOW GOLD" for $71, which closed after 18 bids: 1 from Mazur and 17 from "floor bidders";
- A "CERTIFIED THREE-STONE 1.0ctw EMERALD RING WHITE GOLD" for $81, which closed after 18 bids: 1 from Mazur and 17 from "floor bidders";
- A "CERTIFIED QUALITY .25ct SAPPHIRE LADIES RING WHITE GOLD" for $36, which closed after 11 bids: 1 from Mazur and 10 from "floor bidders";

BALESTRIERE LANZA PLLC
ATTORNEYS AT LAW

PLAINTIFFS' RICO CASE STATEMENT
CASE NO: C 07 3967 MHP

8

1          ■ A "CERTIFIED 0.52ctw DIAMOND & GARNET RING YELLOW
2             GOLD" for $45, which closed after 14 bids: 1 from Mazur and 13 from
3             "floor bidders";
4          ■ An "ACA CERTIFIED 9.20ctw GARNET LADIES BRACELET WHITE
5             GOLD" for $121, which closed after 20 bids: 1 from Mazur and 19 from
6             "floor bidders";
7          ■ A "CERTIFIED 1.30ctw SAPPHIRE & DIAMOND NECKLACE
8             GOLD" for $48, which closed after 13 bids: 1 from Mazur and 12 from
9             "floor bidders"; and
10         ■ A "CERTIFIED 1.30ct BLUE TOPAZ & DIAMOND NECKLACE
11            GOLD" for $66, which closed after 18 bids: 2 from Mazur and 16 from
12            "floor bidders"; and
13         ■ An "ACA CERTIFIED 1.05ctw BLUE TOPAZ LADIES NECKLACE
14            GOLD" for $66, which closed after 16 bids: 1 from Mazur and 15 from
15            "floor bidders."

16    On February 4, 2007, Mazur purchased a painting from GoAntiques for $2,206.

17    On December 20, 2007, Bates purchased a bracelet from a Neimans for $355 which was
18 listed as having an "estimated retail price" of $5,200.

19    Both Mazur and Bates, prior to making any of their purchases, saw and relied upon the
20 prominent statements on eBay's website that its live auctions were "safe," were "carefully
21 screened, " had "floor bidders", and involved "international auction houses." Mazur and Bates
22 were then defrauded by auctions that were filled with massive amounts of shilling bidding,
23 forcing them to pay far more than they otherwise would have. In Mazur's HJA auctions, for
24 example, in all but one she was the only actual bidder, meaning that absent shill bidding she
25 would have paid only $1 for each of her items.

26            **c. Describe how the predicate acts form a "pattern of racketeering**
27            **activity"; and**

28    The predicate acts of mail fraud, wire fraud, and possibly other acts stretch back to at least

February 2007, and very likely much earlier, and continue to date, over a year later. As each individual auction is a racketeering activity and there are hundreds, if not thousands, of such acts each day, these predicate racketeering acts could easily occur at a rate of a million or more each year.

### d. State whether the alleged predicate acts relate to each other as part of a common plan and, if so, describe.

The predicate acts—each auction on eBay Live Auctions involving shill bidding in which consumers had been misled by eBay's false representations—were virtually identical. As such, it is virtually certain that they were part of a common plan to defraud consumers. In addition, it is very likely that eBay worked in conjunction with most or all of Seller Defendants, competitors to one another, to encourage or even organize their shill bidding. In this way, all the predicate acts relate to each other as part of a common plan.

5. **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

### a. The names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;

The RICO enterprise consists of an association-in-fact between eBay and each of the Seller Defendants, with Does 101-200 playing roles that are unknown at this time but are in some way part of this fraudulent enterprise.

### b. A description of the structure, purpose, function, and course of conduct of the enterprise;

Structure: While the Seller Defendants, as competitors, likely did not conspire or associate directly with each other, they each were engaged directly in fraudulent activities with eBay so that the association-in-fact operated as a hub-and-spoke system with eBay as the hub and each Seller Defendant as a spoke. Does 101-200, individual person who are or were employees, officers, or directors of eBay or Seller Defendants, were integral to the operations of this enterprise.

Purpose and Function: The enterprise itself was organized solely for the operation of

fraudulent shill bidding auctions on the eBay Live service.

<u>Course of Conduct: The combination of fraudulent acts stretch over at least a year and involve perhaps hundreds of Defendants committing hundreds of thousands if not millions of individual fraudulent acts.</u>

  c. **Set forth whether any defendants are employees, officers, or directors of the alleged enterprise and, if so, identify them;**

Does 101-200 are all employees, officers, or directors of one of the entities comprising the enterprise.

  d. **State whether any defendants are associated with the alleged enterprise and, if so, identify them; and**

As described above, all Defendants are associated with the enterprise.

  e. **State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise; or that the defendants are the enterprise itself; or members of the enterprise**

Plaintiffs allege that all Defendants together are members of, and have an association-in-fact that is, the enterprise

 6. **Describe the alleged relationship between the activities of the enterprise and the patterns of racketeering activity. Explain how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

It appears that the enterprise's activities, which consist of all business relationships between eBay and each of the Seller Defendants, are made up almost solely of racketeering activity which serves no legitimate business purpose. eBay and perhaps GoAntiques do also conduct legitimate business, but nearly all of the enterprise's activities are fraudulent. Despite this, the racketeering activities were distinct from the enterprise, as the enterprise likely had a defined structure and engaged in routine activities that were not racketeering.

