UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE MAZUR and SARAH BATES, individually and for all others similarly situated, | No. C 07-03967 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER**<br><br>**Re: Plaintiffs' Motion for Class Certification and for Appointment of Class Representative and Class Counsel** |
| v. | |
| EBAY INC., HOT JEWELRY AUCTIONS.COM d/b/a JEWELRY OVERSTOCK ACTIONS d/b/a PARAMOUNT AUCTIONS, NEIMANS JEWELRY, GOANTIQUES.COM, INC., and DOES 1-200, inclusive, | |
| Defendants. / | |

In this proposed class action, plaintiffs brought suit against eBay Inc. ("eBay") and others ("Seller Defendants"), accusing the Seller Defendants of engaging in fake or "shill" bidding and eBay of acquiescing in the same. Now before the court is plaintiffs' motion for class certification and for appointment of class representative and class counsel pursuant to Federal Rule of Civil Procedure 23. Having considered the parties' arguments and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

On July 29, 2008, plaintiffs Michele Mazur and Sarah Bates filed a third amended complaint, on behalf of themselves and others similarly situated, setting forth the following factual allegations. eBay provides the Live Auction service which allows eBay users to place bids on live auctions held

1  by third-party auction houses. Pls.' Third Amended Complaint ("Compl.") ¶ 29. eBay's Live
2  Auction service is available at ebayliveauctions.com. Id. at ¶ 39. This service allows eBay users to
3  compete with floor bidders at those auction houses. The offline bids made by the floor bidders are
4  reflected online, but eBay users are not provided any details regarding the bidder. Id. at ¶ 73. The
5  floor bidder could be someone who is physically present on the auction room floor, or an absentee
6  bid placed in person, via fax, or real time phone bid. Id. at ¶ 33.

7  Despite claiming to hold live auctions - auctions held on an auction floor - Seller Defendants
8  are not holding live auctions. Id. at ¶¶ 47, 53, 54, 65, 69. eBay knows that Seller Defendants are not
9  holding live auctions, contrary to its assertion that the Live Auction service is live. Id. at ¶¶ 29, 38,
10 80, 84. The bids represented as floor bids are instead shill bids—which eBay defines as "bids that
11 artificially increase an item's price or apparent desirability, or bids by individuals with a level of
12 access to the seller's item information not available to the general community." Id. at ¶¶ 71, 66.
13 Shill bids artificially inflate the price that a winning internet bidder pays for a given item, by
14 creating the illusion that there is substantial demand for each item. Id. at ¶¶ 72, 73. Shill bidding is
15 allegedly prohibited by eBay rules. Id. at ¶ 66.

16 That Seller Defendants' floor bids are shill bids is evidenced by the fact that the auctions are
17 not live from any auction house floor, but rather the bidding goes online only and is "constant" such
18 that bids are rapidly logged. Id. at ¶¶ 45-47, 53-54, 59-60. With respect to Hot Jewelry
19 Auctions.com ("HJA"), for example, floor bids are logged at a rapid rate of approximately twenty
20 live bids in seven seconds. Id. at ¶ 46. HJA acknowledges that floor bidders are VIPs who place
21 bids from their homes using the Internet. Id. at ¶ 47. Plaintiffs contend that these VIPs are actually
22 individuals employed by HJA who pretend to be floor bidders and bid to drive up the price of an
23 item. Id. at ¶ 50. With respect to Neimans Jewelry ("Neimans"), floor bids are logged in a pattern
24 identical to HJA. Id. at ¶ 51. With respect to GoAntiques.com, Inc. ("GoAntiques.com"), floor bids
25 only begin after an internet bidder has placed an initial bid, but are logged at a similar rapid rate to
26 that of HJA and Neimans. Id. at ¶ 59. Auctioneers at GoAntiques.com are also responsible for
27 protecting the seller's reserve – the minimum price at which the seller is willing to sell – which is
28 displayed to internet bidders as an "Auction floor bid." Id. at ¶ 61.

2

The result of eBay permitting these Seller Defendant "auction houses" to not actually run auction floor auctions is "massive and systemic fraud." Id. ¶¶ 38, 65. The items purchased by the eBay Internet bidders at inflated prices are worth far less than the purchase price. Id. at ¶¶ 98, 105, 110, 114. These items include jewelry, antiques, art, coins, paintings, estate items and other collectibles. Id. ¶¶ 44, 51, 57. eBay Internet bidders are induced to pay higher prices for these items both because the floor bidders have actually increased the price of the item, and because the eBay Internet bidders rely on the floor bidder having access to the item and therefore being able to better evaluate its worth. Id. at ¶¶ 97, 99, 105, 106, 110, 112-113.