 7. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

  The enterprise was heavily involved in and had a substantial impact on interstate and

possibly foreign commerce. As the enterprise apparently conducted business entirely online, each transaction passed through Internet connections existing in any number of physical places, including this District. eBay draws an audience from all over the world and this entire audience was encouraged to participate in the live auctions operated by Seller Defendants. Additionally, Seller Defendants shipped goods to any number of states through the Postal Service, including Wisconsin and Wyoming when doing business with Mazur and Bates, respectively.

8. **If the Complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

   a. **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

eBay and Seller Defendants all derived substantial income from the pattern of racketeering activity. While Does 101-200 were all involved in some way in the operations and conspiracy of the enterprise, whether all or any of them directly derived income from the pattern of racketeering is unknown at this time. Plaintiffs reserve the right to amend this statement if discovery or further investigation reveals that Does 101-200 committed violations of this subsection.

   b. **Describe the use or investment of such income.**

eBay and Seller Defendants used Income received from the pattern of racketeering activity to invest in and operate the ongoing operations of their individual corporate entities, including but possibly not limited to those portions that were involved in the enterprise. These reinvested monies proximately harmed Plaintiffs and members of the Class as the funds were used to finance the unlawful rackerteering activities of Defendants.

9. **If the Complaint alleges a violation of 18 U.S.C. § 1962(b), describe the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Plaintiffs do not allege a violation of this subsection. Plaintiffs reserve the right to amend this statement if discovery or further investigations reveal violations of this subsection.

10. **If the Complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

    a. **State who is employed by or associated with the enterprise; and**

All Defendants either are or were employed by (or were owners, directors, or otherwise agents of) an entity that is part of the enterprise.

    b. **State whether the same entity is both the person liable and the enterprise under § 1962(c).**

Plaintiffs do not allege that the same entity is both the liable "person" and the "enterprise" under § 1962(c).

11. **If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy, including at least the following information:**

    a. **The names of the persons who are alleged to have conspired within the meaning of section 1962(d); and**

All Defendants have conspired within the meaning of § 1962(d).

    b. **The overt acts alleged to have been in furtherance of the conspiracy.**

The overt acts committed in furtherance of the conspiracy by eBay were the representations by eBay regarding the auctions of Seller Defendants and eBay's provision of a selling platform on which the shill bidding took place. Upon information and belief, and as described elsewhere in this statement and First Amended Complaint, a number of high-ranking individuals at eBay, including both those in a position to set high-level policy *and* those directly responsible for the operations of eBay Live Auctions, were personally aware of the shill bidding activities of Seller Defendants. This knowledge itself, combined with the continued representations by eBay, results in a conspiracy to commit wire and mail fraud on a massive scale. Furthermore, Plaintiffs believe that the eBay individuals' ignoring this information strongly suggests that eBay had other knowledge of and involvement in the shill bidding activities of Seller Defendants and likely encouraged such behavior, having made a decision that the profits derived from the enterprise outweighed the risks of discovery.

The Seller Defendants' overt acts included all their statements regarding the lack of shill bidding or fraud and the shill bidding itself.

12. **Describe the alleged injury to business or property.**

Plaintiffs have all sustained injuries to their business or property, in an amount to be determined at trial, caused by the systematic fake auctions which were part of the ongoing pattern and practice of the racketeering activity run by Defendants. The result was a huge overpayment by all Plaintiffs for their purchases.

13. **Describe the direct causal relationship between the alleged injury and the violation of the RICO statute**

But for the existence of and wrongful acts by Defendants, Plaintiffs and Class members would not have suffered injuries. There is a direct causal relationship between this injury and the pattern of racketeering activity.

14. **Provide any additional information that you believe would help to inform the preparation and trial of the RICO claims.**

Plaintiffs believe that further investigation and future discovery will reveal essential information regarding additional Defendants, the extent of complicity and even outright agreement between eBay and Seller Defendants, and the role of Does 101-200. Plaintiffs intend to seek leave to amend this RICO Statement as such information becomes available.

Dated:   San Francisco, California  
         April 3, 2007

Respectfully submitted,

*s/ Matthew A. Siroka*  
MATTHEW A. SIROKA (CASBN 233050)  
**LAW OFFICE OF MATTHEW A. SIROKA**  
600 Townsend Street, Suite 233050  
San Francisco, CA 94103  
Telephone:   (415) 522-1105  
Facsimile:   (415) 522-1506  
Email:       mas@defendergroup.com

CRAIG STUART LANZA  
JOHN BALESTRIERE  
WILLIAM S. HOLLEMAN  
**BALESTRIERE LANZA PLLC**  
225 Broadway, Suite 2700  
New York, NY 10007  
Telephone: (212) 374-5400  
Facsimile:  (212) 208-2613

---

[†] Admission pending to the New York State Bar.