As a result of these allegations, plaintiffs contend that Seller Defendants are liable for making misrepresentations regarding the nature of their auction services and for engaging in shill bidding practices. Plaintiffs also contend that eBay falsely claimed that the "live" auctions were safe and involved carefully screened reputable international auction houses with floor bidders. The Third Amended Complaint alleges a number of contract, tort and statutory claims against eBay and Seller Defendants. Further details concerning the procedural history of this action can be found in the court's prior orders: Mazur v. eBay Inc., 2008 WL 618988 (N.D. Cal. 2008), Docket No. 55, and Mazur v. eBay Inc., 2008 WL 2951351 (N.D. Cal. 2008), Docket No. 69.

On December 1, 2008, plaintiffs filed this motion for class certification and to appoint class representative and class counsel pursuant to Federal Rule of Civil Procedure 23.[1] eBay and the Seller Defendants filed a joint opposition to plaintiffs' motion and GoAntiques.com filed a supplemental brief and joinder to defendants' joint opposition. Collectively, they argue that plaintiffs are not adequate class representatives, plaintiffs' claims are not typical of a class, and substantial individual issues predominate, i.e., issues of reliance, damages, causation and manageability that allegedly preclude class certification.

LEGAL STANDARD

Motion for Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23, which provides a two step procedure. First, the four prerequisites enumerated in Rule 23(a) must be satisfied, and then the

3

1  party seeking certification must also show that they have met one of the four disjunctive tests set out
2  in Rule 23(b).  Fed. R. Civ. P. 23.

3  Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so
4  large that joinder of all members is impracticable ("numerosity"); (2) that there are one or more
5  questions of law or fact common to the class ("commonality"); (3) that the named parties' claims are
6  typical of the class ("typicality"); and (4) that the class representatives will fairly and adequately
7  protect the interests of other members of the class ("adequacy of representation").  Fed. R. Civ. P.
8  23(a).  In addition to the explicit requirements set out by Rule 23(a), the class definition must set
9  forth a class which is ascertainable and clearly identifiable.  Lamumba Corp. v. City of Oakland,
10 2007 WL 3245282 (N.D. Cal. 2007) (Patel, J.).

11 A party seeking class certification must also show that one of Rule 23(b)'s provisions applies.
12 Fed. R. Civ. P. 23(b); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  Under Rule
13 23(b), any one of the following four options must be satisfied to obtain class certification: (1) That
14 common questions of law or fact predominate and that a class action is superior to other available
15 methods of adjudication (Rule 23(b)(3)); or (2) that the defendant acted or refused to act on grounds
16 generally applicable to the class, rendering declaratory or injunctive relief appropriate with respect
17 to the class as a whole (Rule 23(b)(2)); or (3) that the prosecution of individual actions would create
18 a risk of inconsistent verdicts which would establish incompatible standards of conduct for
19 defendant (Rule 23(b)(1)(A)); or finally (4) that adjudication of individual claims would be
20 dispositive of the claims or non-party class members, or substantially impede the ability of non-party
21 class members to pursue their own claims (Rule 23(b)(1)(B)).

22 The party seeking class certification bears the burden of establishing that the requirements of
23 Rule 23(a) and (b) have been met.  Zinser v. Accufix Research Inst., 253 F.3d 1180, 1186 (9th Cir.
24 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508
25 (9th Cir. 1992).  When adjudicating a motion for class certification, the court accepts the allegations
26 in the complaint as true so long as those allegations are sufficiently specific to permit an informed
27 assessment as to whether the requirements of Rule 23 have been satisfied.  Blackie v. Barrack, 524
28 F.2d 891, 901 (9th Cir. 1975).  The merits of the class members' substantive claims are generally

4

1  irrelevant to this inquiry.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974); see also Moore v.
2  Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  However, courts may "consider
3  evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the
4  underlying merits of the case."  Hanon, 976 F.2d at 509, citing In re Unioil Sec. Litig., 107 F.R.D.
5  615, 618 (C.D. Cal. 1985); see also Moore, 708 F.2d at 480 ("some inquiry into the substance of a
6  case may be necessary to ascertain satisfaction of the commonality and typicality requirements of
7  Rule 23(a)").

9  DISCUSSION
10  Plaintiff seeks to certify as members of a class "all persons in the United States who won
11  auctions managed by Seller Defendants and operated by eBay, or who would have won such
12  auctions by virtue of being the highest bidder who was not a shill bidder, from July 31, 2004, to
13  April 2, 2008 ('Class Period')."  See Compl. ¶ 17.
14  The court finds that there are several barriers to certifying this class, namely the class
15  definition, typicality and adequacy of the named representatives pursuant to Rule 23(a), and
16  predominance of common issues pursuant to Rule 23(b)(3), the provision under which plaintiffs'
17  seek certification.  The court addresses each of these problematic issues in turn.
18  I.   Class Definition is Inadequate
19  As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking
20  class certification must demonstrate that an identifiable and ascertainable class exists.  "An implied
21  prerequisite to certification is that the class must be sufficiently definite."  Whiteway v. FedEx
22  Kinko's Office & Print Servs., Inc., 2006 WL 2642528, at *3 (N.D. Cal. 2006) (Armstrong, J.).  "A
23  class definition should be precise, objective, and presently ascertainable," though "the class need not
24  be so ascertainable that every potential member can be identified at the commencement of the
25  action."  O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal
26  quotations omitted).
27  Plaintiffs' class as presently defined is, in parts, imprecise, overbroad and unascertainable.
28  Plaintiffs' proposed class consists of two sets of people: (1) all persons who won auctions managed

5

by the Seller Defendants and operated through eBay Live Auctions during the class period, and (2) all persons who would have won auctions but for a shill bidder entering the highest bid. The first set is both objective and likely readily ascertainable through records kept by defendants. See eBay's Resp. to Pls.' First Set of Interogs. ¶ 11. This set is imprecise, however, for two reasons. First, plaintiffs allege that it is through the use of floor bids as shill bids that an item's price is inflated. Compl. ¶¶ 70-73. If there were no floor bids for a particular auction item, then the winner of that item would not be harmed because of an inflated price. An auction could be won by either a bid from a single eBay bidder or by bids between only two eBay bidders. See Mazur Dep. at 136:23-137:3.

Second, like plaintiff Mazur, some of the putative class members may be using Live Auction for business purposes, thereby precluding them from bringing causes of action under the California Consumer Legal Remedies Act. See infra, Section II A, Typicality. Because the class as currently defined would include these non-harmed auction winners, this portion of the class definition is both imprecise and overbroad. See, e.g., Simon v. Am. Tel. & Tel. Corp., 2001 WL 34135273, at *3 (C.D. Cal. 2001) (holding that class certification was inappropriate because the proposed class definitions included persons who had not yet been aggrieved); Mateo v. M/S Kiso, 805 F.Supp. 761, 773 (N.D. Cal. 1992) (Jensen, J.) (holding that a class defined by a "radically overbroad" class definition was "so broad as to be unascertainable, and, on that basis alone, uncertifiable").

The second proposed set of class members, all persons who "would have won but for the shill bidder," is wholly unascertainable. Even if sub-classing were appropriate, as plaintiff suggested during the hearing, plaintiffs have neither presented evidence identifying auctions in which a shill bid was the highest bid and the putative "would-be winner," nor have plaintiffs suggested a method by which to determine how to identify such persons or such auctions. The court disavows any reliance on self-identification of the alleged "would-be winners" herein, given that plaintiffs were unable to devise any sort of objective system for screening out such persons from the auctions themselves. Indeed, with no reference to objective criteria, the class members themselves might not know if they were members of the class. Furthermore, plaintiffs have provided no method of

6

1  calculating damages for these "would-be winners." The court is not satisfied with this class
2  definition because it fails to set forth a class which is ascertainable and clearly identifiable.

3  While the court has the power to modify proposed class definitions to make them sufficiently
4  definite, see Hagen v. City of Winnemucca, 108 F.R.D. 61, 64 (D. Nev. 1985), this is not an instance
5  in which the court deems such a revision appropriate because, as discussed below, the class
6  certification motion nonetheless fails.

7  II.  Rule 23(a) Requirements Are Not Met

8  A.  Typicality

9  Under Rule 23(a), the claims of the representative plaintiff must be typical of the claims of the
10 class. See Fed. R. Civ. P. 23(a)(3). To be considered typical for purposes of class certification, the
11 named plaintiff need not have suffered an identical wrong to others in the class. See Hanlon, 150
12 F.3d at 1020. Rather, the claims of the putative class must be "fairly encompassed by the named
13 plaintiff's claims." General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982) (internal
14 quotation omitted). The Ninth Circuit has held that "[w]here the challenged conduct is a policy or
15 practice that affects all class members, the underlying issue presented with respect to typicality is
16 similar to that presented with respect to commonality, although the emphasis may be different."
17 Armstrong, 275 F.3d at 868-69.

18 Plaintiffs allege that they suffered the same injury as the rest of the proposed class. Bates
19 purchased a bracelet on eBay Live Auctions from Neimans, and Mazur purchased multiple items on
20 eBay Live Auctions from HJA and GoAntiques.com. See Bates Dep. at 69:3-6; Mazur Dep. at
21 89:13-14, 104:22-105:2, 176:4-15. The claims of plaintiff Bates would be typical of the claims of a
22 putative class with respect to defendants eBay and Neimans. Although defendants argue that Bates'
23 bracelet was actually purchased through the eBay "core" site rather than a live auction (see Bechtold
24 Dec. ¶¶ 4-5), for the purposes of this motion, the court will accept Bates' assertion as true. See
25 Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) (noting that a district judge is "necessarily
26 bound to some degree of speculation by the uncertain state of the record a on which he must rule [on
27 a motion for class certification]. An extensive evidentiary showing of the sort requested by
28 defendants is not required.").

7

That said, plaintiff Mazur's claims are not typical of the claims of the putative class with respect to defendants eBay, HJA and GoAntiques.com for at least two reasons.  First of all, causes of action 1, 11 and 27 allege harm under California Civil Code § 1750 et seq., the California Consumer Legal Remedies Act. ("CLRA").  This act is designed to protect consumers, defined at section 1761(d) as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).  Mazur uses eBay Live Auction to purchase items for her business and not her own use.  See Compl. ¶ 93; Mazur Dep. at 16:5-17:8, 82:1-13, 112:21-24; 176:4-15.  Mazur is therefore not a consumer as defined by California Civil Code section 1761(d) and cannot represent a putative class in those actions alleged under the CLRA.  Lazar v. Hertz Corp., 143 Cal. App. 3d 128, 141-42 (1983), citing La Sala v. American Savings & Loan Assoc., 5 Cal. 3d 864, 875 (1971) ("The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent."); see also Bailey v. Patterson, 369 U.S. 31, 32-33 (1963).

Second, Mazur, as a buyer and seller familiar with the eBay platforms, could be subject to unique defenses, thereby making her an atypical plaintiff.  Defendants assert that Mazur is subject to both an unreasonable reliance defense and an unclean hands defense.  See Peterson Dec. ¶¶ 3-5.  While the court need not, and does not, determine the merits of these defenses, the fact that Mazur may be subject to these defenses at all puts her in a different position from the rest of the putative class.  For example, plaintiff Mazur's alleged reliance that eBay Live Auction was free from shill bidding itself raises the issue of shill bidding, which affects the class definition, which is already deemed inadequate for the reasons stated.  Likewise, if Mazur herself engaged in shill bidding, this raises a host of issues with regard to her conduct (e.g., whether her bidding took place on the eBay core site or the Live Auction site and whether she was a seller or a purchaser at the relevant time) that may put her at variance with other members of the class.  Therefore, because Mazur is atypical of the rest of the class, she cannot represent a class with regard to claims against HJA or GoAntiques.com.

The court finds that plaintiff Mazur, as presumptive lead plaintiff, does not meet the typicality requirement of the proposed class.  In examining the second presumptive lead plaintiff, the court

1  finds that Bates has made a prima facie showing of typicality for claims against eBay and Niemans.
2  Taken together, neither plaintiff has typical claims for any of the causes of action against HJA or
3  GoAntiques.com.  Plaintiff Bates had no interaction with defendants HJA or GoAntiques.com, and
4  plaintiff Mazur, because of her non-consumer status under the CLRA and her atypicality with
5  respect to possible unique defenses, is an atypical class representative.  The typicality requirement
6  thus fails because neither named plaintiff has met the typicality requirement for the claims alleged in
7  the pending complaint.[2]

      B.      Adequacy

9  Rule 23(a) dictates that the representative plaintiff must fairly and adequately protect the
10 interests of the class. Fed. R. Civ. P. 23(a)(4).  To satisfy constitutional due process concerns,
11 unnamed class members must be afforded adequate representation before entry of a judgment that
12 binds them.  See Hanlon, 150 F.3d at 1020, citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940).
13 "Adequate representation depends on the qualifications of counsel for the representatives, an
14 absence of antagonism, a sharing of interests between representatives and absentees, and the
15 unlikelihood that the suit is collusive."  Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)
16 (internal quotation omitted).  A determination of legal adequacy rests on the resolution of two
17 questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class
18 members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on
19 behalf of the class? Hanlon, 150 F.3d at 1020.
20 As to the first question, in this case, while Bates may not have any conflicts of interest with
21 other potential class members, see Bates Dep. 36:8-15, Mazur, because she may be subject to unique
22 defenses, may have conflicts of interest.  The fact that the court may have to spend time at some
23 future date assessing Mazur's roles and actions makes her an inadequate representative.  The second
24 question may be answered in the affirmative for both plaintiffs.  See Bates Dep. 38:1-2; Mazur Dep.
25 60:23-25, 61:1-9, 61:12-15.  On the whole, the court finds that while Bates might potentially make
26 for an adequate class representative, this cannot be determined because, as discussed above, there is
27 currently no satisfactory class definition by which to identify the other class members.  The court
28 finds that Mazur is an inadequate representative.

1 III.   Rule 23(b)(3) Requirements Are Not Met

2      In addition to meeting the prerequisites for class certification under Rule 23(a), a class must 3 also meet one of the three alternative requirements for treatment as a class action under Rule 23(b). 4 Fed. R. Civ. P. 23.  Here, plaintiffs allege that the class meets the requirements of Rule 23(b)(3). 5 Class certification pursuant to Rule 23(b)(3) requires plaintiff to establish that "the questions of law 6 or fact common to the members of the class *predominate* over any questions affecting only 7 individual members, and that a class action is *superior* to other available methods for the fair and 8 efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).  Because the 9 court finds that the predominance requirement is not met, the superiority requirement need not be 10 considered.

11      The predominance inquiry "focuses on the relationship between the common and individual 12 issues." Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 13 F.3d 1152, 1162 (9th Cir. 2001).  Consequently, the presence of common issues of fact or law 14 sufficient to satisfy the requirements of Rule 23(a)(2) is not by itself sufficient to show that those 15 common issues predominate. Hanlon, 150 F.3d at 1022.  Nonetheless, "[w]hen common questions 16 present a significant aspect of the case and they can be resolved for all members of the class in a 17 single adjudication, there is clear justification for handling the dispute on a representative rather than 18 on an individual basis." Id. (internal quotations omitted).  The predominance inquiry focuses on 19 whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." 20 Culinary/Bartender Trust Fund, 244 F.3d at 1162, quoting Amchem, 521 U.S. at 623.  Central to this 21 inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." 22 Zinser, 253 F.3d at 1189, quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 23 1996).

24      Common questions of law or fact fail to predominate over individual questions in this action. 25 The court agrees with defendants that any liability based on alleged misrepresentations hinges on 26 individual determinations of reliance.  This is particularly so given that the court is unclear as to 27 which representations plaintiffs are even attempting to rely upon.  The causes of action allege five 28 misrepresentations: that the auctions were "live/had floor bidders," that they were "safe," that they

10

1  were "carefully screened," and that they were conducted by both "reputable" and "international
2  auction houses." See e.g., Compl. ¶¶ 137-39, 147, 153, 164-67, 174-77, 184.  Notably, this court has
3  already ruled that the alleged misrepresentations that the auction houses were "carefully screened"
4  and are "reputable" are protected by section 230 of the Communications Decency Act and therefore
5  not actionable. See Mazur v. eBay Inc., 2008 WL 618988 (N.D. Cal. 2008), Docket No. 55, at 12-
6  13 (addressing liability under 47 U.S.C. section 230). Defendants argue that plaintiffs continue to
7  rely upon such alleged common issues to support the predominance requirement for class
8  certification. Plaintiffs argue eBay "misses the point entirely" by stating that representations that
9  auctions were "safe" were on a webpage only affirmatively accessible and regardless of who read
10 the alleged misstatements on eBay's website, eBay and the Seller Defendants "always and
11 everywhere pretended 'live' auctions were taking place where they simply were not." Yet, as
12 plaintiffs confirmed at the hearing, plaintiffs appear to limit their alleged misrepresentations to the
13 single fact that the auctions were deemed "live." See Pls.' Reply at 11:2-5.

14  Even if the only misrepresentation in question is whether or not the auctions were in fact live,
15 the court finds that individual questions of damages remain. Plaintiffs allege financial harm and
16 seek damages in all of their causes of actions. Such allegations will require evidence of injury and
17 damages. See Deitz v. Comcast Corp., 2007 WL2015440, *6-7 (N.D. Cal. 2007) (Alsup, J.) (class
18 certification not appropriate for claims for negligent misrepresentation, CLRA violations, and unjust
19 enrichment where damages required individual inquiry); Forsyth v. Humana, Inc., 114 F.3d 1467,
20 1481 (9th Cir. 1997) ("To maintain a claim under RICO, a plaintiff must show not only that the
21 defendant's violation was a "but for" cause of his injury, but that it was the proximate cause as well .
22 . . plaintiff must show a concrete financial loss."); Stickrath v. Globalstar, 527 F. Supp. 2d 992, 996
23 (N.D. Cal. 2007) (Henderson, J.) ("both the UCL and CLRA protect only plaintiffs who have
24 suffered harm 'as a result of' defendants' unlawful or unfair practices.").

25  Plaintiffs allege that such damages will be easy to determine because there is a
26 "straightforward calculus to determine the effect shill bids have on an auction." Pls.' Reply at
27 13:20-21. Plaintiffs allege that shill bidding inflates prices 20%. See Lanza Dec., Exh. A (Cuomo
28 Press Release). Even accepting for the purposes of this motion that the press release is admissible

11

1  and, further, that shill bidding does in fact inflate prices 20% (which is a dubious assertion at best,
2  considering plaintiffs rely on this single press release concerning one instance of "click house" shill
3  bidding only on certain auction lots and wish to extrapolate to all instances of shill bidding), and that
4  all floor bids are shill bids, there remains several individual question of fact concerning whether all
5  class members incurred damages.

6  Firstly, as discussed above with regard to the class definition, there may be some auctions with
7  winners in which there were no floor bids. See Mazur Dep. 136:23-127:2. In these circumstances,
8  the auction would either be won by a single eBay bidder, or would be a battle between eBay bidders.
9  Under that logic, no floor bidders means no shill bidding and therefore, no price increase and no
10 damage incurred. An examination of whether floor bidding—and assumptively, shill
11 bidding—occurred in a given auction would be an individual assessment.

12 Secondly, even if floor bidders had been involved in a specific auction, a bidding war between
13 two eBay bidders may have resulted in the same price paid by the winner. In this circumstance,
14 despite the presence of shill bidding, no price inflation due to shill bidding would have occurred,
15 because the final price would have remained the same. Third, it is possible to return an item to the
16 seller for a refund. See Bates Dep. at 61:19-25; Mazur Dep. 35:3-5, 90:19-23. If the item was
17 returned for a full refund, then no damage is incurred. Therefore, each individual class member
18 would have to prove that he or she had not returned the item. That these issues exist even assuming
19 uniform price inflation on inherently subjective items, see Compl. ¶ 57, Mazur Dep. 123:17-22,
20 shows that individual issues will predominate.

21 The court, furthermore, is extremely hesitant to accept plaintiffs assertions that shill bidding
22 uniformly raised prices 20% on all items at issue in this suit, absent any evidence or discovery
23 directed towards discovering that evidence. At the hearing, plaintiffs indicate that there were, in
24 addition to the Cuomo Press Release, "other academic papers" indicating that shill bidding inflates
25 prices at the uniform rate of 20%. These papers, should they exist, were not submitted to the court.
26 The court, while generally accepting plaintiffs' assertions as true for the purpose of class
27 certification, is nonetheless entitled to "consider evidence which goes to the requirements of Rule 23
28 even though the evidence may also relate to the underlying merits of the case." Hanon, 976 F.2d at

12

1  509. The Cuomo Press Release described only one situation in which shill bidding on specifically
2  pre-determined items of jewelry increased prices by about 20%. Lanza Dec., Exh. A (Cuomo Press
3  Release). In that situation, auction house employees were given a pre-determined list of items on
4  which to bid. Id. Ostensibly, these employees were also given instructions on how to bid. That
5  instruction alone might count for the 20% price increase, and would therefore not apply in this
6  situation. Furthermore, because the press release does not provide underlying evaluative formula, it
7  is unlikely that the price inflation determination made with regard to jewelry can apply uniformly to
8  paintings and antiques. As plaintiffs contend and defendant GoAntiques.com describes, paintings
9  and antiques are of "a highly subjective value." See Compl. ¶ 57. The facts as alleged do not
10 support plaintiff's argument that such uniformity will apply to all items in all auctions.

11 Given that the uniform 20% price inflation figure does not apply to the instant facts as pled,
12 individual determinations for the amount of damage will predominate in this action. Plaintiffs'
13 assessment that the 20% value should in fact be higher, based on the online bidder's reliance on the
14 "floor bidder's" superior assessment of the value of the item, only further serves to defeat class
15 certification. In that situation, each class member would have to prove that he or she actually relied
16 on the presence of floor bids as an affirmation that the item was worth what each class member
17 eventually paid. Any such determinations would require establishing an appropriate amount that
18 each class member should have paid for their items. Since each auction involved unique items,
19 unique bidders, and unique series of bids, such a determination is impossible. A class member
20 would have to establish the actual and intrinsic value of the auction item. This alone would require
21 extensive evidence, as jewelry and art values are highly subjective. Alternatively, if an auction
22 involved more than one eBay bidder, that class member would have to establish the likely final price
23 between the two eBay bidders. A single class member may have multiple items for which to
24 establish the appropriate amount, each involving a different combination of the above issues.

25 As yet another tangle in this complicated web, the alleged class member might have mitigated
26 his damages by selling the item, as may have been the case with plaintiff Mazur herself. As long as
27 this was not a business transaction (and if it were a business transaction, that class member would
28 not be a consumer for purposes of causes of action 1, 11, 19 and 27, which poses an additional

13

problem), the resale value would affect a damages calculation for the purposes of the instant action. This issue is likely to present a conundrum that cannot be effectively addressed in a class action setting. If the winner/class member resold the item for what she paid for it, and that was all she was ever going to sell it for (regardless of the amount paid) then mitigation of damages is an issue. But, if the class member resold the item at either a loss or a gain, that individual would still be entitled to the difference between the allegedly inflated price and the price she should have originally paid. A resale of the item would either help lessen her loss, or improve her profit margin. In either case, this damages calculation would require an individualized inquiry which precludes class certification.

In sum, plaintiffs have failed to show that common issues predominate over individual issues. The court finds that individual questions of damages predominate and therefore the proposed class is not sufficiently cohesive to warrant adjudication by representation. The court notes that many of these factors could well be unprovable on a class-wide basis and therefore fatal to any class certification. The court hereby DENIES plaintiffs' motion for class certification.

CONCLUSION

For the reasons stated, plaintiffs' motion for class certification is DENIED with prejudice. Plaintiffs' motion for certification of class representative and class counsel are also DENIED with prejudice.

The court concludes after review of the class certification issue on this motion as well as its familiarity with the earlier motions and orders that any further attempt at class certification would be futile. Therefore, renewed motions for the purposes addressed in this order will not be entertained.

IT IS SO ORDERED.

Dated: May 4, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

14

**ENDNOTES**

1. Plaintiffs did not file a notice of motion with their "Memorandum of Law in Support of Motion for Class Certification and for Appointment of Class Representative and Class Counsel," as required by Civil Local Rule 7-2, Loc. R. N. Dist. Cal. See Docket No. 87. Nor did plaintiffs file a proposed order, pursuant to Civil Local Rule 7-2(d) or a declaration pursuant to Civil Local Rules 7-2(d) and 7-5, to provide appropriate authentication for the "resume" of John Balestriere (Exhibit A), the Bates deposition transcript (Exhibit B) or the Mazur deposition transcript (Exhibit C), all of which accompanied plaintiffs' Memorandum of Law. In the interests of adjudicating the motion on the merits, the court overlooks these errors for the time being and accepts plaintiffs' late-filed notice of motion (see Docket No. 104) and the unauthenticated exhibits filed with plaintiffs' Memorandum of Law for the purposes of the instant motion.

2. Plaintiffs' motion for certification of class representative must also fail on this basis alone. For purposes of appointing lead plaintiff, the focus is only on the typicality and adequacy prongs of Rule 23. See Eichenholtz v. Verifone Holdings, Inc., 2008 WL 3925289, *1 (N.D. Cal. 2008), citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

United States District Court
For the Northern District of California